

1  **WEILAND, GOLDEN,**
   **SMILEY, WANG EKVALL & STROK, LLP**
2  Evan D. Smiley, State Bar No. 161812
   esmiley@wgllp.com
3  Robert S. Marticello, State Bar No. 244256
   rmarticello@wgllp.com
4  Beth E. Gaschen, State Bar No. 245894
   bgaschen@wgllp.com
5  650 Town Center Drive, Suite 950
   Costa Mesa, California 92626
6  Telephone:  (714) 966-1000
   Facsimile:  (714) 966-1002
7
   Attorneys for Debtor
8  Phoenix Kingdom II, LLC

9           UNITED STATES BANKRUPTCY COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11              SANTA ANA DIVISION

12  In re                              Case No. 8:09-bk-16755-RK

13  PHOENIX KINGDOM II, LLC, a Delaware     Chapter 11 Case
    limited liability company,
14                                     **FIRST AMENDED DISCLOSURE**
                                       **STATEMENT DESCRIBING FIRST**
15                                     **AMENDED CHAPTER 11 PLAN**

16          Debtor.                    **Disclosure Statement Hearing**

17                                     DATE:    January 6, 2009
                                       TIME:    11:00 a.m.
18                                     PLACE:   Courtroom 5D
                                                411 W. Fourth St.
19                                              Santa Ana, CA 92701

20                                     **Plan Confirmation Hearing**

21                                     DATE:
                                       TIME:
22                                     PLACE:   Courtroom 5D
                                                411 W. Fourth St.
23                                              Santa Ana, CA 92701

24

25

26

27

28

378385.2                                        FIRST AMENDED
                                             DISCLOSURE STATEMENT

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................ 1

    A.   Purpose of this Document ......................................................... 1

    B.   Deadlines for Voting and Objecting; Date of Plan Confirmation
       Hearing ....................................................................................... 2

        1.   Time and Place of the Confirmation Hearing ................... 3

        2.   Deadline for Voting for or Against the Plan ..................... 3

        3.   Deadline for Objecting to the Confirmation of the Plan ................... 3

        4.   Identity of Person to Contact for More Information
           Regarding the Plan .......................................................... 3

    C.   Disclaimer .................................................................................. 3

II.   BACKGROUND ................................................................................ 4

    A.   Description and History of the Debtor's Business ...................... 4

        1.   The Properties .................................................................. 4

        2.   The Lehman Brothers Loan .............................................. 4

    B.   Principals/Affiliates of the Debtor's Business ............................. 5

    C.   Management of the Debtor Before and After Bankruptcy ........... 5

    D.   Events Leading to Chapter 11 Filing .......................................... 5

    E.   Significant Events During the Bankruptcy .................................. 7

        1.   Bankruptcy Proceedings .................................................. 7

           a.   Motion to Approve Stipulation to Allow the
               Receiver to Remain in Possession of the
               Properties and Use Cash Collateral ..................... 7

           b.   Fannie Mae Stay Relief Motion ............................. 7

           c.   Exclusivity ............................................................. 8

           d.   Employment of the Debtor's Professionals ............ 8

           e.   Claims Bar Date .................................................... 8

           f.   The Debtor's Schedules, Interim Statements, and
               Operating Reports ................................................. 9

**TABLE OF CONTENTS (cont.)**

| | | | Page |
|---|---|---|---|
| | 2. | Other Legal Proceedings | 9 |
| | 3. | Actual And Projected Recovery Of Preferential Or Fraudulent Transfers | 9 |
| | 4. | Procedures Implemented To Resolve Financial Problems | 10 |
| | 5. | Current and Historical Financial Conditions | 11 |
| III. | | SUMMARY OF THE PLAN OF REORGANIZATION | 11 |
| | A. | Purchase of the Membership Interests in the Reorganized Debtor | 11 |
| | B. | What Creditors and Interest Holders will Receive Under the Proposed Plan | 12 |
| | C. | Unclassified Claims | 12 |
| | | 1. Administrative Expenses | 12 |
| | | a. Ordinary Course Administrative Claims | 14 |
| | | b. Non-Ordinary Course Administrative Claims | 14 |
| | | c. Professional Fee Claims | 15 |
| | | 2. Priority Tax Claims | 16 |
| | D. | Classified Claims | 17 |
| | | 1. Summary of Classes | 17 |
| | | 2. Secured Claims | 17 |
| | | a. Secured Claim of Fannie Mae | 17 |
| | | b. Secured Claims Other Than the Secured Claim of Fannie Mae | 20 |
| | | 3. Classes of Priority Unsecured Claims | 20 |
| | | 4. Class of General Unsecured Claims | 21 |
| | | 5. Class of Interest Holders | 23 |
| | E. | Means of Effectuating the Plan | 24 |
| | | 1. Purchase of the Membership Interests in the Reorganized Debtor | 24 |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

378385.2

**TABLE OF CONTENTS (cont.)**

| | | | Page |
|---|---|---|---|
| | 2. | Funding for the Plan | 26 |
| | 3. | The Structure of the Reorganized Debtor and Post-Confirmation Management | 26 |
| | 4. | Disbursing Agent | 27 |
| F. | | Risk Factors | 27 |
| G. | | Other Provisions of the Plan | 28 |
| | 1. | Executory Contracts and Unexpired Leases | 28 |
| | | a.    Assumptions | 28 |
| | | b.    Rejections | 30 |
| | 2. | Changes in Rates Subject to Regulatory Commission Approval | 31 |
| | 3. | Potential Avoidance Actions | 31 |
| | 4. | Retention of Jurisdiction | 32 |
| H. | | Tax Consequences of the Plan | 34 |
| IV. | | CONFIRMATION REQUIREMENTS AND PROCEDURES | 34 |
| A. | | Who May Vote or Object | 35 |
| | 1. | Who May Object to Confirmation of the Plan | 35 |
| | 2. | Who May Vote to Accept/Reject the Plan | 35 |
| | | a.    What Is an Allowed Claim/Interest | 35 |
| | | b.    What Is an Impaired Claim/Interest | 36 |
| | 3. | Who is Not Entitled to Vote | 36 |
| | 4. | Who Can Vote in More Than One Class | 37 |
| | 5. | Votes Necessary to Confirm the Plan | 37 |
| | 6. | Votes Necessary for a Class to Accept the Plan | 38 |
| | 7. | Treatment of Nonaccepting Classes | 38 |
| | 8. | Request for Confirmation Despite Nonacceptance by Impaired Classes | 38 |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

378385.2

iii

**<u>TABLE OF CONTENTS (cont.)</u>**

|   |   |   | <u>Page</u> |
|---|---|---|---|
| | B. | Liquidation Analysis | 38 |
| | C. | Feasibility | 40 |
| | D. | Claims | 41 |
| V. | | EFFECT OF CONFIRMATION | 42 |
| | A. | Discharge | 42 |
| | B. | Revesting of Property in the Reorganized Debtor | 43 |
| | C. | Modification of the Plan | 44 |
| | D. | Post-Confirmation Status Report | 44 |
| | E. | Quarterly Fees | 44 |
| | F. | Post-Confirmation Conversion/Dismissal | 44 |
| | G. | Final Decree | 45 |
| TABLE OF DEFINITIONS | | | 46 |
| DECLARATION OF TERRY R. KNUTSON | | | 53 |
| DECLARATION OF LEONARD GLICKMAN | | | 55 |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

1  I.  **INTRODUCTION**[1]

2    Phoenix Kingdom II, LLC (the "Debtor"), is the debtor in a chapter 11 bankruptcy

3  case.  On July 6, 2009 (the "Petition Date"), the Debtor commenced this bankruptcy case

4  (the "Case") by filing a voluntary chapter 11 petition under the United States Bankruptcy

5  Code (the "Bankruptcy Code"), 11 U.S.C. § 101 *et seq.*  Chapter 11 allows debtors, and

6  under some circumstances, creditors and others parties in interest, to propose a plan of

7  reorganization.  A plan may provide for a debtor to reorganize by continuing to operate, to

8  liquidate by selling assets of the estate, or a combination of both.  The Debtor is the party

9  proposing the plan sent to you in the same envelope as this document.  THE DOCUMENT

10  YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

11    The Debtor's First Amended Plan (the "Plan") is a reorganizing plan.  As described

| Deleted: is p |
| --- |

12  in further detail below, the Debtor seeks to accomplish payments under the Plan by

13  paying creditors from the sale of equity in the "Reorganized Debtor" to a company to be

14  formed by Terry R. Knutson, the Debtor's current President, and Rose Investments, LLC

15  ("Rose"), a third party equity investor, or over time from the Reorganized Debtor's future

16  operations.  The Effective Date of the Plan will be 30 days after the entry of an order

17  confirming the Plan (the "Confirmation Order").

18    A.   **Purpose of this Document**

19    This Disclosure Statement summarizes what is in the Plan, and tells you certain

20  information relating to the Plan and the process the Court follows in determining whether

21  or not to confirm the Plan.

22    **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW**

23  **ABOUT**:

24    1.   WHO CAN VOTE OR OBJECT,

25

26

27  [1]  Any capitalized terms not defined in the text of this Disclosure Statement are defined in the Table of
28  Definitions found at the end of the Disclosure Statement.

378385.2                    1                  FIRST AMENDED
                                               DISCLOSURE STATEMENT

2.     WHAT THE TREATMENT OF YOUR CLAIM IS (*i.e.*, what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,

3.     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE,

4.     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,

5.     WHAT IS THE EFFECT OF CONFIRMATION, AND

6.     WHETHER THIS PLAN IS FEASIBLE.

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you. Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP ("Weiland Golden"), general insolvency counsel to the Debtor, does not represent you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires that a disclosure statement contain "adequate information" concerning the Plan. By order entered on _____, the Bankruptcy Court (the "Court") approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

B.     <u>Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing</u>

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS

*Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP*

1  THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

2  CREDITORS AND INTEREST HOLDERS IN THIS CASE.

3              **1.    Time and Place of the Confirmation Hearing**

4         The hearing where the Court will determine whether or not to confirm the Plan will

5  take place on _____, 2010, at __:__ __.m. in Courtroom 5D of the Ronald Reagan

6  Federal Building and United States Courthouse located at 411 West Fourth Street, Santa

7  Ana, California 92701.

8              **2.    Deadline for Voting for or Against the Plan**

9         If you are entitled to vote, it is in your best interest to timely vote on the enclosed

10 ballot and return the ballot in the enclosed envelope to Weiland, Golden, Smiley, Wang

11 Ekvall & Strok, LLP, attn: Robert S. Marticello, Esq. 650 Town Center Drive, Suite 950,

12 Costa Mesa, California 92626.

13        Your ballot must be received no later than 5:00 p.m. (Pacific Standard Time) on

14 _____ or it will not be counted.

15             **3.    Deadline for Objecting to the Confirmation of the Plan**

16        Objections to the confirmation of the Plan must be filed with the Court and served

17 upon counsel for the Debtor so as to be received by no later than 5:00 p.m. (Pacific

18 Standard Time) on _____.

19             **4.    Identity of Person to Contact for More Information Regarding the**

20                **Plan**

21        Any interested party desiring further information about the Plan should contact

22 Evan D. Smiley, Robert S. Marticello, or Beth E. Gaschen of Weiland, Golden, Smiley,

23 Wang Ekvall & Strok, LLP, by phone at (714) 966-1000 or by e-mail at

24 esmiley@wgllp.com, rmarticello@wgllp.com, or bgaschen@wgllo.com.

25        **C.    Disclaimer**

26        The financial data relied upon in formulating the Plan is based on the financial

27 records of the Debtor and the projections prepared by the Debtor's financial professionals

28 with the assistance of the Debtor's current management, and by Rose.  The professionals

Deleted: Hutchison B. Meltzer, or

Deleted: hmeltzer@wgllp.com, or

378385.2                                    3                         FIRST AMENDED
                                                              DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland, Golden,
Smiley, Wang, Ekvall & Strok, LLP

1  employed by the Debtor drafted the Plan and the Disclosure Statement based on this

2  information and have no independent knowledge regarding the accuracy of the data.  The

3  Court has not yet determined whether or not the Plan is confirmable and makes no

4  recommendation as to whether or not you should support or oppose the Plan.

5  **II.**    **BACKGROUND**

6      **A.**    **Description and History of the Debtor's Business**

7          **1.**    **The Properties**

8      The Debtor owns the following five apartment complexes (collectively, the

9  "Properties") in Arizona:

10      1.    The Cove at Newport Apartments consisting of 480 units located at 5205

11          West Thunderbird Road, Glendale, AZ, 85306;

12      2.    Granite Bay Apartments, consisting of 548 units located at 14230 North 19th

13          Avenue, Phoenix, AZ, 85023;

14      3.    Madera Court Apartments, consisting of 286 units located at 8135 North

15          35th Avenue, Phoenix, AZ, 85051;

16      4.    Scottsdale Springs Apartments, consisting of 644 units located at 7791 East

17          Osborn Road, Scottsdale, AZ, 85251; and

18      5.    Valencia Park Apartments, consisting of 461 units located at 5104 East Van

19          Buren Street, Phoenix, AZ, 85008.

20      The Debtor's sole source of revenue is rent from the Properties.  The Debtor is the

21  wholly owned subsidiary of Phoenix Kingdom II Mezz1, LLC, which in turn, is the wholly

22  owned subsidiary of Phoenix Kingdom II Mezz2, LLC.  An organizational chart for the

23  Phoenix Kingdom II portfolio (the "Portfolio"), as of the Petition Date, is attached hereto as

24  Exhibit "1."

25          **2.**    **The Lehman Brothers Loan**

26      The Properties were purchased through equity investments and a loan from

27  Lehman Brothers Bank, FSB ("Lehman").  Lehman loaned the aggregate sum of

28  approximately $238,010,000 to fund the acquisition of the Portfolio (the "Lehman Loan").

**Deleted:** acquired

1  The Lehman Loan was made to the Debtor and its affiliates within the Portfolio pursuant to

2  three loan agreements (collectively, the "Lehman Loan Documents").  More specifically,

3  Lehman loaned (i) $160,500,000 to the Debtor pursuant to a Loan Agreement (the "Senior

4  Loan Agreement") and Promissory Note (the "Note") dated June 1, 2007, (ii) $50,000,000

5  to Phoenix Kingdom II Mezz1, LLC, pursuant to a Senior Mezzanine Loan Agreement (the

6  "Senior Mezz Loan Agreement"), and (iii) $27,510,000 to Phoenix Kingdom II Mezz2, LLC,

7  pursuant to a Junior Mezzanine Loan Agreement (the "Junior Mezz Loan Agreement").  It

8  is the Debtor's understanding that Lehman assigned its interest in the Senior Loan

9  Agreement and related documents to Federal National Mortgage Association ("Fannie

10  Mae").  The Debtor also understands that Lehman assigned its rights under the Senior

11  Mezz Loan Agreement and the Junior Mezz Loan Agreement to Anthracite Funding, LLC

12  ("Anthracite"), and Arbor Realty Mortgage Securities Series 2005-1, Ltd. ("Arbor" and

13  together with Anthracite, the "Mezz Lenders"), respectively.

14      **B.    Principals/Affiliates of the Debtor's Business**

15          The Debtor's affiliates within the Portfolio can be seen from the organizational chart

16  attached hereto as Exhibit "1."  The Bethany Group and related entities (together,

17  "Bethany") served as the asset and property managers for the Debtor pre-petition.

18      **C.    Management of the Debtor Before and After Bankruptcy**

19          In or about March of 2009, Bethany closed its doors and ceased to manage the

20  Properties.  As discussed in further detail below, 707 Management Services, Inc. (the

21  "Receiver"), which was appointed as the receiver for the Properties prior to the Petition

22  Date, continues in possession and manages the Properties post-petition.  Terry R.

23  Knutson ("Mr. Knutson"), formerly a passive investor in the Debtor, is now the President of

24  the Debtor.

25      **D.    Events Leading to Chapter 11 Filing**

26          Pursuant to the cash management and reserve system established under the

27  Lehman Loan Documents, the rents, insurance proceeds, and other gross income from

28  the Properties were paid into a property account and then transferred into a "lockbox

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  account." Funds were released from the lockbox account, in the following order: (i) to pay

2  applicable taxes and insurance premiums; (ii) to pay replacement reserves; (iii) to pay

3  debt service on the Note; (iv) to pay the Debtor's budgeted operating expenses; (v) to pay

4  extraordinary expenses; and (vi) to pay lockbox fees and expenses. In any given month,

5  if sufficient funds existed to pay all of the amounts listed above, then the remainder of the

6  funds in the lockbox account would be paid to the Mezz Lenders up to the amount of debt

7  service then due, first, on the Senior Mezz Loan Agreement and, second, on the Junior

8  Mezz Loan Agreement. In the event that revenues from the Properties were insufficient to

9  fully fund debt service, the Mezz Lenders could also be paid from interest reserves funded

10  on the closing of the Lehman Loan, or from interest accumulating on the Debtor's other

11  reserve accounts. This restrictive cash management and reserve system, along with the

12  decline in the Portolio's financial performance due to declining market conditions and the

13  substantial secured debt, left the Debtor with insufficient cash with which to fund

14  operations, *i.e.*, to pay utilities, vendors, employees, and to maintain and re-rent the units.

15  Consequently, unpaid vendors recorded mechanic's liens against the Properties, which

16  caused Fannie Mae to declare non-monetary defaults under the Senior Loan Agreement.

17       Due to the alleged non-monetary defaults, Fannie Mae withdrew over $12,000,000

18  from the Debtor's renovation reserve account, thereby depriving the Debtor of the ability to

19  pay certain maintenance costs. Fannie Mae also sought the appointment of the Receiver

20  in Arizona state court to take possession of, manage and operate the Properties, and to

21  collect and apply the rents, income and profits to the debt owed Fannie Mae. In March,

22  2009, the Debtor stipulated to the appointment of Fannie Mae's preferred receiver and the

23  Arizona state court appointed the Receiver. Fannie Mae continued its foreclosure

24  proceedings and noticed July 7, 2009 as the foreclosure sale. Due to the impending

25  foreclosure, the Debtor commenced the instant case to maximize the value of the

26  Properties for all creditors and parties in interest.

27

28

Deleted: the Loan; (iv) to pay interest on

Deleted: i

Deleted: i

Deleted:

Deleted:

Deleted: a

378385.2            6         FIRST AMENDED
DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

E.    **Significant Events During the Bankruptcy**

1.    **Bankruptcy Proceedings**

a.    Motion to Approve Stipulation to Allow the Receiver to Remain
in Possession of the Properties and Use Cash Collateral

On August 5, 2009, the Debtor filed a motion to approve a stipulation among the Debtor, Fannie Mae, and the Receiver (the "Stipulation") to (i) allow the Receiver to remain in possession of the Properties subject to the requirements of the Bankruptcy Code and the jurisdiction of the Court, and (ii) authorize the Receiver to use cash collateral pursuant to the budgets attached to the Stipulation as Exhibit "B" to maintain and operate the Properties in the ordinary course of business. Pursuant to the Stipulation, the Receiver has remained in possession of and has managed the Properties and the Debtor's cash flow post-petition. The Court has yet to enter an order granting the motion and approving the Stipulation. The Stipulation expired by its terms on November 1, 2009, and has yet to be extended by the parties. Nonetheless, the Receiver remains in possession of the Properties by the tacit consent of the parties.

b.    Fannie Mae Stay Relief Motion

On August 14, 2009, Fannie Mae filed a motion for relief from the automatic stay (the "Stay Relief Motion"). The Debtor filed an opposition to the Stay Relief Motion on August 25, 2009. The Stay Relief Motion was initially heard on September 8, 2009, at which time the court set the matter for an evidentiary hearing (the "Evidentiary Hearing") to be held October 5, 2009. The Evidentiary Hearing was subsequently continued to October 26, 2009, to enable the parties to conduct discovery. As part of this discovery process, the Debtor prepared and filed the declarations of six witnesses, prepared and responded to document requests, prepared and filed evidentiary objections, and participated in the depositions of the potential witnesses. The Debtor filed its trial brief in support of its opposition to the Stay Relief Motion on October 23, 2009. The Evidentiary Hearing was conducted on October 26, 2009, and then was continued to October 30, 2009 for closing argument and supplemental briefing. The Court was not persuaded that

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

378385.2                              7

1   the Properties were declining in value and found that it was plausible that the Debtor could

2   confirm a plan of reorganization.  Accordingly, the Court continued the Evidentiary

3   Hearing to January 6, 2010, the same date and time as the hearing on the adequacy of

4   this Disclosure Statement.

5           c.   <u>Exclusivity</u>

6        The Bankruptcy Code provides debtors with an initial exclusive period of 120 days

7   from the petition date to file a plan of reorganization, and an initial exclusive period of 180

8   days to solicit acceptances of its plan, subject to the discretion of the bankruptcy court to

9   extend the exclusive periods.  During these exclusive periods no other person or entity is

10  permitted to file a plan of reorganization.

11       Here, the Debtor's initial statutory exclusive periods to propose a plan and to obtain

12  acceptances thereof were set to expire on November 3, 2009, and January 2, 2010,

13  respectively.  On November 3, 2009, the Debtor filed a motion for an order extending its

14  exclusive periods to file a plan and to solicit acceptances of its plan to December 1, 2009

15  and April 2, 2010, respectively (the "Exclusivity Motion").  The motion was unopposed.  On

16  November 24, 2009, the Court heard and granted the Exclusivity Motion, and extended

17  the Debtor's exclusive period to file a plan to December 1, 2009 and the Debtor's

18  exclusive period to solicit acceptances of its plan to April 2, 2010.

19          d.   <u>Employment of the Debtor's Professionals</u>

20       The Court has approved the employment of Weiland Golden, as the Debtor's

21  general insolvency counsel by order entered on September 23, 2009.

22          e.   <u>Claims Bar Date</u>

23       On December 3, 2009, the Debtor filed a motion for an order requiring that all

24  creditors and parties in interests and certain administrative claimants file proofs of claim

25  within 60 days after service of notice of the bar date, and for certain other related relief

26  (the "Bar Date Motion").  On December 24, 2009, the Debtor lodged an order granting the

27  Bar Date Motion, which the Court has not yet entered.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

**Deleted:** The

**Deleted:** Debtor is currently preparing a

**Deleted:** The Debtor expects to file the Bar Date Motion prior to the hearing on this Disclosure Statement.

1                  f.     <u>The Debtor's Schedules, Interim Statements, and Operating</u>

2                  <u>Reports</u>

3      The Debtor believes it has complied and will continue to comply with all its duties

4 under 11 U.S.C. §§ 521, 1006 and 1107, and the applicable Guidelines of the OUST.  On

5 or around July 21, 2009, the Debtor filed its bankruptcy schedules and statements of

6 financial affairs ("SOFA").  The Debtor also filed its 7-Day Package.  The Debtor has not

7 filed Monthly Operating Reports ("MOR") with the OUST, but has requested that the

8 OUST accept the weekly operating reports prepared by the Receiver in lieu of the MORs.

9 The Debtor is current on all fees owed to the OUST.

10        **2.**     **Other Legal Proceedings**

11      The Debtor is involved in many non-bankruptcy legal proceedings commenced pre-

12 petition, which are primarily (but not exclusively) collection actions.  Attached hereto as

13 Exhibit "2" are the relevant pages of the Debtor's SOFA, listing the non-bankruptcy legal

14 proceedings of which the Debtor was aware as of the Petition Date.  The Debtor believes

15 that all of these proceedings are stayed by operation of 11 U.S.C. § 362.  However, legal

16 proceedings may be being pursued against Bethany and/or certain of the Debtor's

17 members.

18        **3.**     **Actual And Projected Recovery Of Preferential Or Fraudulent**

19              **Transfers**

20      With the exception of the Debtor's claims against Fannie Mae, the Debtor has not

21 undertaken an analysis regarding whether meritorious claims for preferential or fraudulent

22 transfers exist.  However, the Debtor may have causes of action against third parties

23 under 11 U.S.C. §§ 544 through 550 ("Avoidance Actions"), including, but not limited to,

24 claims for the recovery of fraudulent transfers made during the one-year period prior to the

25 Petition Date, and claims for the recovery of preferential transfers made during 90-day

26 period prior to the Petition Date.  The Debtor hereby reserves and retains all Avoidance

27 Actions with respect to any person or entity.  The failure to specifically identify the

28 recipient of a potentially avoidable and recoverable transfer or of a particular payment

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

378385.2               9                  FIRST AMENDED

1  herein is unintentional and shall not be deemed a waiver of the right of the Estate to

2  recover any distribution(s), payment(s), or transfer(s) from any entity under any provision

3  of the Bankruptcy Code.  It is likely that a significant majority of the payments made pre-

4  petition are either not avoidable or are subject to a valid affirmative defense.

5      The Debtor believes that a preference action against Fannie Mae may exist due to

6  Fannie Mae's withdrawal of over $12,000,000 from the Debtor's renovation reserve

7  account during the one-year period prior to the Petition Date.

8      **4.**    **Procedures Implemented To Resolve Financial Problems**

9      The Debtor's inability to fund operations from rent receipts was primarily resolved

10 by the commencement of the Case and the Debtor's resulting ability to use cash collateral

11 to pay necessary operating expenses.  Prior to the Petition Date, revenues from the

12 Properties were deposited into a lockbox account controlled by Fannie Mae's agent, and

13 then released back, after the payment of certain reserves and debt service, to the Debtor

14 to pay operating expenses.  The funds released to the Debtor after the payment of debt

15 service to Fannie Mae, however, were insufficient to pay necessary operating expenses.

16 Upon the commencement of the Case, the Debtor obtained authorization for the Receiver

17 to use cash collateral, which enabled the Receiver to pay necessary operating expenses

18 *prior* to making any interest payments to Fannie Mae on its asserted $160,500,000 claim.

19 Thus, the commencement of the Case and the authority to use cash collateral provided

20 the Receiver with sufficient funds to pay the Properties' operating expenses.  The

21 Receiver's ability to fund operations has caused the Properties' operations to stabilize

22 insofar as prevailing market conditions allow.  However, net operating income generated

23 by the Properties remains insufficient to pay debt service on the current outstanding

24 balance of the Note, which totals approximately $160,500,000.

25     Under the Plan, the Reorganized Debtor will continue to pay operating expenses

26 prior to debt service on Fannie Mae's secured claim.  Also, as discussed in further detail

27 below, the amount of the Fannie Mae's secured clam will be reduced to the value of its

28 collateral ($68,750,000), and will be further reduced by a substantial cash payment of

**Deleted:** financial problems related to operations were

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 | $14,687,500 on the Effective Date. The reduction of Fannie Mae's secured claim and the

2 | substantial initial cash payment to Fannie Mae contemplated by the Plan will reduce the

3 | monthly interest payments to Fannie Mae to an amount that can be paid from the

4 | Reorganized Debtor's net operating income ("NOI"), thus, making the Debtor's

5 | reorganization feasible. The Properties are currently generating sufficient NOI, on an

6 | annual basis, to fund the monthly debt service payments to Fannie Mae required by the

7 | Plan. Moreover, Mr. Knutson and Rose intend to implement a detailed business plan

8 | developed by Rose (the "Rose Recovery Plan") to improve the financial performance of

9 | the Properties and increase occupancies and revenues over time. A copy of the current

10 | working draft of the Rose Recovery Plan is attached hereto as Exhibit "22."

## 5.    Current and Historical Financial Conditions

12 | Copies of the cash flow statements for the 12-month period prior to the

13 | appointment of the Receiver (from March 2008 through February 2009) and the cash flow

14 | statements prepared by the Receiver for May 2009 through June 2009 are attached

15 | hereto by Property as Exhibits "3," "4," "5," "6," and "7." The actual cash flow information

16 | for each Property for the first four months post-petition (July 2009 through October 2009)

17 | are attached hereto has Exhibits "8," "9," "10," "11," and "12," respectively. Attached

18 | hereto as Exhibits "13," "14," "15," "16" and "17" are seven-year cash flow projections for

19 | each Property prepared by CB Richard Ellis under commission by the Debtor.

20 | The Debtor's operations are stable. As discussed above, the Receiver remains in

21 | possession of the Properties and continues to manage the Properties and ensure that

22 | necessary repairs are made and that occupancies and revenues are maintained insofar

23 | as current market conditions allow. Through November 19, 2009, the Properties were

24 | 65% occupied on a consolidated basis and, specifically, the Cove at Newport Apartments

25 | were 72% occupied, the Granite Bay Apartments were 62% occupied, the Madera

26 | Apartments were 74% occupied, the Scottsdale Springs Apartments were 69%, and the

27 | Valencia Park Apartments were 51% occupied. Moreover, as can been seen from the

28 |

Deleted: .
Deleted:
Deleted: herein

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  historical and current financials referenced above, the rents generated by the Properties

2  have remained relatively constant post-petition.

3  **III.    SUMMARY OF THE PLAN OF REORGANIZATION**

4      **A.    Purchase of the Membership Interests in the Reorganized Debtor**

5        As discussed in further detail in Section III.E, the Membership Interests in the

6  Reorganized Debtor will be sold to a to-be-formed entity (the "Buyer") owned by Mr.

7  Knutson and Rose. The Buyer will contribute $22,287,500[2] in cash (the "New Money

8  Investment") to be used as follows: (i) $14,687,500 will be used to pay down the debt

9  owed to the Debtor's senior secured creditor, Fannie Mae; (ii) $5,600,000 will used to fund

10 the deferred capital expenditures necessary to return the Properties to "average

11 condition"; (iii) $1,000,000 will be deposited into a renovation reserve fund (the

12 "Renovation Reserve") to be used at the Buyer's discretion to improve the Properties; and

13 (iv) $1,000,000 will be used, first, to satisfy the Debtor's Allowed Administrative Claims on

14 the Effective Date and, then, the remainder will be distributed to the holders of Allowed

15 General Unsecured Claims as provided in Section III.D.4 below, with any surplus to be

16 deposited into the Renovation Reserve. The Debtor estimates that approximately

17 $850,000 will be available after the payment of Allowed Administrative Claims to distribute

18 to the holders of Allowed General Unsecured Claims. In exchange for the New Money

19 Investment, the Buyer will receive 100% of the Membership Interests in the Reorganized

20 Debtor. However, the Buyer has agreed to allocate 5% of the subordinated equity return

21 on the Membership Interests in the Reorganized Debtor, if any, to Fannie Mae, as

22 provided herein.

27    [2]  Of this sum, $4,000,000 will be contributed by Mr. Knutson, and $18,287,500 will be contributed by
28 Rose.

378385.2                                      12                        FIRST AMENDED
                                                                    DISCLOSURE STATEMENT

---

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

---

**Deleted:** Investments, LLC
**Deleted:** 1

**Deleted:** and
**Deleted:** up to

**Deleted:** .
**Deleted:** The Buyer will also contribute funds sufficient to enable the Debtor to satisfy Allowed Administrative Claims on the Effective Date and to distribute $100,000 to the holders of Allowed General Unsecured Claims as provided in Section III.D.4 below, to the extent the Debtor's cash on hand and cash reserves are insufficient to do so.
**Deleted:** 25% of the Membership Interests in the Reorganized Debtor among
**Deleted:** and the Mezz Lenders based, in part, on the amount owed to each creditor and, in part, as consideration for support of the Plan.

**Deleted:** 7

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

**B.  What Creditors and Interest Holders will Receive Under the Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various classes according to their right to priority.  The Plan states whether each Class of Claims or Interests is impaired or unimpaired.  The Plan provides the treatment each Class will receive.  In no event shall any creditor receive more than the creditor's Allowed Claim, plus interest, to the extent provided herein.

**C.  Unclassified Claims**

Certain types of Claims are not placed into voting classes but are instead unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to certain treatment under the Bankruptcy Code.  Accordingly, the following Claims have not been placed into a Class:

**1.  Administrative Expenses**

Administrative expenses are Claims for costs or expenses of administering the Debtor's Case which are allowed under § 507(a)(2) of the Bankruptcy Code.  The Bankruptcy Code requires that all Allowed Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following charts list all of the Debtor's § 507(a)(2) unpaid Administrative Claims and their treatment under the Plan:

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Ordinary-Course Administrative Claims | $0.00 | Unless the Reorganized Debtor objects to an Ordinary-Course Administrative Claim, the Claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not file any Request for Payment of its Claim.  Payments to Ordinary-Course Administrative Claimants will be paid from the Debtor's current cash flow or the Reorganized |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000   Fax 714-966-1002

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| | | Debtor's future operations according to the existing trade terms. |
| Non-Ordinary Course Administrative Claims | $0.00 | To the extent that any Non-Ordinary-Course Administrative Claims are allowed, they will be paid in full by the Reorganized Debtor on the later of the Effective Date or immediately after the Court enters a Final Order allowing the Non-Ordinary-Course Administrative Claim. |
| Clerk's Office Fees | $0.00 | Paid in full on or before the Effective Date. |
| Office of the United States Trustee Fees | $0.00 | Paid in full on or before the Effective Date. |
| Administrative Tax Claims | $0.00 | Unless the Reorganized Debtor objects to an Administrative Tax Claim or otherwise disputes the Administrative Tax Claim in accordance with applicable law, the Claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Administrative Tax Claim, and the Person holding the Administrative Tax Claim need not file any Request for Payment of its Claim. Payments to Administrative Tax Claimants will be paid from the Debtor's current cash flow or the Reorganized Debtor's future operations according to applicable law. |

| Professional-Fee Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Weiland Golden | $150,000 (est.) as of the Effective Date, which would be in addition to the fees and expenses already paid to Weiland Golden post-petition. | Paid on the earlier of the Effective Date or in accordance with the Monthly Payment Procedure. |
| Total | $150,000 estimated[3] | |

---

[3]    The estimate of Professional-Fee Claims is only an estimate and will change based upon the legal services required during this Reorganization Case and upon what the Court ultimately awards to professionals.  The Estate remains liable for all allowed legal fees and costs regardless of the estimates.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626-1925
Tel 714-966-1000 · Fax 714-966-1002

### a.    Ordinary Course Administrative Claims

Unless the Reorganized Debtor or other party-in-interest objects to an Ordinary-Course Administrative Claim, the Claim will be deemed allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not File any Request for Payment of its Claim.  Payments to Ordinary-Course Administrative Claimants will be paid from the Debtor's current cash flow or the Reorganized Debtor's future operations.

### b.    Non-Ordinary Course Administrative Claims

A Non-Ordinary-Course Administrative Claim will be paid by the Debtor on the Effective Date to the extent that prior to the Effective Date it has already been determined to be an Allowed Non-Ordinary-Course Administrative Claim by the Court pursuant to a Final Order.  Any other Non-Ordinary-Course Administrative Claim will be paid by the Reorganized Debtor to the extent that it is allowed by the Court only if: (1) on or before 60 days after the Effective Date, the Person holding the Non-Ordinary Course Administrative Claim both Files with the Court a Request for Payment of the Non-Ordinary-Course Administrative Claim and serves the request on counsel for the Debtor/Reorganized Debtor and the OUST; and (b) the Court, in a Final Order, allows the Non-Ordinary-Course Administrative Claim.  Any party-in-interest may File an objection to such a Request for Payment within the time provided by the Bankruptcy Rules or within any other period the Court establishes.  Persons holding Non-Ordinary-Course Administrative Claims who do not timely File and serve a Request for Payment will be forever barred from asserting these Claims or sustaining any action seeking payment in any forum or from any court deriving from these Claims against the Estate, the Debtor, the Reorganized Debtor, or its property.

### c.    Professional Fee Claims

A Professional-Fee Claim will be allowed only if: (a) on or before 45 days after the Effective Date (or such further date if extended by Court order), the Person holding the

1  Professional-Fee Claim both Files with the Court an application requesting that the

2  Reorganized Debtor pay the Professional-Fee Claim; and (b) the Professional-Fee Claim

3  is allowed by a Final Order.  The Reorganized Debtor or any other party-in-interest may

4  File an objection to such an application within the time provided by the Bankruptcy Rules

5  or within any other period that the Court establishes.  Persons holding Professional-Fee

6  Claims who do not timely File and serve an application for payment will be forever barred

7  from asserting these Claims against the Reorganized Debtor or their property.

8          As is indicated above, the Debtor estimates that it will need to pay Administrative

9  Claims totaling approximately $150,000 on the Effective Date, unless the Claimant has

10  agreed to be paid later or the Court has not yet ruled on the Claim.  Based on the

11  expected proceeds from the sale of Membership Interests in the Reorganized Debtor to

12  the Buyer, the Debtor projects that it will have cash on hand in excess of this amount on

13  the Effective Date to make the necessary payments, plus cash reserves.  The Debtor's

14  cash on hand and cash reserves will be used to pay Allowed Administrative Claims of the

15  Estate.  The Buyer will be responsible for contributing cash to enable the Debtor to pay

16  Allowed Administrative Claims, to the extent that the cash on hand, cash reserves, and

17  the cash contributed by the Buyer as part of the New Money Investment for such

18  purposes are insufficient to do so.

19          2.    Priority Tax Claims

20          Priority Tax Claims include certain unsecured income, employment and other taxes

21  described by Bankruptcy Code § 507(a)(8).  The Bankruptcy Code requires that each

22  holder of such a § 507(a)(8) Priority Tax Claim receive the present value of such Claim in

23  regular installment payments in cash, over a period not exceeding five years from the

24  Petition Date.  The following chart lists all of the Debtor's known § 507(a)(8) Priority Tax

25  Claims and their treatment under the Plan:

| Priority Tax Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Priority Tax Claims | $0.00 | The holders of Allowed Priority Tax Claims shall receive, in full satisfaction of such Claims, |

Deleted: To the extent that the cash on hand or cash reserves are insufficient to satisfy Allowed Administrative Claims,

Deleted: t

Deleted: such

Deleted: .

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

| Priority Tax Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| | | deferred cash payments in an aggregate amount equal to the amount of the Allowed Priority Tax Claim, plus interest from the Effective Date on the unpaid balance of the Allowed Priority Tax Claim at the Prime Rate, or such higher rate as the Court may determine sufficient to provide "present value" of the Allowed Priority Tax Claim. Payment of the Allowed Priority Tax Claims shall be made in equal quarterly payments such that the Allowed Priority Tax Claims are repaid within five years from the Petition Date. The first installment payment shall be due on the later of: (i) 60 Business Days after the Effective Date; or (ii) 30 Business Days after the Court enters a Final Order allowing the Priority Tax Claim.  The Reorganized Debtor shall have the right to pay the balance of the Allowed Priority Tax Claims in full at any time on or after the Effective Date without premium or penalty of any kind. |

**D.**    **Classified Claims**

  **1.**    **Summary of Classes**

| Summary of Classes | |
|---|---|
| Class | Claimant(s) |
| Class 1 | Secured Claim of Fannie Mae |
| Class 2 | Mechanic's Lien Claims |
| Class 3 | Priority Unsecured Claims Pursuant to 11 U.S.C. §§ 507(a)(6) and (7) |
| Class 4 | Priority Unsecured Wage Claims Pursuant to 11 U.S.C. §§ 507(a)(4) and (5) |
| Class 5 | Unsecured Deficiency Claim of Fannie Mae |
| Class 6 | General Unsecured Claims |
| Class 7 | Claim of Arbor |
| Class 8 | Membership Holders |

Deleted: 7

Deleted: 6

Deleted: Membership Holders

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

2.    **Secured Claims**

Secured Claims are Claims secured by liens on property of the Estate.

a.    <u>Secured Claim of Fannie Mae</u>

Class 1 consists of the Secured Claim of Fannie Mae. Fannie Mae asserts a claim in the amount of $160,500,000[4] secured by a first priority lien against the Properties and the rents therefrom. The appraised value of the Properties is $58,750,000 (after the deduction of an estimated $5,600,000 in deferred capital expenditures required to return the Properties to "average condition"). The value of the Properties is based on the Appraisal Reports dated October 5, 2009 prepared by Richard J. Kalinowski, Jr., MAI, on behalf of the Debtor,[6] as modified by Mr. Kalinowski's letter dated November 30, 2009, which includes a discussion of the $5,600,000 in deferred capital expenditures. The Executive Summary for each Appraisal Report prepared by Mr. Kalinowski is attached hereto as Exhibits "23" through "27." Mr. Kalinowski's letter dated November 30, 2009, regarding the value of the Properties is attached hereto has Exhibit "28."

Under the Plan, the Debtor's obligations to Fannie Mae shall be restructured as follows:

i.    <u>Allowed Secured Claim.</u> On the Effective Date, Fannie Mae shall have an Allowed Class 1 Secured Claim in the amount of $68,750,000[7] or other amount based on the Court's determination of the fair market value of the Properties. Fannie Mae's Allowed Class 1 Secured Claim will be partially paid in cash on the Effective Date, and the

[Deleted: 6]

---

[4] In addition to the principal amount of the Note ($160,500,000), Fannie Mae asserts that it is also owed (i) pre-petition interest in the amount of $6,013,222.80 and (ii) "late charges" in the amount of $227,800.31 for a total claim of $166,741,023.11. The Debtor is unable to verify this amount.

[6] Based on the Appraisal Reports, the aggregate value of the Properties was $67,365,000, however, after preparing the Appraisal Reports, Mr. Kalinowski discovered a mathematical error contained therein. The correction of that mathematical error reduced the aggregate value of the Properties to $64,360,000.

[7] This amount is based on the appraised value of the Properties ($58,750,000), plus the estimated amount of "Reserve Funds" remaining on the Effective Date ($10,000,000).

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  remainder (approximately $44,062,500) shall accrue interest at the rate of 5.75%$^{8}$ or at

2  such other rate as the Court may determine.  The Reorganized Debtor will make interest

3  only payments ("Debt Service Payments") on the 1st of each month commencing after the

4  Effective Date from NOI.  The Allowed Class 1 Secured Claim will mature on December

5  31, 2016.

6    ii.    Reinstatement of Reserves.  On the Effective Date, the "Reserve Funds" (as

7  defined in the Senior Loan Agreement) in the amount of approximately $12,000,000,

8  which were withdrawn by Fannie Mae from the Debtor's renovation reserve account pre-

9  petition and which are currently being held in a segregated account for the benefit of

10  Fannie Mae, will be credited to Fannie Mae in partial satisfaction of its Allowed Class 1

11  Secured Claim.  The Debtor estimates that the residual amount of Reserve Funds

12  available for credit to Fannie Mae will total approximately $10,000,000 on the Effective

13  Date.

14    iii.    Cash Contribution by the Buyer.  On the Effective Date, the Buyer shall

15  contribute $22,287,500 in cash to be allocated as follows: (a) $14,687,500 shall be paid to

16  Fannie Mae to be applied to principal on Fannie Mae's Allowed Class 1 Secured Claim,

17  which, after application of the estimated $10,000,000 in Reserve Funds, will reduce

18  Fannie Mae's secured claim by a total of $24,687,500 to $44,062,500; (b) $5,600,000

19  shall be used to fund the deferred capital expenditures necessary to return the Properties

20  to "average condition"; (c) $1,000,000 will be deposited into the Renovation Reserve, to

21  be expended at the Buyer's discretion to improve the Properties; and (d) $1,000,000 will

22  be used, first, to satisfy the Debtor's Allowed Administrative Claims on the Effective and,

23  then, the remainder will be distributed to the holders of Allowed General Unsecured

24

25

26    $^{8}$ The Debtor chose this interest rate based on the methodology used by Fannie Mae's expert witness on
27  interest rates, Richard W. Ferrell, and considering the value of the Fannie Mae's collateral and the proposed
    cash payment to Fannie Mae on the Effective Date, which results in a loan-to-value ratio of 75%. The
    Debtor's reference to the methodology used by Fannie Mae is not an admission or concession of the
28  correctness of such methodology or the accuracy of Mr. Ferrell's testimony.

378365.2                                    19                    FIRST AMENDED
                                                         DISCLOSURE STATEMENT

Deleted: 1

Deleted: and

Deleted: up to

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP

1    Claims as provided in Section III.D.4 below, with any surplus to be deposited into the

2    Renovation Reserve.

3        iv.    **Retention of Security Interest**. Fannie Mae will retain its lien on the

4    Properties, the NOI generated by the Properties, and the Renovation Reserve, until the

5    full satisfaction of the Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the

6    application of 11 U.S.C. § 1111(b)(2), then the full satisfaction of Fannie Mae's Allowed

7    Claim, at which time Fannie Mae's lien shall be released and the Reorganized Debtor

8    shall retain title to all such collateral free and clear of Fannie Mae's lien.

9        v.    **Allocation of Equity in the Reorganized Debtor**.  In exchange for the New

10    Money Investment, the Buyer will receive 100% of the Membership Interests in the

11    Reorganized Debtor.  However, the Buyer has agreed to allocate 5% of the subordinated

12    equity return on the Membership Interests in the Reorganized Debtor (the "Subordinated

13    Equity Return"), if any, to Fannie Mae, as provided in Section III.D.4 below.

14        vi.    **The Priority Return**.  The Buyer shall be entitled to a priority return equal to

15    the amount of the New Money Investment, plus a 19% internal rate of return on the New

16    Money Investment (the "Priority Return"), which shall be paid from monthly surplus NOI

17    (after Debt Service Payments), provided the Reorganized Debtor is current on its

18    payments to Fannie Mae on account of the Allowed Class 1 Secured Claim or, if Fannie

19    Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then provided the

20    Reorganized Debtor is current on its payments to Fannie Mae on account of its Allowed

21    Claim.  To the extent that surplus NOI is insufficient to satisfy the Priority Return, the

22    unpaid balance of the Priority Return shall earn interest at the rate of 19% until paid.

23        vii.    **Allocation of NOI**. Each month NOI shall be allocated as follows: (a) to

24    make scheduled Debt Service Payments to Fannie Mae on account of the then

25    outstanding principal amount of the Allowed Class 1 Secured Claim or, if Fannie Mae

26    timely elects the application of 11 U.S.C. § 1111(b)(2), then to make the scheduled

27    payments in paragraph (xi) below to Fannie Mae on account of its Allowed Claim; (b) to

28

378385.2                    20                     FIRST AMENDED
                                                 DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Deleted: .

Deleted: of

Deleted: , and 20% of the
Membership Interests in the
Reorganized Debtor between the
Mezz Lenders. The allocation of
Membership Interests in the
Reorganized Debtor may be adjusted
prior to confirmation of the Plan in
consideration for each lender's
consent to the Plan and/or voluntary
release of guarantees allegedly owed
by Mr. Knutson and his affiliates

Deleted: from monthly surplus NOI
(after Debt Service Payments)

Deleted: up to

Deleted:  the aggregate amount of
(i) a

Deleted: 20

Deleted: ,

Deleted: or (ii) two times the New
Money Investment, whichever is
greater

Deleted:

Deleted: ;

pay the Priority Return to the Buyer; and (c) to pay the Subordinated Equity Return to the

Buyer and Fannie Mae.

    viii.    **Right to Prepay.** The Reorganized Debtor may pre-pay the remaining

principal balance of Fannie Mae's Allowed Class 1 Secured Claim or, if Fannie Mae timely

elects the application of 11 U.S.C. § 1111(b)(2), then the remaining balance of Fannie

Mae's Allowed Claim, in whole or part on any interest payment date, without penalty or

fee. Following any such partial payment, Debt Service Payments to Fannie Mae will be

calculated based on the remaining principal balance of the Allowed Class 1 Secured

Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then based

on the remaining principal balance of the Secured Portion (as that term is defined in

paragraph (xi) below).

    ix.    **Right to Encumber.** The Reorganized Debtor may obtain financing secured

by a lien against the Properties that is junior in priority to the lien of Fannie Mae.

    x.    **Right to Transfer.** The remaining balance of Fannie Mae's Allowed Class 1

Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2),

then the remaining balance of Fannie Mae's Allowed Claim, will be transferable and

severable based on commercially reasonable borrower standards. That is, the Buyer may

alienate its interest in the Reorganized Debtor to a subsequent purchaser, subject to

Fannie Mae's Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the

application of 11 U.S.C. § 1111(b)(2), then subject to Fannie Mae's Allowed Claim,

provided Fannie Mae approves of the creditworthiness of the proposed subsequent

purchaser, which approval will not be unreasonably withheld.

    xi.    **Treatment under 11 U.S.C. § 1111(b).** If Fannie Mae timely elects

application of 11 U.S.C. § 1111(b)(2), then Fannie Mae's total Allowed Claim shall be

treated in Class 1, and shall be repaid as provided in this subparagraph. Interest shall

accrue and be paid on only the secured portion of Fannie's Mae's Allowed Claim (the

"Secured Portion"), which shall equal $68,750,000 or other amount based on the Court's

determination of the fair market value of the Properties. The outstanding balance of the

378385.2            21              FIRST AMENDED
DISCLOSURE STATEMENT

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP

Deleted: a
Deleted: s
Deleted: e
Deleted: r
Deleted: ,
Deleted: ,
Deleted: and the Mezz Lenders.

Deleted: Subject to the written approval of the Mezz Lenders, which approval will not be unreasonably withhold,
Deleted: t

1 | Secured Portion shall accrue interest at the rate of 5.75%. Fannie Mae's Allowed Claim

2 | shall be repaid as follows: (a) on the Effective Date, the Reserve Funds will be credited to

3 | Fannie Mae in partial satisfaction of the Secured Portion; (b) on the Effective Date,

4 | $14,687,500 will be paid to Fannie Mae to be applied to principal on the Secured Portion;

5 | (c) the Debtor shall make interest only payments on the outstanding principal amount of

6 | the Secured Portion on the 1st of each month commencing after the Effective Date from

7 | NOI through December 31, 2016; and (d) on the 1st of each month commencing after

8 | December 31, 2016, the Debtor shall make monthly payments of principal and interest,

9 | which shall be applied, first, to interest on the Secured Portion, second, to principal on the

10 | Secured Portion, and, third, to the remainder of the Allowed Claim, for as many months as

11 | necessary to pay the full amount of Fannie Mae's Allowed Claim.

12 |          b.      Secured Claims Other Than the Secured Claim of Fannie Mae

13 |      The following chart lists all Classes containing the Debtor's Secured Claims, other

14 | than the Secured Claim of Fannie Mae, and their treatment under the Plan:

| Secured Claims | | | | |
|---|---|---|---|---|
| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
| 2 | Mechanic's Lien Claims<br><br>• Collateral: The Properties<br><br>• Priority of Security Interest: Unknown<br><br>• Total Claim Amount: Unknown<br><br>• Collateral Value: $58,750,000 | N | Y | Based on the value of the Properties and the amount of the debt owed to Fannie Mae, mechanic's lien claimants will have a secured claim only if and to the extent they establish they hold liens that are senior in priority to the lien of Fannie Mae under applicable law. If a mechanic's lien claimant establishes that its lien is senior in priority to Fannie Mae, then such claimant will be paid in full either, at the election of the Debtor or Reorganized Debtor, (i) on the date that is 30 days following the later of the Effective Date, and the date of entry of a Court order allowing the Class 2 Claim, or (ii) in equal monthly payments over a period of 5 years with interest on the outstanding balance at the federal judgment rate as of the Effective Date. Otherwise, the mechanic's lien claimants will be paid in accordance with the treatment afforded to General Unsecured Creditors in Class 5. |

Deleted: 61,360,000

Deleted: .

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

### 3.    Classes of Priority Unsecured Claims

Certain priority Claims that are referred to in Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) are required to be placed in Classes.  The Bankruptcy Code requires that each holder of the above Priority Claims receive cash on the Effective Date equal to the allowed amount of such Claim.  However, a Class of unsecured Priority Claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim.  The following chart lists all Classes containing the Debtor's Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) Priority Claims and their treatment under the Plan:

| Priority Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 3 | Priority unsecured claims pursuant to 11 U.S.C. §§ 507(a)(6) and (7)  Estimated total amount of claims: Unknown | N | Allowed Class 3 Priority Unsecured Claims shall be paid in full in cash on the later of the following dates: (i) the Effective Date; and (ii) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Unsecured Claim, unless the Claimant is a tenant of a Property on the Effective Date.  If the Claimant is a tenant of a Property on the Effective Date, then the security deposit will be returned in the ordinary course of the Reorganized Debtor's business. |
| 4 | Priority wage claims pursuant to 11 U.S.C. §§ 507(a)(4) and (5)  Estimated total amount of claims: Unknown | N | Allowed Class 4 Priority Unsecured Claims shall be paid up to the $10,950 statutory maximum in cash on the later of the following dates: (i) the Effective Date; (ii) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Unsecured Claim; or (iii) the date upon which such Allowed Priority Unsecured Claim becomes due according to its terms.  Upon the Effective Date, employees of the Debtor who are retained by the Reorganized Debtor will not be cashed out for all outstanding vacation pay and sick leave accrued as of the Effective Date (Leave Time) but rather, the Reorganized Debtor will agree to honor all such vacation days and sick leave in accordance with the terms of the employee's employment as it existed with the Debtor or the Receiver.  Accordingly, Class 4 Claims that fall into the above category will receive no distribution on account of their Class 4 Claims.  For Allowed Class 4 Claims that do not fall into the above category, on the Effective Date, the Reorganized Debtor will pay no more than the |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

378385.2

23

| Priority Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | amount of the Allowed Class 4 Claim to the extent that such Claims satisfy the requirements of 11 U.S.C. §§ 507(a)(4) and (5), less any amounts paid to the holders of such claims by the Debtor or the Receiver prior to the Effective Date.<br><br>Any allowed Claim amounts in excess of $10,950 will be subject to the treatment afforded to General Unsecured Creditors in Class 5. |

## 4.    Class of General Unsecured Claims

General Unsecured Claims are Unsecured Claims not entitled to priority under Bankruptcy Code § 507(a).  The following chart identifies the Plan's treatment of the Classes containing all of the Debtor's General Unsecured Claims:

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 5 | All General Unsecured Claims that are not the Unsecured Deficiency Claim of Fannie Mae<br><br>Estimated total amount of claims: $968,068.68 | Y | On the Effective Date, the Buyer will contribute the sum of $1,000,000 to be used, first, to pay Allowed Administrative Claims and, then, the remainder (the "Unsecured Creditor Fund") to distribute to the holders of Allowed Unsecured Claims.  The Debtor estimates that, after payment of Allowed Administrative Claims, approximately $850,000 will be available to distribute to the holders of Allowed Unsecured Claims.  The Unsecured Creditor Fund will be distributed in one of the two following ways:<br><br>1.    At a minimum, the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim; or<br><br>2.    A portion of the Unsecured Creditor Fund, as determined by the Court in connection with the Confirmation Hearing or as agreed to by Fannie Mae, shall be paid on a *pro rata* basis to <u>only</u> the holders of Allowed Class 5 General Unsecured Claims, and any remainder of the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim. |

Deleted: ¶
¶

Deleted: 100,000 for distribution to the Allowed Unsecured Claims (the "Unsecured Creditor Fund")

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | The treatment proposed herein shall be in full satisfaction of the Allowed Class 5 General Unsecured Claims. |
| | | | The distribution proposed herein shall take place within 30 days following the later of (i) the Effective Date, and (ii) the date of entry of a Court order resolving the final disputed Class 5 or Class 6 Claim. |
| | | | The Debtor estimates that the holders of Allowed Class 5 General Unsecured Claims will be repaid approximately .01% to 88% of their Allowed Claims. |
| 6 | Unsecured Deficiency Claim of Fannie Mae  Estimated total amount of claim: $91,750,000 | Y | On the Effective Date, the Buyer will contribute the sum of $1,000,000 to be used, first, to pay Allowed Administrative Claims and, then, the remainder (the "Unsecured Creditor Fund") to distribute to the holders of Allowed Unsecured Claims.  The Debtor estimates that, after payment of Allowed Administrative Claims, approximately $850,000 will be available to distribute to the holders of Allowed Unsecured Claims.  The Unsecured Creditor Fund will be distributed in one of the two following ways:  1.      At a minimum, the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim; or  2.      A portion of the Unsecured Creditor Fund, as determined by the Court in connection with the Confirmation Hearing or as agreed to by Fannie Mae, shall be paid on a *pro rata* basis to only the holders of Allowed Class 5 General Unsecured Claims, and any remainder of the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim.  In addition to the above, Fannie Mae will receive 5% of the subordinated equity return on the Membership Interests in the Reorganized Debtor (the "Subordinated Equity Return"), if any, from surplus NOI after payment of (i) Debt Service Payments, and (ii) the Priority Return. |

Deleted: 0

Deleted: 10

Deleted: 100,000 for distribution to the Allowed Unsecured Claims (the "Unsecured Creditor Fund").

Deleted: and shall be entitled to a subordinated equity return thereon

Deleted: or

Deleted: Fannie Mae's allocation of the Membership Interests in the Reorganized Debtor may be adjusted upward in consideration for Fannie Mae's voluntary release of guaranties alleged owed by Mr. Knutson and his affiliates.

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

378385.2                        25                    FIRST AMENDED
DISCLOSURE STATEMENT

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | The treatment proposed herein shall be in full satisfaction of any Allowed Class 6 Unsecured Deficiency Claim.<br><br>The distribution proposed herein shall take place within 30 days following the later of (i) the Effective Date, and (ii) the date of entry of a Court order resolving the final disputed Class 5 or Class 6 Claim.  The Subordinated Equity Return, if any, will be distributed on a monthly basis from the future cash flow of the Reorganized Debtor.<br><br>If Fannie Mae timely elects application of 11 U.S.C. § 1111(b)(2), then there will be no Claims in Class 6, and Fannie Mae will not be entitled to the treatment provided herein. |
| 7 | Claim of Arbor<br><br>Estimated total amount of claim: $28,991,802.61 (per proof of claim filed on November 11, 2009) | Y | In full and complete satisfaction of any Allowed Class 7 Claim, Arbor will be allocated up to 20% of the Subordinated Equity Return on the Membership Interests in the Reorganized Debtor, if any, from surplus NOI after payment of (i) Debt Service Payments, and (ii) the Priority Return. |

Deleted: s

Deleted: e

Deleted: r

## 5.    Class of Interest Holders

Interest holders are the parties who hold Membership Interests (*i.e.*, equity interests) in the Debtor.  The Debtor is Delaware limited liability company in which the owners hold Membership Interests.  The following chart identifies the Plan's treatment of the class of Interest holders.

| Interest Holders | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 7 | Interest Holders | Y | On the Effective Date, all existing Membership Interests in the Debtor will be cancelled, annulled, and extinguished. |

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

FIRST AMENDED
DISCLOSURE STATEMENT

E.    **Means of Effectuating the Plan**

1.    **Purchase of the Membership Interests in the Reorganized Debtor**

The Buyer seeks to acquire the Membership Interests in the Reorganized Debtor. The material terms of the proposed acquisition are as follows:

1.    Restructuring of Senior Note.  As provided in Section III.D.2, on the Effective Date, Fannie Mae shall have an Allowed Class 1 Secured Claim in the amount of $68,750,000, bearing interest, to the extent not paid in cash on the Effective Date, at the fixed rate of 5.75% and secured by the Properties and the NOI generated therefrom.

2.    Capital Contribution.  On the Effective Date, the Buyer shall contribute $22,287,500 in cash to be allocated as follows: (a) $14,687,500 shall be used to pay down Fannie Mae's Allowed Class 1 Secured Claim, which, after application of the estimated $10,000,000 in Reserve Funds, will reduce the principal balance of the Allowed Class 1 Secured Claim by a total of $24,687,500 to approximately $44,062,500; (b) $5,600,000 shall be used to fund the deferred capital expenditures necessary to return the Properties to "average condition"; (c) $1,000,000 will be deposited into the Renovation Reserve; (d) $1,000,000 will be used, first, to satisfy the Debtor's Allowed Administrative Claims on the Effective and, then, the remainder will be distributed to the holders of Allowed General Unsecured Claims as provided in Section III.D.4 above, with any surplus to be deposited into the Renovation Reserve.  The Debtor estimates that approximately $850,000 will be available after the payment of Allowed Administrative Claims to distribute to the holders of Allowed General Unsecured Claims.

3.    Additional Plan Funding.  To pay Allowed Administrative Claims on the Effective Date, the Debtor shall first use cash on hand, available cash reserves, and the cash contributed by the Buyer as part of the New Money

Deleted: 1

Deleted: and

Deleted: up to

Deleted: The Buyer will also contribute funds to distribute not less than $100,000 to the holders of Allowed General Unsecured Claims as provided in Section III.D.4 above, to the extent the Debtor's cash on hand and cash reserves are insufficient to do so.

Deleted: T

Deleted: and

378385.2

27

Smiley, Weiland, Golden,
Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   Investment for such purpose. The Buyer shall contribute to the Estate funds

2   sufficient to enable the Debtor to pay Allowed Administrative Claims that are

3   due or expected to be due in full (to the extent that the Debtor's cash on

4   hand, cash reserves, and the cash contributed by the Buyer as part of the

5   New Money Investment to satisfy Allowed Administrative Claims are

6   insufficient to satisfy such Claims) on the Effective Date.

7   4.   Allocation of Membership Interests in the Reorganized Debtor.  In exchange

8   for the New Money Investment, the Buyer will receive 100% of the

9   Membership Interests in the Reorganized Debtor.  However, the Buyer has

10   agreed to allocate 5% of the Subordinated Equity Return, if any, to Fannie

11   Mae. The allocation of Membership Interests in the Reorganized Debtor

12   may be adjusted prior to confirmation of the Plan in consideration for each

13   lender's consent to the Plan and/or voluntary release of guarantees allegedly

14   owed by Mr. Knutson and his affiliates.

15   5.   Priority Return.  The Buyer shall be entitled to a priority return equal to the

16   amount of the New Money Investment, plus a 19% internal rate of return on

17   the New Money Investment (the "Priority Return"), which shall be paid from

18   monthly surplus NOI (after Debt Service Payments), provided the

19   Reorganized Debtor is current on its payments to Fannie Mae on account of

20   the Allowed Class 1 Secured Claim.

21   6.   New Property Manager.  An affiliate of Rose will serve as the property

22   manager (the "Property Manager") for the Properties, and shall be

23   supervised by and report to the Reorganized Debtor.  The Property Manager

24   shall be entitled to a fee of 4% of the Properties' effective gross income.

25   7.   Termination of Receivership.  The Receivership shall be terminated on the

26   Effective Date.

27   8.   Court Approval.  The proposed sale of the Membership Interests in the

28   Reorganized Debtor shall be subject to Court approval.

**Deleted:** to pay Allowed Administrative Claims on the Effective Date

**Deleted:** and

**Deleted:** of the Membership Interests of the Reorganized Debtor to Fannie Mae, and 20% of the Membership Interests in the Reorganized Debtor between the Mezz Lenders

**Deleted:** up to the aggregate amount of (i) a 20% internal rate of return on the New Money Investment, or (ii) two times the New Money Investment, whichever is greater

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Attached hereto as Exhibits "18," "19" and "20" are consolidated cash flow projections for the Portfolio, which include the payments contemplated under the foregoing terms. The projections attached hereto as Exhibit "18" were prepared using the net operating income projections developed by CB Richard Ellis. The projections attached hereto as Exhibit "19" were prepared using the net operating income projections contained in reports prepared by Integra Realty Resources ("IRR"), the appraiser employed by Fannie Mae. The projections attached hereto as Exhibit "20" were prepared using the net operating income projections contained in the Rose Recovery Plan, which projections are subject to revision prior to the Confirmation Hearing based on additional information expected to be provided by the Receiver.

**2.    Funding for the Plan**

As discussed above in Section III.E.1., the Buyer shall contribute $22,287,500 in cash to be allocated as follows: (i) to pay down Fannie Mae's Allowed Class 1 Secured Claim by $14,687,500; (ii) to fund the Renovation Reserve with $1,000,000; (iii) to fund deferred capital expenditures totaling $5,600,000; and (iv) $1,000,000 will be used, first, to satisfy the Debtor's Allowed Administrative Claims on the Effective and, then, the remainder will be distributed to the holders of Allowed General Unsecured Claims as provided in Section III.D.4 above, with any surplus to be deposited into the Renovation Reserve. The monthly distributions required to be made under the Plan will be funded by the cash generated from the Reorganized Debtor's operations. The cash flow projections attached hereto as Exhibits "18," "19" and "20" indicate that there will be sufficient revenue to meet these obligations.

**3.    The Structure of the Reorganized Debtor and Post-Confirmation Management**

As discussed above in Section III.E.1., in exchange for the New Money Investment, the Buyer will receive 100% of the Membership Interests in the Reorganized Debtor. However, the Buyer has agreed to allocate 5% of the Subordinated Equity Return, if any, to Fannie Mae, as provided herein. The Buyer will be a duly formed Delaware limited

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

378385.2                    29

---

Margin annotations:

Deleted: and

Deleted: 1

Deleted: up to

Deleted: .  The Buyer will also contribute funds sufficient to enable the Debtor to satisfy Allowed Administrative Claims on the Effective Date and to distribute not less than $100,000 to the holders of Allowed General Unsecured Claims as proposed herein, to the extent the Debtor's cash on hand and cash reserves are insufficient to do so

Deleted:

Deleted: and

Deleted:  The Buyer will retain 75% of the Membership Interests in the Reorganized Debtor and will allocate 25% among Fannie Mae and the Mezz Lenders as provided herein

1  liability company owed by Mr. Knutson and Rose. The Buyer will be controlled by Rose.

2  The Property Manager will be retained as the property manager for the Properties.

3  Attached hereto as Exhibit "21" is further information regarding the qualifications and

4  experience of Rose and the Property Manager.

5         **4.    Disbursing Agent**

6         The Reorganized Debtor will act as the disbursing agent for the purpose of making

7  all the distributions provided for under the Plan. The disbursing agent shall serve without

8  bond, and will not receive compensation for distribution services.

9     **F.    Risk Factors**

10        The Reorganized Debtor's ability to perform its obligations under the Plan is subject

11 to various factors and contingencies, some or which are described in this section. The

12 following discussion summarizes some of the material risks associated with the Plan, but

13 is not intended to be exhaustive. Moreover, it should be read in connection with the other

14 disclosures contained in this Disclosure Statement and the Plan. Each creditor, in

15 conjunction with its advisors, should supplement the following discussion by analyzing and

16 evaluating the Plan and the Disclosure Statement as a whole. THE RISKS ASSOCIATED

17 WITH THE PLAN MUST BE CAREFULLY CONSIDERED IN DETERMINING WHETHER

18 TO ACCEPT THE PLAN.

19        The Reorganized Debtor's ability to make the Effective Date Payments and to fund

20 the distributions to the holders of Allowed General Unsecured Claims depends on the

21 ability of the Buyer to perform terms outlined in Section III.E.1. above. The Debtor

22 currently estimates that the total amount that must be contributed by the Buyer is

23 approximately $22,287,500. Within ten (10) days after approval of the Disclosure

24 Statement, Mr. Knutson will cause $4,000,000 to be deposited in a segregated account

25 with a financial institution in the State of California to demonstrate the financial ability to

26 fund his obligations under the Plan. Leonard Glickman, the founder and Managing

27 Partner of Rose, testifies that Rose has readily available cash in the amount necessary to

28

Deleted: 0

Deleted: 1

378385.2

FIRST AMENDED
DISCLOSURE STATEMENT

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  fund Rose's share of the New Money Investment.  (*See* Leonard Glickman Declaration at

2  55, ¶ 3.)

3       The Reorganized Debtor's ability to make post-Effective Date payments required by

4  the Plan depends on its ability to generate sufficient revenues from operations.  The

5  Debtor engaged CB Richard Ellis ("CBRE") to independently evaluate and analyze each

6  of the Properties, the market and comparable data, and to prepare stabilized cash flow

7  projections.  Attached hereto as Exhibits "13" through "17" are the seven-year cash flow

8  projections for each Property prepared by CBRE.  The Debtor has also included cash flow

9  projections using the net operating income projections developed by IRR, Fannie Mae's

10  appraiser (Exhibit "19"), and cash flow projections using the net operating income

11  projections developed by Rose (Exhibit "20").  Each of the attached projections indicate

12  that there will be sufficient revenue to make the post-Effective Date payments required by

13  the Plan.  However, the Reorganized Debtor's projected operating earnings and cash flow

14  are based on reports independently prepared by either CBRE, IRR, or Rose and

15  represent a prediction of future events based upon certain assumptions.  Those

16  assumptions are an integral component of the Reorganized Debtor's projections.

17  Because these future events will not necessarily occur, the projections cannot be relied

18  upon as a guarantee of the Reorganized Debtor's actual operations.  In fact, the

19  Reorganized Debtor's actual operations undoubtedly will differ from their projected

20  operations.  However, the Debtor has committed to making the payments described in the

21  Plan.

22      **G.**    <u>Other Provisions of the Plan</u>

23            **1.**    **Executory Contracts and Unexpired Leases**

24                **a.**    <u>Assumptions</u>

25      On the Effective Date, the Reorganized Debtor will assume the executory contracts

26  and unexpired leases identified on the Schedule of Assumed Agreements to be attached

27  to the Plan as Exhibit "1."  The Debtor filed the proposed Schedule of Assumed

28  Agreements with the Court December 24, 2009.  The Debtor reserves the right to amend

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

378385.2          31        FIRST AMENDED
DISCLOSURE STATEMENT

Deleted: T
Deleted: intends to
Deleted: no
Deleted: later than ten (10) days prior to the hearing on the Disclosure Statement

1   the Schedule of Assumed Agreements up to twenty-one (21) days prior to the

2   Confirmation Hearing to: (a) delete any executory contract or unexpired lease and provide

3   for its rejection; or (b) add any executory contract or unexpired lease and provide for its

4   assumption.  The Debtor will provide notice of any amendment to the Schedule of

5   Assumed Agreements to any party or parties to the executory contracts or unexpired

6   leases affected by the amendment.  The Confirmation Order will constitute a Court order

7   approving the assumption, on the Effective Date, of the executory contracts and unexpired

8   leases then identified on the Schedule of Assumed Agreements.

9          The Schedule of Assumed Agreements also identifies any amounts that the

10  Reorganized Debtor must pay to cure defaults under the executory contracts and

11  unexpired leases to be assumed under the Plan (the "Cure Amount").  The Debtor

12  reserves the right to amend the Schedule of Assumed Agreements to modify the Cure

13  Amount for any particular executory contract or unexpired lease up to twenty-one (21)

14  days prior to the Confirmation Hearing.  The Debtor will provide notice of any amendment

15  to the Schedule of Assumed Agreements to any party or parties to the executory contracts

16  or unexpired leases affected by any such amendment.  Any Cure Amount ordered by the

17  Court, through entry of the Confirmation Order, and paid by the Debtor or the Reorganized

18  Debtor shall be deemed to satisfy any and all defaults arising from or related to contract or

19  tort claims of the party to the contract on or prior to the entry of the order confirming the

20  Plan.

21         As required by Bankruptcy Code § 365(b)(1), any and all monetary defaults under

22  each executory contract and expired lease to be assumed will be satisfied in one of the

23  following two ways: (a) the Reorganized Debtor will pay to the non-debtor party to the

24  executory contract or unexpired lease the Cure Amount, as set forth on the Schedule of

25  Assumed Agreements, in cash as soon as reasonably practicable on or after the Effective

26  Date; and/or (b) the Reorganized Debtor will satisfy any other terms that are agreed to by

27  both the Debtor and the non-debtor party to an executory contract or unexpired lease that

28  will be assumed.  If, however, a dispute arises regarding (a) the amount of any proposed

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  cure payments, (b) whether a Reorganized Debtor has provided adequate assurance of

2  future performance under an executory contract or unexpired lease to be assumed, or (c)

3  any other matter pertaining to a proposed assumption, the proposed cure payments will

4  be made on the later of (1) the Effective Date or as soon as practicable thereafter, or (2)

5  within thirty (30) days after entry of a Final Order resolving the dispute and approving the

6  assumption.

7       If you are a party to a lease or contract to be assumed and you object to the

8  assumption of your lease or contract and/or you dispute the Cure Amount related to your

9  lease or contract, then you must file and serve your objection to the Plan within the

10 deadline for objecting to the confirmation of the Plan provided in Section I.B.3. of this

11 document.  Failure to File an objection shall be deemed consent to the Cure Amount and

12 a waiver of any and all rights to challenge such Cure Amount.

13            b.    Rejections

14       On the Effective Date, the Reorganized Debtor will reject the executory contracts

15 and unexpired leases identified on the Schedule of Rejected Agreements attached to the

16 Plan as Exhibit "2."  The Schedule of Rejected Agreements is not an admission that any

17 particular agreement listed thereon is an executory contract or unexpired lease or that the

18 Debtor or Reorganized Debtor have any liability under such agreement.  The Debtor

19 reserves the right to amend the Schedule of Rejected Agreements up to twenty-one (21)

20 days prior to the Confirmation Hearing to (a) delete any executory contract or unexpired

21 lease and provide for its assumption, or (b) add any executory contract or unexpired lease

22 and provide for its rejection.  The Debtor will provide notice of any amendment to the

23 Schedule of Rejected Agreements to any party or parties to the agreement affected by the

24 amendment.  To the extent that an executory contract is not listed on the Schedule of

25 Assumed Agreements and assumed pursuant to Section II.F.1.a. of the Plan, it will be

26 deemed rejected under the Plan whether or not it is listed on the Schedule of Rejected

27 Agreements.

28

**Deleted:** The Debtor intends to file the Schedule of Rejected Agreements with the Court no later than ten (10) days prior to the hearing on the Disclosure Statement.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

378385.2                    33                    FIRST AMENDED
                                                  DISCLOSURE STATEMENT

1    The Confirmation Order will constitute a Court order approving the rejection, as of

2  the Effective Date, of the executory contracts or unexpired leases identified on the

3  Schedule of Rejected Agreements.  Any Claim for damages arising from the rejection

4  under the Plan of any executory contract or unexpired lease must be Filed with the Court

5  and served upon the Reorganized Debtor, and the Reorganized Debtor's counsel within

6  thirty (30) days after the Confirmation Date.  Any such damage Claims that are not timely

7  Filed and served will be forever barred and unenforceable against the Debtor, the Estate,

8  the Reorganized Debtor, and their respective property.  Persons holding these Claims

9  who fail to timely File Claims will be barred from receiving any distributions under the Plan

10  on account of their requested damage Claims.

11    If you are a party to a lease or contract to be rejected and you object to the

12  rejection of your lease or contract, then you must File and serve your objection to the Plan

13  within the deadline for objecting to the confirmation of the Plan provided in Section I.B.3.

14  of this document.

15    **2.    Changes in Rates Subject to Regulatory Commission**

16    **Approval**

17    The Debtor is not subject to governmental regulatory commission approval of its

18  rates.

19    **3.    Potential Avoidance Actions**

20    The Reorganized Debtor reserves the sole right under the Plan to pursue

21  Avoidance Actions and other Actions to the extent they exist.  The Debtor reserves for

22  itself and the Reorganized Debtor all rights to commence and pursue, as appropriate, any

23  and all Actions or Avoidance Actions, whether arising prior to or after the Petition Date, in

24  any court or other tribunal, including without limitation, in an adversary proceeding Filed in

25  the Bankruptcy Court.  While the Debtor has attempted to identify Actions or Avoidance

26  Actions in the Disclosure Statement which may be pursued, and hereby incorporate by

27  reference those disclosures and provisions, the failure to list any potential Action or

28  Avoidance Action, generally or specifically, is not intended to limit the rights of the Debtor

1  or the Reorganized Debtor to pursue any Action or Avoidance Action.  All Avoidance

2  Actions and other Actions are preserved under the Plan for the benefit of the Estate and

3  the Reorganized Debtor.

4      Unless an Action or Avoidance Action against any Person is expressly waived,

5  relinquished, released, compromised or settled as provided or identified in the Plan, any

6  Confirmation Order or prior Bankruptcy Court order, the Debtor and Reorganized Debtor

7  expressly reserve Actions or Avoidance Actions for later adjudication.  Therefore, no

8  preclusion doctrine, including, without limitation, the doctrine of res judicata, collateral

9  estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or

10  laches shall apply to such Action or Avoidance Action upon or after Confirmation or

11  consummation of the Plan.

12      ANY CREDITORS THAT BELIEVE THEY RECEIVED A TRANSFER OR SETOFF

13  THAT IS AVOIDABLE UNDER THE BANKRUPTCY CODE OR THAT HOLDS A CLAIM

14  AGAINST THE ESTATE THAT COULD BE SUBJECT TO AN OBJECTION BASED

15  UPON FAILURE TO RETURN AN AVOIDABLE TRANSFER OR SETOFF, ARE

16  DIRECTED TO REVIEW THEIR RECORDS AND/OR THE DEBTOR'S SCHEDULES

17  FOR FURTHER INFORMATION.  HOWEVER, ALL RIGHTS OF THE DEBTOR AND

18  REORGANIZED DEBTOR ARE RESERVED WITH RESPECT TO ANY AND ALL

19  TRANSFERS OR SETOFFS WHICH MAY BE AVOIDABLE UNDER THE BANKRUPTCY

20  CODE.

21      All professional fees incurred in pursuing the Avoidance Actions or other Actions

22  shall be paid by the Reorganized Debtor without the necessity of a Court order.  However,

23  the Bankruptcy Court will reserve exclusive jurisdiction to decide any and all disputes

24  regarding the payment of the fees and costs related to post-confirmation professional

25  fees, upon request of a party-in-interest and after notice and a hearing.  Action Recoveries

26  and Avoidance Actions Recoveries will be paid to the Reorganized Debtor.

27

28

378385.2

35

FIRST AMENDED
DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   **4.    Retention of Jurisdiction**

2   The Court will retain exclusive jurisdiction during the Plan payout period to resolve

3   disputes and conflicts arising from the administration of the Plan, upon request of a party-

4   in-interest and after notice and a hearing, including, without limitation:

5   1.    The adjudication of the validity, scope, classification, allowance, and

6         disallowance of any Claim;

7   2.    The estimation of any Claim;

8   3.    The allowance or disallowance of Professional-Fee Claims, compensation,

9         or other Administrative Claims;

10  4.    To hear and determine Claims concerning taxes pursuant to Bankruptcy

11        Code §§ 346, 505, 525, and 1146;

12  5.    To hear and determine any action or proceeding brought under Bankruptcy

13        Code §§ 108, 510, 543, 544, 545, 547, 548, 549, 550, 551, and 553;

14  6.    To hear and determine all actions and proceedings which relate to pre-

15        confirmation matters;

16  7.    To hear and determine any issue relating to the assumption or rejection of

17        executory contracts and unexpired leases;

18  8.    To hear and determine any modification to the Plan in accordance with the

19        Bankruptcy Rules and the Bankruptcy Code;

20  9.    To enforce and interpret the terms of the Plan;

21  10.   To correct any defects, cure any omissions, or reconcile any inconsistency

22        in the Plan or the Confirmation Order as may be necessary to carry out the

23        purpose and intent of the Plan;

24  11.   The entry of any order, including injunctions, necessary to enforce title,

25        rights and powers of the Debtor or Reorganized Debtor, and to impose such

26        limitations, restrictions, terms and conditions on such title, rights and powers

27        as the Court may deem necessary including, without limitation, any right of

28        the Debtor or Reorganized Debtor to recover and liquidate assets;

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000   Fax 714-966-1002

378385.2                        36                        FIRST AMENDED
                                                         DISCLOSURE STATEMENT

12.   To determine the validity, extent and priority of all Liens and security

interests against property of the Estate or the Reorganized Debtor;

13.   To hear and resolve any disputes regarding employment applications and

professional fees;

14.   To hear and determine such matters and make such orders as are

consistent with the Plan as may be necessary to carry out the provisions

thereof and to adjudicate any disputes arising under or relating to any order

entered by the Court in this Case;

15.   The entry of an order concluding and terminating this Case; and

16.   To resolve any disputes as to whether there has been a default under the

Plan.

**H.    <u>Tax Consequences of the Plan</u>**

CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX

LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS,

AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended

solely for the purpose of alerting readers about possible tax issues the Plan may present

to the Debtor.  The Debtor and its professionals CANNOT and DO NOT represent that the

tax consequences contained below are the only tax consequences of the Plan because

the Tax Code embodies many complicated rules which make it difficult to state completely

and accurately all the tax implications of any action.

Due to the unsettled and complex nature of some of the tax issues, as well as the

possibility that developments subsequent to the date hereof could affect the tax

consequences of the Plan, the following discussion should not be regarded as definitive or

as covering all possible tax consequences.  Additionally, this summary does not discuss

all aspects of federal income taxation that may be relevant to a particular creditor in light

of its individual circumstances or to certain creditors subject to special treatment under the

federal income tax laws (for example, life insurance companies, tax-exempt organizations,

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

378385.2                              37

1  foreign corporations and individuals who are not citizens or residents of the United

2  States).

3      The Debtor is in the process of determining the impact of the Plan on the Debtor's

4  tax liability.  However, the Debtor does not expect that its tax liability, if any, will affect the

5  distributions to creditors proposed in the Plan.  As stated above, creditors concerned with

6  how the Plan will affect their own tax liability should consult with their own accountants,

7  attorneys, and/or advisors.

8  IV.   **CONFIRMATION REQUIREMENTS AND PROCEDURES**

9      PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

10  SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

11  CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

12  discussion is intended solely for the purpose of alerting readers about basic confirmation

13  issues, which they may wish to consider, as well as certain deadlines for filing Claims.

14  The Debtor CANNOT and DOES NOT represent that the discussion contained below is a

15  complete summary of the law on this topic.

16      Many requirements must be met before the Court can confirm a Plan.  Some of the

17  requirements include that the Plan must be proposed in good faith, acceptance of the

18  Plan, whether the Plan pays creditors at least as much as creditors would receive in a

19  chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the

20  only requirements for confirmation.

21  A.   **Who May Vote or Object**

22      1.   **Who May Object to Confirmation of the Plan**

23      Any party in interest may object to the confirmation of the Plan, but as explained

24  below not everyone is entitled to vote to accept or reject the Plan.

25      2.   **Who May Vote to Accept/Reject the Plan**

26      A creditor has a right to vote for or against the Plan if that creditor has a Claim that:

27  (a) either is an Allowed Claim or is allowed for voting purposes; (b) is classified in an

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   impaired Class; and (c) is entitled to receive or retain some property on account of its

2   Claim.[9]

3                         a.     What Is an Allowed Claim/Interest

4           As noted above, a creditor must first have an allowed Claim to have the right to

5   vote.  Generally, any proof of Claim will be allowed, unless a party-in-interest Files an

6   objection to that Claim.  When an objection to a Claim is Filed, the creditor holding the

7   Claim cannot vote unless and until the Court, after notice and hearing, either overrules the

8   objection or allows the Claim for voting purposes.  Any Person who seeks temporary

9   allowance of its Claim for the purpose of voting on the Plan must promptly take the steps

10  necessary to File an appropriate motion requesting the same and to arrange an

11  appropriate hearing with the Court.

12          THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE BY

13  CLAIMANTS WHOSE CLAIMS WERE NOT SCHEDULED OR SCHEDULED AS

14  DISPUTED, CONTINGENT, OR UNLIQUIDATED HAS NOT BEEN SET.  A creditor may

15  have an Allowed Claim even if a proof of Claim was not timely filed.  A Claim is deemed

16  allowed if (1) it is scheduled on the Debtor's Schedules and such Claim is not scheduled

17  as disputed, contingent, or unliquidated, and (2) no party-in-interest has objected to the

18  Claim.  An interest is deemed allowed if it is scheduled and no party-in-interest has

19  objected to the interest.

20                         b.     What Is an Impaired Claim/Interest

21          As noted above, an allowed Claim only has the right to vote if it is in a Class that is

22  impaired under the Plan.  A Class is impaired if the Plan alters the legal, equitable, or

23  contractual rights of the members of that Class.  For example, a Class comprised of

24  general unsecured Claims is impaired if the Plan fails to pay the members of that Class

25  100% of what they are owed or otherwise impairs the legal rights of claim holders.

26  _____

27      [9]    If the Plan provides that a Class will receive or retain no property on account of its Claims, that

28  Class is deemed to reject the Plan under Bankruptcy Code § 1126(g) and therefore is not entitled to vote.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1   In this case, the Debtor believes that Classes 1, 2, 5, 6, 7 and 8 are impaired and

2   that holders of Claims in each of these Classes are therefore entitled to vote to accept or

3   reject the Plan, unless otherwise specified below.  The Debtor believes that Classes 3 and

4   4 are unimpaired under the Plan.  Any party-in-interest who disputes the Debtor's

5   characterization of its claim or interest as being in an impaired or unimpaired Class may

6   File an objection to the Plan contending that the Debtor has incorrectly characterized the

7   claim, interest, or Class.

8       **3.    Who is Not Entitled to Vote**

9       The following four types of Claims are not entitled to vote:  (1) Claims that have

10  been disallowed; (2) Claims in unimpaired classes; (3) Claims entitled to priority pursuant

11  to Bankruptcy Code §§ 507(a)(2), (a)(3), and (a)(8); and (4) Claims in Classes that do not

12  receive or retain any value under the Plan.  Claims in unimpaired Classes are not entitled

13  to vote because such classes are deemed to have accepted the Plan.  Claims entitled to

14  priority pursuant to Bankruptcy Code §§ (a)(2), (a)(3), and (a)(8) are not entitled to vote

15  because such Claims are not placed in Classes and they are required to receive certain

16  treatment specified by the Bankruptcy Code.  Claims in Classes that do not receive or

17  retain any value under the Plan do not vote because such Classes are deemed to have

18  rejected the Plan.  For this reason, Class 8 is not entitled to vote on the Plan, but is

19  deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE

20  DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE

21  CONFIRMATION OF THE PLAN.

22      **4.    Who Can Vote in More Than One Class**

23      A creditor whose Claim has been allowed in part as a secured claim and in part as

24  an unsecured claim is entitled to accept or reject the Plan in both capacities by casting

25  one ballot for the secured portion of the Claim and another ballot for the unsecured portion

26  of the claim.  Also, a creditor who has a Claim for wages or unpaid vacation, healthcare or

27  retirement benefits, may have both a Priority Claim up to the maximum specified in 11

28  U.S.C. §§ 507(a)(4) and (a)(5), provided the conditions for priority treatment as specified

Deleted: 7

Deleted: 7

378385.2                                40                              FIRST AMENDED
                                                                  DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

1  under 11 U.S.C. § 507(a) are met, <u>and</u> a General Unsecured Claim for all amounts

2  exceeding the statutory maximum.  The holder of such a Claim may cast a ballot for the

3  priority portion of the Claim and another ballot for the general unsecured portion of the

4  Claim.

5          **5.      Votes Necessary to Confirm the Plan**

6          If impaired Classes exist, the Court cannot confirm the Plan unless (1) at least one

7  impaired Class has accepted the Plan without counting the votes of any insiders within

8  that Class, and (2) all impaired Classes have voted to accept the Plan, unless the Plan is

9  eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in

10 Section IV.A.8.

11         **6.      Votes Necessary for a Class to Accept the Plan**

12         A Class of Claims is considered to have accepted the Plan when more than one-

13 half (½) in number, and at least two-thirds (⅔) in dollar amount, of the Claims which

14 actually voted, voted in favor of the Plan.  A Class of interests is considered to have

15 accepted the Plan when at least two-thirds (⅔) in amount of the Interest holders of such

16 Class which actually voted, voted to accept the Plan.

17         **7.      Treatment of Nonaccepting Classes**

18         If at least one impaired Class votes to accept the Plan, and other impaired Classes

19 vote to reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting

20 Classes are treated in the manner required by the Bankruptcy Code.  The process by

21 which nonaccepting Classes are forced to be bound by the terms of a Plan is commonly

22 referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down"

23 on nonaccepting classes of Claims if it meets all consensual requirements except the

24 voting requirements of § 1129(a)(8) and if the Plan does not "discriminate unfairly" and is

25 "fair and equitable" toward each impaired Class that has not voted to accept the Plan as

26 referred to in § 1129(b) and applicable case law.

27

28

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

378385.2                            41

1        **8.    Request for Confirmation Despite Nonacceptance by**

2             **Impaired Classes**

3        The Debtor will ask the Court to confirm the Plan by "cramdown" on all impaired

4    Classes if any of these Classes do not vote to accept the Plan.

5    **B.    Liquidation Analysis**

6        Another confirmation requirement is the so-called "Best Interests Test" embodied in

7    Bankruptcy Code § 1129(a)(7), which requires a liquidation analysis.  Under the Best

8    Interests Test, if a claimant is in an impaired Class and that claimant does not vote to

9    accept the Plan, then that claimant must receive or retain under the Plan property of a

10   value not less than the amount that such holder would receive or retain if the Debtor was

11   liquidated under Chapter 7 of the Bankruptcy Code.

12       In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee.

13   Secured creditors are paid first from the sales proceeds of properties on which the

14   secured creditor has a lien.  Administrative Claims are paid next.  Next, unsecured

15   creditors are paid from any remaining sales proceeds, according to their rights to priority.

16   Unsecured creditors with the same priority share in proportion to the amount of their

17   allowed claims in relationship to the amount of total allowed unsecured claims.  Finally,

18   interest holders receive the balance that remains after all creditors are paid, if any.

19       For the Court to be able to confirm the Plan, the Court must find that all creditors

20   and interest holders who do not accept the Plan will receive at least as much under the

21   Plan as such holders would receive under a chapter 7 liquidation.  The Debtor maintains

22   that this requirement is met here because pursuant to the liquidation analyses below,

23   creditors are projected to receive at least as much as they would receive in a hypothetical

24   chapter 7 liquidation.

25   **ASSETS VALUED AT LIQUIDATE VALUES:**

26   CURRENT ASSETS

27

28

378385.2                         42                    FIRST AMENDED
                                                     DISCLOSURE STATEMENT

| | | |
|---|---|---|
| a. | The Properties | $58,750,000[10] |
| b. | Cash on hand | $10,000,000 |

**TOTAL ASSETS AT LIQUIDATION VALUE**          $ 68,750,000

LESS
| | | |
|---|---|---|
| a. | Secured Creditor (Fannie Mae) Recovery | $ 160,500,000 |
| b. | Secured Creditor (Mechanic's Lien) Recovery | $   Unknown |
| c. | Chapter 7 trustee fees and expenses | $   2,085,750 |
| d. | Chapter 11 professional fees | $   150,000 |
| e. | Chapter 11 non-professional fee administrative expense claims | $   0 |
| f. | Priority claims, excluding administrative expense claims | $   Unknown |

TOTAL SECURED AND PRIORITY LIABILITIES          $ 162,735,750

| | | |
|---|---|---|
| 1. | Balance for unsecured claims | $   0 |
| 2. | Total amount of unsecured claims | $ 968,068.68 |

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION = 0%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN = .001% to 10%**

Below is a demonstration, in tabular format, that all creditors are projected to receive at least as much under the Plan as such creditor would receive under a chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 Secured Claims | 100% | 100% |
| Class 2 Secured Claims | 0% | 0% |
| Class 3 Priority Unsecured Claims | 100% | 0% |
| Class 4 Priority Wage Claims | 100% | 0% |
| Class 5 General Unsecured Claims | .01% to 88% | 0% |
| Class 6 Unsecured Claim | Uncertain | 0% |
| Class 7 Unsecured Claim | Uncertain | 0% |
| Class 8 Interest Holders | 0% | 0% |

| |
|---|
| Deleted: 0 |
| Deleted: 10 |
| Deleted: 7 |
| Deleted: Interest Holders |
| Deleted: 0% |

---

[10] This amount is based on appraisal reports prepared Richard J. Kalinowski, Jr., MAI, on behalf of the Debtor.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## C.  **Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses which are entitled to be paid on such date.  The Debtor maintains that this aspect of feasibility is satisfied.  The cash necessary to pay Allowed Administrative Claims and statutory costs and charges, to restructure the Senior Note held by Fannie Mae as proposed herein, and to fund the distributions to the holders of Allowed General Unsecured Claims will be paid by the Debtor from cash on hand and cash reserves and/or from cash contributed by the Buyer upon confirmation of the Plan or shortly thereafter.  Mr. Knutson will set aside $4,000,000 to demonstrate his financial ability to contribute to capitalization of the Buyer upon approval of the Disclosure Statement.  Leonard Glickman, the founder and Managing Partner of Rose, testifies that Rose has readily available cash in the amount necessary to fund Rose's share of the New Money Investment.  (*See* Leonard Glickman Declaration at 55, ¶ 3.)

The second aspect of the feasibility analysis considers whether the Reorganized Debtor will have enough cash over the life of the Plan to make the required Plan payments.  The Debtor has provided financial statements, which include both historical financial information (Exhibits "3" through "12") and cash flow projections (Exhibit "13" through "20").  The cash flow projections attached hereto contain the NOI projections independently developed by three separate entities (*i.e.*, CBRE, IRR, and Rose).  Each of the projections indicate that the Reorganized Debtor will be able to make its projected payments under the Plan, and still have cash for its operations.  The Debtor and its professionals do not guarantee that the projections will be met.  Moreover, the Debtor's professionals have relied solely upon the data presented to them by the Debtor's

| Deleted: 19 |
| Deleted: The Reorganized Debtor's |
| Deleted: it |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

1  management and its consultants.  However, annualization of the NOI from October 2009,

2  as reported by the Receiver, demonstrates that the Properties are currently generating

3  sufficient revenue to satisfy the monthly debt service payments required by the Plan.

4  YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL

5  ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL

6  STATEMENTS.

7         Under the Plan, the Reorganized Debtor is required to make monthly payments

8  from cash generated through operations each month to Fannie Mae to service the

9  Allowed Class 1 Secured Claim.  The Debtor's projections indicate that the Reorganized

10  Debtor will have sufficient NOI to make the required debt service payments under the

11  Plan.

12         In sum, the Debtor believes that it will have sufficient cash on hand on the Effective

13  Date (together with the contributions required to be made by the Buyer) to fund the Plan,

14  and to pay the other required expenses under the Plan from the future cash flow of the

15  Reorganized Debtor.

16         **D.    Claims**

17         THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE BY

18  CLAIMANTS WHOSE CLAIMS WERE NOT SCHEDULED OR SCHEDULED AS

19  DISPUTED, CONTINGENT OR UNLIQUIDATED HAS NO YET BEEN SET.  Pursuant to

20  the Plan, the Reorganized Debtor or any other party-in-interest shall have up until 180

21  days after the Effective Date to File objections to Claims.  The Reorganized Debtor may

22  obtain an extension of this date by Filing a motion in the Bankruptcy Court, based upon a

23  showing of "cause."  If, at the time of any distribution, a Claim under the Plan is subject to

24  a pending objection, the Reorganized Debtor shall have the right to hold in trust any funds

25  that would be distributed to that claimant if the Claim were Allowed.  Any unused funds

26  held in trust as described in this Section shall, pursuant to the Plan, be distributed to the

27  holders of Allowed General Unsecured Claims on a *pro rata* basis.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

378385.2

45

1  V.  **EFFECT OF CONFIRMATION**

2      A.  **Discharge**

3          The rights under the Plan and the treatment of Claims under the Plan will be in

4  exchange for, and in complete satisfaction, discharge, and release of, all Claims of any

5  nature whatsoever (including, without limitation, any interest accrued on Claims from and

6  after the Petition Date) against the Debtor, the Reorganized Debtor, or their property.

7  Except as otherwise provided in the Plan or the Confirmation Order:

8          1.      On the Effective Date, the Debtor, the Debtor's Estate, the Reorganized

9                  Debtor, and their property will, to the fullest extent permitted by Bankruptcy

10                 Code § 1141, be deemed discharged and released from any and all Claims,

11                 including, without limitation, all demands, liabilities, Claims, that arose before

12                 the Confirmation Date or that are based upon or otherwise relate to acts,

13                 events, omissions, transactions or other activities of any kind that occurred

14                 before the Confirmation Date, and all debts of the kind specified in

15                 Bankruptcy Code §§ 502(g), 502(h), or 502(I) regardless of whether: (1) a

16                 proof of Claim based on such a debt is Filed or deemed Filed; (2) a Claim

17                 based on such a debt is allowable under Bankruptcy Code § 502; or (3) the

18                 Person holding the Claim based on such a debt has accepted the Plan;

19         2.      All Persons will be precluded from asserting against the Debtor, the Estate,

20                 the Reorganized Debtor, or their property any other or further Claims based

21                 on, arising from, or in connection with any act, event, omission, transaction,

22                 or other activity of any kind that occurred before the Confirmation Date;

23         3.      Any debt of the Debtor, whether secured or unsecured, which was in default

24                 as of or any time prior to the Confirmation Date, will no longer be deemed in

25                 default.  Moreover, to the extent that the Debtor complies with the terms and

26                 conditions of the Plan, these obligations will be deemed in good standing;

27         4.      As set forth in Bankruptcy Code §§ 524 and 1141, except as otherwise

28                 provided in the Plan or the Confirmation Order, the Confirmation Order

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714/966-1000 Fax 714/966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    constitutes a discharge of any and all Claims against, and all debts and

2    liabilities of, the Debtor.  The Reorganized Debtor and its property will, to the

3    fullest extent permitted by Bankruptcy Code § 1141, be deemed discharged

4    and released from any and all Claims, including, without limitation, all

5    demands, liabilities, Claims, that arose before the Confirmation Date or that

6    are based on or otherwise relate to acts, events, omissions, transactions or

7    other activities of any kind that occurred before the Confirmation Date.  This

8    discharge will void any judgment that was obtained against any of the

9    Debtor at any time only to the extent that the judgment relates to a

10    discharged Claim; and

11    5.    Subject to the limitations and conditions imposed under Bankruptcy Code §

12    1125(e), Persons who – in good faith and in compliance with applicable

13    Bankruptcy Code provisions -- either solicit Plan acceptances or rejections or

14    participate in the offer, issuance, sale, or purchase of securities under the

15    Plan will not be liable on account of their solicitation or participation for

16    violation of any applicable law, rule, or regulation governing the solicitation

17    of Plan acceptances or rejections or the offer, issuance, sale or purchase of

18    such securities.

19    **B.**    **Revesting of Property in the Reorganized Debtor**

20    Except as provided in the Plan or in any agreements contemplated under the Plan,

21    the confirmation of the Plan revests all the property of the Estate in the Reorganized

22    Debtor.

23    **C.**    **Modification of the Plan**

24    The Debtor may modify the Plan at any time before confirmation.  If the Plan is

25    modified, however, the Court may require a new Disclosure Statement or re-voting on the

26    Plan depending upon the nature of the modifications and their effect on parties-in-interest.

27    The Debtor may also seek to modify the Plan at any time after confirmation if: (a) the Plan

28

1  has not been substantially consummated; and (b) the Court, after notice and a hearing,

2  authorizes the proposed modification.

3        **D.    Post-Confirmation Status Report**

4        Within 120 days of the entry of the Confirmation Order, the Reorganized Debtor will

5  file a status report with the Court explaining what progress has been made towards

6  consummation of the confirmed Plan. The status report shall be served on the OUST,

7  Fannie Mae, the creditors holding the 20 largest unsecured claims, and the parties who

8  have requested special notice. Further status reports shall be field every 120 days and

9  served on the same entities until the Plan has been fully consummated.

10       **E.    Quarterly Fees**

11       Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to confirmation shall be

12  paid to the OUST on or before the Effective Date. Quarterly fees accruing under 28

13  U.S.C. § 1930(a)(6) after confirmation shall be paid to the OUST by the Reorganized

14  Debtor until a final decree, or the entry of an order dismissing the Case or converting the

15  Case to chapter 7, at the rate in effect at the time such fees are due.

16       **F.    Post-Confirmation Conversion/Dismissal**

17       After the Plan is confirmed, a creditor or party-in-interest may bring a motion, only

18  after notice and a hearing, to convert or dismiss this Case under Bankruptcy Code §

19  1112(b) if there is a material default in performing the Plan. If the Court orders the Case

20  converted to Chapter 7 after the Plan is confirmed, then all property that had been

21  property of the Estate and that has not been distributed under the Plan will revest in the

22  chapter 7 estates. The automatic stay will be reimposed upon the revested property only

23  to the extent that relief from stay was not previously authorized by the Court during the

24  Case.

25       The Confirmation Order may also be revoked under very limited circumstances.

26  The Court may revoke the Confirmation Order if it was procured by fraud and if a party-in-

27  interest brings an adversary proceeding to revoke the confirmation within 180 days after

28  the entry of the Confirmation Order.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

378385.2                                    48                    FIRST AMENDED
                                                        DISCLOSURE STATEMENT

G.    **Final Decree**

Once the Estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor will File a Motion with the Court to obtain a final decree closing the Case.

Dated:  January ___, 2010            PHOENIX KINGDOM II, LLC

By: _____
    TERRY KNUTSON
    President

Dated:  January ___, 2010            WEILAND, GOLDEN,
                                     SMILEY, WANG EKVALL & STROK, LLP

By: _____
    ROBERT S. MARTICELLO
    Attorneys for Debtor and Debtor-in-
    Possession, Phoenix Kingdom II, LLC

Deleted: November 30
Deleted: 09
Deleted: /s/ Terry Knutson

Deleted: November 30
Deleted: 09
Deleted: /s/ Robert S. Marticello

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## TABLE OF DEFINITIONS

**"Actions"** means any action, other than Avoidance Actions, that arises prior to the Effective Date.

**"Administrative Claim"** means a Claim against the Debtor for administrative costs or expenses that are allowable under Bankruptcy Code § 503(b).

**"Administrative Tax Claim"** means an Administrative Claim or other Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor for taxes (or for related interest or penalties) for any tax period that, either in whole or in part, falls within the period beginning on the Petition Dates and ending on the Effective Date.

**"Allowed Claim"** means a Claim against the Debtor, other than an Administrative Claim, to the extent that:

    a.    Either: (i) a proof of Claim was timely Filed; or (ii) a proof of Claim is deemed timely Filed either under Bankruptcy Rule 3003(b)(1) or by a Final Order; and

    b.    Either: (i) the Claim is not a Disputed Claim; (ii) the Claim is allowed by a Final Order; or (iii) the Claim is allowed under the Plan.

**"Allowed [Class Designation and/or Secured, Priority, or General Unsecured] Claim"** means an Allowed Claim in the specified Class and/or of the specified type.

**"Anthracite"** means Anthracite Funding, LLC.

**"Arbor"** means Arbor Realty Mortgage Securities Series 2005-1, Ltd.

**"Avoidance Actions"** mean preference and other avoidance actions under 11 U.S.C. §§ 544 *et. seq.*

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101-1330.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Bar Date"** means the last date for filing proofs of claim in the Debtor's Case.

**"Bar Date Motion"** means the Debtor's motion to establish the last date for filing proofs of claim in the Debtor's Case.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

1     **"Bethany"** means The Bethany Group and related entities, which served as the

2 Debtor's property and asset manager prior to the Petition Dates.

3     **"Buyer"** means the entity formed and owned by Mr. Knutson and Rose to

4 purchase the Membership Interests in the Reorganized Debtor.

5     **"Case"** means the Debtor's voluntary case under chapter 11 of the Bankruptcy

6 Code that is pending before the United States Bankruptcy Court for the Central District of

7 California, Santa Ana Division.

8     **"CBRE"** means CB Richard Ellis.

9     **"Claim"** means a claim, as the term "claim" is defined in Bankruptcy Code

10 § 101(5), against a Debtor.

11     **"Class"** or **"Class of Claims or Interests"** means a group of Claims or Interests

12 as classified under the Plan.

13     **"Confirmation Date"** means the date on which the Court enters the Confirmation

14 Order on its docket.

15     **"Confirmation Hearing"** means the hearing held by the Court on the confirmation

16 of the Plan.

17     **"Confirmation Order"** means the Court order confirming the Plan under

18 Bankruptcy Code § 1129.

19     **"Court"** means the United States Bankruptcy Court for the Central District of

20 California, Santa Ana Division.

21     **"Cure Amount"** means any amounts that the Reorganized Debtor must pay to

22 cure defaults under the executory contracts and unexpired leases to be assumed under

23 the Plan.

24     **"Debt Service Payments"** means the monthly interest payments on the

25 outstanding principal balance of the Allowed Class 1 Secured Claim required under the

26 Plan.

27     **"Debtor"** means Phoenix Kingdom II, LLC.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

378385.2                 51                 DEFINITIONS

1   **"Disclosure Statement"** means the Disclosure Statement Describing Joint

2   Chapter 11 Plan.

3   **"Effective Date"** means 30 days after entry of the Confirmation Order.

4   **"Effective Date Payments"** means payments required by the Plan to be made by

5   the Debtor on the Effective Date.

6   **"Estate"** means the bankruptcy estate created in the Debtor's Case under

7   Bankruptcy Code § 541.

8   **"Evidentiary Hearing"** means the evidentiary hearing on the Stay Relief Motion.

9   **"Exclusivity Motion"** means the motion filed by the Debtor on November 3, 2009

10  for an order extending its exclusive periods to file a plan and to solicit acceptances of its

11  plan.

12  **"Fannie Mae"** means Federal National Mortgage Association.

13  **"File," "Filed," or "Filing"** means duly and properly filed with the Court and

14  reflected on the Court's official docket.

15  **"Final Order"** means an order or judgment of the Court entered on the Court's

16  docket.

17  a.   That has not been reversed, rescinded, stayed, modified, or amended;

18  b.   That is in full force and effect; and

19  c.   With respect to which (i) the time to appeal or to seek review, remand,

20       rehearing, or a writ of certiorari has expired and as to which no timely Filed

21       appeal or petition for review, rehearing, remand, or writ of certiorari is

22       pending, or (ii) any such an appeal or petition has been dismissed or

23       resolved by the highest court to which the order or judgment was appealed

24       or from which review, rehearing, remand, or a writ of certiorari was sought.

25  **"Interests"** means an equity interest in the Debtor.

26  **"Junior Mezz Loan Agreement"** means the Junior Mezzanine Loan Agreement

27  dated June 1, 2007, pursuant to which Lehman loaned Phoenix Kingdom II Mezz2, LLC,

28  the sum of $27,510,000.

378385.2                          52                          DEFINITIONS

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP

1    **"Lehman"** means Lehman Brothers Bank, FSB.

2    **"Lehman Loan"** means the loans made by Lehman to the Debtor and its affiliates

3    in the aggregate sum of approximately $238,010,000.

4    **"Lehman Loan Documents"** collectively means the Senior Loan Agreement, the

5    Senior Mezzanine Loan Agreement, and the Junior Mezzanine Loan Agreement pursuant

6    to which Lehman loaned the aggregate sum of approximately $238,010,000 to the Debtor

7    and its affiliates.

8    **"Membership Interests"** means the membership interests in the Debtor or the

9    Reorganized Debtor.

10   **"Mezz Lenders"** collectively means Anthracite and Arbor.

11   **"Monthly Payment Procedure"** means the "Modified Fee Application Procedures"

12   authorized in the Debtor's applications to employ Weiland Golden.

13   **"MOR"** means the Debtor's monthly operating reports.

14   **"Motion"** means a request asking a judge to issue a ruling or order on a legal

15   matter.

16   **"New Money Investment"** means the $22,340,000 in cash to be contributed by

17   the Buyer on the Effective Date to purchase the Membership Interests in the Reorganized

18   Debtor.

19   **"NOI"** means net operating income, which is effective gross income generated by

20   the Properties less general operating expenses necessary to operate and maintain the

21   Properties.

22   **"Non-Ordinary-Course Administrative Claims"** means Administrative Claims

23   that are not Ordinary Course Administrative Claims, Administrative Tax Claims, or

24   Professional-Fee Claims, including Claims that may arise from agreements entered into

25   with the Estate after the Petition Date other than trade agreements.

26   **"Non-Professional Administrative Claims"** means Administrative Claims that are

27   not Professional-Fee Claims.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    **"Note"** means the Promissory Note dated June 1, 2007, between Lehman and the

2    Debtor.

3    **"Ordinary-Course Administrative Claims"** means Administrative Claims–other

4    than Administrative Tax Claims, Professional-Fee Claims, and Non-Ordinary-Course

5    Administrative Claims, based upon liabilities that the Debtor incurs in the ordinary course

6    of their business.

7    **"OUST"** means the Office of the United States Trustee, Santa Ana Division.

8    **"Person"** means any individual, corporation, general partnership, limited

9    partnership, limited liability company, association, joint-stock company, joint venture,

10    estate, trust, government, political subdivision, governmental unit (as defined in the

11    Bankruptcy Code), official committee appointed by the United States Trustee, unofficial

12    committee of creditors or equity holders, or entity.

13    **"Petition Date"** refers to the petition date for the Debtor.

14    **"Plan"** means the Debtor's Chapter 11 Plan of Reorganization, including any

15    modifications or amendments to the Plan.

16    **"Priority Claim"** means an Allowed Claim entitled to priority against an Estate

17    under Bankruptcy Code §§ 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7).

18    **"Priority Return"** means the return to which the Buyer is entitled from monthly

19    surplus NOI (after Debt Service Payments) equal to the amount of the New Money

20    Investment, plus a 19% internal rate of return on the New Money Investment.

21    **"Priority Tax Claim"** means an Allowed Claim entitled to priority against an Estate

22    under Bankruptcy Code § 507(a)(8).

23    **"Portfolio"** means the Phoenix Kingdom II portfolio.

24    **"Professional-Fee Claim"** means:

25    a.    A Claim under Bankruptcy Code §§ 327, 328, 330, 331, 503, or 1103 for

26         compensation for professional services rendered or expenses incurred on

27         an Estate's behalf, or

28

> **Deleted:** the return to which the Buyer is entitled from monthly surplus NOI (after Debtor Service Payments) up to the aggregate amount of (i) a 20% internal rate of return on the New Money Investment, or (ii) two times the New Money Investment, whichever is greater.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

378385.2

54

DEFINITIONS

1        **b.**    A Claim either under Bankruptcy Code § 503(b)(4) for compensation for

2                professional services rendered or under Bankruptcy Code § 503(b)(3)(D) for

3                expenses incurred in making a substantial contribution to an Estate.

4      **"Properties"** means the Debtor's five occupied apartment complexes in Phoenix,

5 Arizona metropolitan area.

6      **"Reorganization Case"** means the Debtor's voluntary case under Chapter 11 of

7 the Bankruptcy Code that is pending before the United States Bankruptcy Court for the

8 Central District of California, Santa Ana Division.

9      **"Reorganized Debtor"** means the Debtor, as reorganized pursuant to the Plan as

10 of the Effective Date of the Plan.

11      **"Receiver"** means 707 Management Services, Inc.

12      **"Request for Payment"** means a request for the payment of a Non-Professional

13 Non-Ordinary Course Administrative Claim as described in Section III.D.1.e. of the

14 Disclosure Statement.

15      **"Reserve Funds"** shall have the meaning ascribed to such term in the Senior Loan

16 Agreement.

17      **"Schedule of Assumed Agreements"** means a list of executory contracts and

18 unexpired leases assumed by the Debtor.

19      **"Schedule of Rejected Agreements"** means a list of executory contracts and

20 unexpired leases rejected by the Debtor.

21      **"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien

22 against property in which an Estate has an interest or that is subject to setoff under

23 Bankruptcy Code § 553. A Claim is a Secured Claim only to the extent of the value of the

24 Claim holder's interest in that property or to the extent of the amount subject to setoff, as

25 applicable, as determined under Bankruptcy Code § 506(a).

26      **"Senior Loan Agreement"** means the Loan Agreement dated June 1, 2007,

27 pursuant to which Lehman loan the Debtor the sum of $160,500,000.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714.966.1000  Fax 714.966.1002

378385.2                55               DEFINITIONS

1   **"Senior Mezz Loan Agreement"** means the Senior Mezzanine Loan Agreement

2   dated June 1, 2007, pursuant to Lehman loaned Phoenix Kingdom II Mezz1, LLC, the

3   sum of $50,000,000.

4   **"SOFA"** means the Debtor's statements of financial affairs.

5   **"Stay Relief Motion"** means the motion filed on August 14, 2009 by Fannie Mae

6   for relief from the automatic stay.

7   **"Stipulation"** means the stipulation among the Debtor, Fannie Mae, and the

8   Receiver to (i) allow the Receiver to remain in possession of the Properties subject to the

9   requirements of the Bankruptcy Code and the jurisdiction of the Court, and (ii) authorize

10   the Receiver to use cash collateral pursuant to maintain and operate the Properties in the

11   ordinary course of business.

12   **"Subordinated Equity Return"** means the return paid on the Membership

13   Interests in the Reorganized Debtor from surplus NOI and/or proceeds from the sale or

14   refinancing of the Properties after Debt Service Payments and the payment of the Priority

15   Return.

16   **"Tax Code"** means the Internal Revenue Code.

17   **"Unsecured Claim"** or **"General Unsecured Claim"** means a Claim that is not an

18   Administrative Claim, a Priority Tax Claim, a Priority Claim, or a Secured Claim.

19   **"Weiland Golden"** means Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP.

20

21

22

23

24

25

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

378385.2                    56                    DEFINITIONS

## DECLARATION OF TERRY R. KNUTSON

I, Terry R. Knutson, declare as follows:

1.      I am the President of the Debtor.  I am submitting this declaration in support of the First Amended Disclosure Statement Describing First Amended Chapter 11 Plan of Reorganization (the "Disclosure Statement").  All terms defined in the Disclosure Statement are incorporated herein by this reference.  The following is based upon my personal knowledge and if called as a witness herein, I could and would competently testify thereto.

2.      The Debtor's general insolvency counsel, Weiland Golden prepared this Disclosure Statement and the accompanying Plan at the direction of, and with the review, input, and assistance of the Debtor's management and its consultants, including myself.

3.      All financial data referenced in this Disclosure Statement and the accompanying Plan has been generated by the Debtor or its consultants from the information in the Debtor's books and records, or from other sources deemed to be reliable.

4.      All facts and representations in this Disclosure Statement and the accompanying Plan are true to the best of my knowledge.

5.      To the best of my knowledge, the Disclosure Statement includes all facts that would be material to a creditor in determining whether to vote to accept or reject the Plan.

///

///

///

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

378385.2                              57                            DECLARATION

1    6.    Upon approval of the Disclosure Statement, I will cause to be deposited the

2  sum of $4,000,000 into a separate account with a financial institution in the State of

3  California for the purpose of demonstrating my ability to financially perform in accordance

4  with the Plan.

5    I declare under penalty of perjury that the foregoing is true and correct.

6    Executed on this____day of January, 2010, at Lodi, California.

7

8                                    _____
                                      Terry R. Knutson

9

| Deleted: 30th |
| Deleted: Novembe |
| Deleted: r |
| Deleted: 09 |
| Deleted: /s/ Terry R. Knutson¶ |

Welland, Golden,
Smiley, Wang, Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

378385.2                              58                        DECLARATION

**DECLARATION OF LEONARD GLICKMAN**

I, Leonard Glickman, declare as follows:

1.      I am the founder and Managing Partner of Rose Investments, LLC ("Rose"), a family real estate development and investment firm based in Beverly Hills, California.  I am submitting this declaration in support of the First Amended Disclosure Statement Describing First Amended Chapter 11 Plan of Reorganization (the "Disclosure Statement").  All terms defined in the Disclosure Statement are incorporated herein by this reference.  The following is within my personal knowledge, and if called upon as a witness, I could and would testify competently with respect thereto.

2.      Together, my partners and I have been investing in real estate projects for over 30 years.  We have built, owned, and continue to manage upwards of 15,000 multi-family units and 5,000,000 square feet of commercial space.  During my career, I have personally entitled, built, owned and continue to manage a wide array of projects from five unit single-family projects to 800-acre master planned communities.

3.      Rose has readily available cash in amount necessary to fund its share of the New Money Investment as required by the Plan, provided it is confirmed, on or before the Effective Date.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___ day of January, 2010, at _____.

| Deleted: 30th |
| Deleted: November |
| Deleted: 09 |
| Deleted: New York, New York |

_____
Leonard Glickman

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

378385.2                              59                    DECLARATION

<table>
<tr><td>In re:<br><br>**PHOENIX KINGDOM II, LLC, a Delaware limited liability company**<br><div align="right">Debtor(s).</div></td><td>CHAPTER: **11 Case**<br><br>CASE NUMBER: **8:09-bk-16755-RK**</td></tr>
</table>

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 950, Costa Mesa, California 92626**

A true and correct copy of the foregoing document described "REDLINED" FIRST AMENDED DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED CHAPTER 11 PLAN will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On **January 5, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☑ Service information continued on attached page

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On **January 5, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☑ Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 5, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

The Honorable Robert Kwan, Ctrm. 5D
United States Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street
Santa Ana, CA 92701-4593

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 5, 2010 | Cristina Guido | /s/ Cristina Guido |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1

| In re:<br>**PHOENIX KINGDOM II, LLC, a Delaware limited liability company**<br><div align="right">Debtor(s).</div> | CHAPTER: **11 Case**<br><br>CASE NUMBER: **8:09-bk-16755-RK** |
|---|---|

**ADDITIONAL SERVICE INFORMATION (if needed):**

**BY NOTICE OF ELECTRONIC FILING ("NEF")**

J Scott Bovitz     bovitz@bovitz-spitzer.com
Drew A Callahan     dcallahan@piteduncan.com, kduke@piteduncan.com
Eric A Cook     ecook@ebglaw.com
Beth Gaschen     bgaschen@wgllp.com
Michael I. Gottfried     mgottfried@lblawllp.com, aerskine@lblawllp.com
Brian T Harvey     bharvey@buchalter.com, IFS_filing@buchalter.com
Michael J Hauser     michael.hauser@usdoj.gov
Robert S Marticello     Rmarticello@wgllp.com
Hutchison B Meltzer     hmeltzer@wgllp.com
Daniel H Slate     dslate@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
Evan D Smiley     esmiley@wgllp.com
Autumn D Spaeth     aspaeth@wgllp.com
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

**BY OVERNIGHT MAIL**

Office of the U.S. Trustee
411 W. 4th Street, Suite 9041
Santa Ana, CA 92701

Phoenix Kingdom II, LLC
301A Ham Lane
Lodi, CA 95242
Debtor

Terry Knutson
301A Ham Lane
Lodi, CA 95242

Erin O. Simpson
Lewis & Roca LLP
1 South Church Avenue, Suite 700
Tucson, AZ 85701
Attorneys for 707 Management Services, Inc.

J. Scott Bovitz
Bovitz & Spitzer
880 West First Street, Suite 502
Los Angeles, CA 90012
Attorneys for 707 Management Services, Inc.

Daniel Slate, Esq.
Buchalter Nemer, APC
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017
Attorneys for Fannie Mae

**SERVED VIA ELECTRONIC MAIL**

Michael J Hauser     michael.hauser@usdoj.gov
Daniel H Slate     dslate@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
Brian T Harvey     bharvey@buchalter.com, IFS_filing@buchalter.com
Richard M. Pachulski     rpachulski@pszjlaw.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
378908.1

**F 9013-3.1**