**WEILAND, GOLDEN,**
**SMILEY, WANG EKVALL & STROK, LLP**
Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
Robert S. Marticello, State Bar No. 244256
rmarticello@wgllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone:   (714) 966-1000
Facsimile:   (714) 966-1002

Attorneys for Debtor
Phoenix Kingdom II, LLC

<div align="center">

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

</div>

| | |
|---|---|
| In re | Case No. 8:09-bk-16755-RK |
| PHOENIX KINGDOM II, LLC, a Delaware limited liability company, | Chapter 11 Case |
| | **SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED CHAPTER 11 PLAN** |
| Debtor. | **Disclosure Statement Hearing** |
| | DATE:   February 25, 2010 |
| | TIME:   11:00 a.m. |
| | PLACE:  Courtroom 5D |
| |         411 W. Fourth St. |
| |         Santa Ana, CA 92701 |
| | **Plan Confirmation Hearing** |
| | DATE: |
| | TIME: |
| | PLACE:  Courtroom 5D |
| |         411 W. Fourth St. |
| |         Santa Ana, CA 92701 |

Deleted: FIRST

Deleted: FIRST

Deleted: January 6

Deleted: 09

389528.1

SECOND AMENDED
DISCLOSURE STATEMENT

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

    A.  Purpose of this Document ...................................................................... 1

    B.  Deadlines for Voting and Objecting; Date of Plan Confirmation
        Hearing ..................................................................................................... 2

        1.  Time and Place of the Confirmation Hearing ................................. 3

        2.  Deadline for Voting for or Against the Plan .................................... 3

        3.  Deadline for Objecting to the Confirmation of the Plan .................. 3

        4.  Identity of Person to Contact for More Information
            Regarding the Plan ........................................................................ 3

    C.  Disclaimer .............................................................................................. 3

II. BACKGROUND ............................................................................................... 4

    A.  Description and History of the Debtor's Business ................................... 4

        1.  The Properties ............................................................................... 4

        2.  The Lehman Brothers Loan ........................................................... 4

    B.  Principals/Affiliates of the Debtor's Business ......................................... 5

    C.  Management of the Debtor Before and After Bankruptcy ....................... 5

    D.  Events Leading to Chapter 11 Filing ...................................................... 5

    E.  Significant Events During the Bankruptcy ............................................... 7

        1.  Bankruptcy Proceedings ............................................................... 7

            a.  Motion to Approve Stipulation to Allow the
                Receiver to Remain in Possession of the
                Properties and Use Cash Collateral ................................. 7

            b.  Fannie Mae Stay Relief Motion ............................................ 7

            c.  Exclusivity ............................................................................ 8

            d.  Employment of the Debtor's Professionals ........................... 8

            e.  Claims Bar Date .................................................................. 8

            f.  The Debtor's Schedules, Interim Statements, and
                Operating Reports ............................................................... 9

**TABLE OF CONTENTS (cont.)**

| | | Page |
|---|---|---|
| 2. | Other Legal Proceedings | 9 |
| 3. | Actual And Projected Recovery Of Preferential Or Fraudulent Transfers | 9 |
| 4. | Procedures Implemented To Resolve Financial Problems | 10 |
| 5. | Current and Historical Financial Conditions | 11 |
| III. | SUMMARY OF THE PLAN OF REORGANIZATION | 11 |
| A. | Purchase of the Membership Interests in the Reorganized Debtor | 11 |
| B. | What Creditors and Interest Holders will Receive Under the Proposed Plan | 12 |
| C. | Unclassified Claims | 12 |
| 1. | Administrative Expenses | 12 |
| a. | Ordinary Course Administrative Claims | 14 |
| b. | Non-Ordinary Course Administrative Claims | 14 |
| c. | Professional Fee Claims | 15 |
| 2. | Priority Tax Claims | 16 |
| D. | Classified Claims | 17 |
| 1. | Summary of Classes | 17 |
| 2. | Secured Claims | 17 |
| a. | Secured Claim of Fannie Mae | 17 |
| b. | Secured Claims Other Than the Secured Claim of Fannie Mae | 20 |
| 3. | Classes of Priority Unsecured Claims | 20 |
| 4. | Class of General Unsecured Claims | 21 |
| 5. | Class of Interest Holders | 23 |
| E. | Means of Effectuating the Plan | 24 |
| 1. | Purchase of the Membership Interests in the Reorganized Debtor | 24 |

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**TABLE OF CONTENTS (cont.)**

|  |  | **Page** |
|---|---|---|
| 2. | Funding for the Plan | 26 |
| 3. | The Structure of the Reorganized Debtor and Post-Confirmation Management | 26 |
| 4. | Disbursing Agent | 27 |
| F. | Risk Factors | 27 |
| G. | Other Provisions of the Plan | 28 |
| 1. | Executory Contracts and Unexpired Leases | 28 |
| a. | Assumptions | 28 |
| b. | Rejections | 30 |
| 2. | Changes in Rates Subject to Regulatory Commission Approval | 31 |
| 3. | Potential Avoidance Actions | 31 |
| 4. | Retention of Jurisdiction | 32 |
| H. | Tax Consequences of the Plan | 34 |
| IV. | CONFIRMATION REQUIREMENTS AND PROCEDURES | 34 |
| A. | Who May Vote or Object | 35 |
| 1. | Who May Object to Confirmation of the Plan | 35 |
| 2. | Who May Vote to Accept/Reject the Plan | 35 |
| a. | What Is an Allowed Claim/Interest | 35 |
| b. | What Is an Impaired Claim/Interest | 36 |
| 3. | Who is Not Entitled to Vote | 36 |
| 4. | Who Can Vote in More Than One Class | 37 |
| 5. | Votes Necessary to Confirm the Plan | 37 |
| 6. | Votes Necessary for a Class to Accept the Plan | 38 |
| 7. | Treatment of Nonaccepting Classes | 38 |
| 8. | Request for Confirmation Despite Nonacceptance by Impaired Classes | 38 |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 / Fax 714-966-1002

## TABLE OF CONTENTS (cont.)

| | | | Page |
|---|---|---|---|
| | B. | Liquidation Analysis | 38 |
| | C. | Feasibility | 40 |
| | D. | Claims | 41 |
| V. | | EFFECT OF CONFIRMATION | 42 |
| | A. | Discharge | 42 |
| | B. | Revesting of Property in the Reorganized Debtor | 43 |
| | C. | Modification of the Plan | 44 |
| | D. | Post-Confirmation Status Report | 44 |
| | E. | Quarterly Fees | 44 |
| | F. | Post-Confirmation Conversion/Dismissal | 44 |
| | G. | Final Decree | 45 |
| TABLE OF DEFINITIONS | | | 46 |
| DECLARATION OF TERRY R. KNUTSON | | | 53 |
| DECLARATION OF LEONARD GLICKMAN | | | 55 |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**I.** **INTRODUCTION**[1]

Phoenix Kingdom II, LLC (the "Debtor"), is the debtor in a chapter 11 bankruptcy case. On July 6, 2009 (the "Petition Date"), the Debtor commenced this bankruptcy case (the "Case") by filing a voluntary chapter 11 petition under the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 *et seq.* Chapter 11 allows debtors, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization. A plan may provide for a debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

The Debtor's Second Amended Plan (the "Plan") is a reorganizing plan. As described in further detail below, the Debtor seeks to accomplish payments under the Plan by paying creditors from the sale of equity in the "Reorganized Debtor," subject to overbid, to a company to be formed by Yenina, LLC ("Yenina"), and Rose Investments, LLC ("Rose"), a third party equity investor, or over time from the Reorganized Debtor's future operations. The Effective Date of the Plan will be the first business day that is at least 15 days after the entry of an order confirming the Plan (the "Confirmation Order"), provided there has been no appeal from, or order staying the effectiveness of, the Confirmation Order.

A.   **Purpose of this Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

---

[1] Any capitalized terms not defined in the text of this Disclosure Statement are defined in the Table of Definitions found at the end of the Disclosure Statement.

Deleted: First

Deleted: Terry R. Knutson, the Debtor's current President

Deleted: 30

Deleted: .

Deleted: FIRST

1      **1.**   WHO CAN VOTE OR OBJECT,

2      **2.**   WHAT THE TREATMENT OF YOUR CLAIM IS (*i.e.*, what your claim will

3         receive if the Plan is confirmed), AND HOW THIS TREATMENT

4         COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN

5         LIQUIDATION,

6      **3.**   THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING

7         THE BANKRUPTCY CASE,

8      **4.**   WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR

9         NOT TO CONFIRM THE PLAN,

10     **5.**   WHAT IS THE EFFECT OF CONFIRMATION, AND

11     **6.**   WHETHER THIS PLAN IS FEASIBLE.

12       This Disclosure Statement cannot tell you everything about your rights.  You should

13  consider consulting your own lawyer to obtain more specific advice on how the Plan will

14  affect you and what is the best course of action for you.  Weiland, Golden, Smiley, Wang

15  Ekvall & Strok, LLP ("Weiland Golden"), general insolvency counsel to the Debtor, does

16  not represent you.

17       Be sure to read the Plan as well as the Disclosure Statement.  If there are any

18  inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will

19  govern.

20       The Code requires that a disclosure statement contain "adequate information"

21  concerning the Plan.  By order entered on _____, the Bankruptcy Court (the "Court")

22  approved this document as an adequate Disclosure Statement, containing enough

23  information to enable parties affected by the Plan to make an informed judgment about

24  the Plan.  Any party can now solicit votes for or against the Plan.

25     **B.**   <u>Deadlines for Voting and Objecting; Date of Plan Confirmation</u>

26        <u>Hearing</u>

27       THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

28  DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Deleted: FIRST

1 NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS

2 THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

3 CREDITORS AND INTEREST HOLDERS IN THIS CASE.

4     **1.**    **Time and Place of the Confirmation Hearing**

5     The hearing where the Court will determine whether or not to confirm the Plan will

6 take place on _____, 2010, at __:__ __.m. in Courtroom 5D of the Ronald Reagan

7 Federal Building and United States Courthouse located at 411 West Fourth Street, Santa

8 Ana, California 92701.

9     **2.**    **Deadline for Voting for or Against the Plan**

10     If you are entitled to vote, it is in your best interest to timely vote on the enclosed

11 ballot and return the ballot in the enclosed envelope to Weiland, Golden, Smiley, Wang

12 Ekvall & Strok, LLP, attn: Robert S. Marticello, Esq. 650 Town Center Drive, Suite 950,

13 Costa Mesa, California 92626.

14     Your ballot must be received no later than 5:00 p.m. (Pacific Standard Time) on

15 _____ or it will not be counted.

16     **3.**    **Deadline for Objecting to the Confirmation of the Plan**

17     Objections to the confirmation of the Plan must be filed with the Court and served

18 upon counsel for the Debtor so as to be received by no later than 5:00 p.m. (Pacific

19 Standard Time) on _____.

20     **4.**    **Identity of Person to Contact for More Information Regarding the**

21         **Plan**

22     Any interested party desiring further information about the Plan should contact

23 Evan D. Smiley, Robert S. Marticello, or Beth E. Gaschen of Weiland, Golden, Smiley,

24 Wang Ekvall & Strok, LLP, by phone at (714) 966-1000 or by e-mail at

25 esmiley@wgllp.com, rmarticello@wgllp.com, or bgaschen@wgllo.com.

26     **C.**    **Disclaimer**

27     The financial data relied upon in formulating the Plan is based on the financial

28 records of the Debtor and the projections prepared by the Debtor's financial professionals

389528.1       3     SECOND AMENDED
DISCLOSURE STATEMENT

Deleted: FIRST

1   with the assistance of the Debtor's current management, and by Rose.  The professionals

2   employed by the Debtor drafted the Plan and the Disclosure Statement based on this

3   information and have no independent knowledge regarding the accuracy of the data.  The

4   Court has not yet determined whether or not the Plan is confirmable and makes no

5   recommendation as to whether or not you should support or oppose the Plan.

6   **II.**    **BACKGROUND**

7       **A.**    **Description and History of the Debtor's Business**

8           **1.**    **The Properties**

9       The Debtor owns the following five apartment complexes (collectively, the

10  "Properties") in Arizona:

11        1.    The Cove at Newport Apartments consisting of 480 units located at 5205

12            West Thunderbird Road, Glendale, AZ, 85306;

13        2.    Granite Bay Apartments, consisting of 548 units located at 14230 North 19th

14            Avenue, Phoenix, AZ, 85023;

15        3.    Madera Court Apartments, consisting of 286 units located at 8135 North

16            35th Avenue, Phoenix, AZ, 85051;

17        4.    Scottsdale Springs Apartments, consisting of 644 units located at 7791 East

18            Osborn Road, Scottsdale, AZ, 85251; and

19        5.    Valencia Park Apartments, consisting of 461 units located at 5104 East Van

20            Buren Street, Phoenix, AZ, 85008.

21      The Debtor's sole source of revenue is rent from the Properties.  The Debtor is the

22  wholly owned subsidiary of Phoenix Kingdom II Mezz1, LLC, which in turn, is the wholly

23  owned subsidiary of Phoenix Kingdom II Mezz2, LLC.  An organizational chart for the

24  Phoenix Kingdom II portfolio (the "Portfolio"), as of the Petition Date, is attached hereto as

25  Exhibit "1."

26          **2.**    **The Lehman Brothers Loan**

27      The Properties were purchased through equity investments and a loan from

28  Lehman Brothers Bank, FSB ("Lehman").  Lehman loaned the aggregate sum of

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

1   approximately $238,010,000 to fund the acquisition of the Portfolio (the "Lehman Loan").

2   The Lehman Loan was made to the Debtor and its affiliates within the Portfolio pursuant to

3   three loan agreements (collectively, the "Lehman Loan Documents").  More specifically,

4   Lehman loaned (i) $160,500,000 to the Debtor pursuant to a Loan Agreement (the "Senior

5   Loan Agreement") and Promissory Note (the "Note") dated June 1, 2007, (ii) $50,000,000

6   to Phoenix Kingdom II Mezz1, LLC, pursuant to a Senior Mezzanine Loan Agreement (the

7   "Senior Mezz Loan Agreement"), and (iii) $27,510,000 to Phoenix Kingdom II Mezz2, LLC,

8   pursuant to a Junior Mezzanine Loan Agreement (the "Junior Mezz Loan Agreement").  It

9   is the Debtor's understanding that Lehman assigned its interest in the Senior Loan

10  Agreement and related documents to Federal National Mortgage Association ("Fannie

11  Mae").  The Debtor also understands that Lehman assigned its rights under the Senior

12  Mezz Loan Agreement and the Junior Mezz Loan Agreement to Anthracite Funding, LLC

13  ("Anthracite"), and Arbor Realty Mortgage Securities Series 2005-1, Ltd. ("Arbor" and

14  together with Anthracite, the "Mezz Lenders"), respectively.

15      **B.**     **Principals/Affiliates of the Debtor's Business**

16          The Debtor's affiliates within the Portfolio can be seen from the organizational chart

17  attached hereto as Exhibit "1."  The Bethany Group and related entities (together,

18  "Bethany") served as the asset and property managers for the Debtor pre-petition.

19      **C.**     **Management of the Debtor Before and After Bankruptcy**

20          In or about March of 2009, Bethany closed its doors and ceased to manage the

21  Properties.  As discussed in further detail below, 707 Management Services, Inc. (the

22  "Receiver"), which was appointed as the receiver for the Properties prior to the Petition

23  Date, continues in possession and manages the Properties post-petition.  Terry R.

24  Knutson ("Mr. Knutson"), formerly a passive investor in the Debtor, is now the President of

25  the Debtor.

26      **D.**     **Events Leading to Chapter 11 Filing**

27          Pursuant to the cash management and reserve system established under the

28  Lehman Loan Documents, the rents, insurance proceeds, and other gross income from

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

389528.1                        5                   SECOND AMENDED
                                                    DISCLOSURE STATEMENT

Deleted: FIRST

1   the Properties were paid into a property account and then transferred into a "lockbox

2   account." Funds were released from the lockbox account, in the following order: (i) to pay

3   applicable taxes and insurance premiums; (ii) to pay replacement reserves; (iii) to pay

4   debt service on the Note; (iv) to pay the Debtor's budgeted operating expenses; (v) to pay

5   extraordinary expenses; and (vi) to pay lockbox fees and expenses.  In any given month,

6   if sufficient funds existed to pay all of the amounts listed above, then the remainder of the

7   funds in the lockbox account would be paid to the Mezz Lenders up to the amount of debt

8   service then due, first, on the Senior Mezz Loan Agreement and, second, on the Junior

9   Mezz Loan Agreement.  In the event that revenues from the Properties were insufficient to

10   fully fund debt service, the Mezz Lenders could also be paid from interest reserves funded

11   on the closing of the Lehman Loan, or from interest accumulating on the Debtor's other

12   reserve accounts.  This restrictive cash management and reserve system, along with the

13   decline in the Portolio's financial performance due to declining market conditions and the

14   substantial secured debt, left the Debtor with insufficient cash with which to fund

15   operations, *i.e.*, to pay utilities, vendors, employees, and to maintain and re-rent the units.

16   Consequently, unpaid vendors recorded mechanic's liens against the Properties, which

17   caused Fannie Mae to declare non-monetary defaults under the Senior Loan Agreement.

18        Due to the alleged non-monetary defaults, Fannie Mae withdrew over $12,000,000

19   from the Debtor's renovation reserve account, thereby depriving the Debtor of the ability to

20   pay certain maintenance costs.  Fannie Mae also sought the appointment of the Receiver

21   in Arizona state court to take possession of, manage and operate the Properties, and to

22   collect and apply the rents, income and profits to the debt owed Fannie Mae.  In March,

23   2009, the Debtor stipulated to the appointment of Fannie Mae's preferred receiver and the

24   Arizona state court appointed the Receiver.  Fannie Mae continued its foreclosure

25   proceedings and noticed July 7, 2009 as the foreclosure sale.  Due to the impending

26   foreclosure, the Debtor commenced the instant case to maximize the value of the

27   Properties for all creditors and parties in interest.

28

Deleted: FIRST

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP

E. **Significant Events During the Bankruptcy**

    1. **Bankruptcy Proceedings**

        a. Motion to Approve Stipulation to Allow the Receiver to Remain in Possession of the Properties and Use Cash Collateral

On August 5, 2009, the Debtor filed a motion to approve a stipulation among the Debtor, Fannie Mae, and the Receiver (the "Stipulation") to (i) allow the Receiver to remain in possession of the Properties subject to the requirements of the Bankruptcy Code and the jurisdiction of the Court, and (ii) authorize the Receiver to use cash collateral pursuant to the budgets attached to the Stipulation as Exhibit "B" to maintain and operate the Properties in the ordinary course of business. Pursuant to the Stipulation, the Receiver has remained in possession of and has managed the Properties and the Debtor's cash flow post-petition. The Court has yet to enter an order granting the motion and approving the Stipulation. The Stipulation expired by its terms on November 1, 2009, and has yet to be extended by the parties. Nonetheless, the Receiver remains in possession of the Properties by the tacit consent of the parties.

        b. Fannie Mae Stay Relief Motion

On August 14, 2009, Fannie Mae filed a motion for relief from the automatic stay (the "Stay Relief Motion"). The Debtor filed an opposition to the Stay Relief Motion on August 25, 2009. The Stay Relief Motion was initially heard on September 8, 2009, at which time the court set the matter for an evidentiary hearing (the "Evidentiary Hearing") to be held October 5, 2009. The Evidentiary Hearing was subsequently continued to October 26, 2009, to enable the parties to conduct discovery. As part of this discovery process, the Debtor prepared and filed the declarations of six witnesses, prepared and responded to document requests, prepared and filed evidentiary objections, and participated in the depositions of the potential witnesses. The Debtor filed its trial brief in support of its opposition to the Stay Relief Motion on October 23, 2009. The Evidentiary Hearing was conducted on October 26, 2009, and then was continued to October 30, 2009 for closing argument and supplemental briefing. The Court was not persuaded that

Deleted: FIRST

1  the Properties were declining in value and found that it was plausible that the Debtor could

2  confirm a plan of reorganization.  Accordingly, the Court continued the Evidentiary

3  Hearing to January 6, 2010, the same date and time as the hearing on the adequacy of

4  this Disclosure Statement.  On January 6, 2010, the Court further continued the

5  Evidentiary Hearing to February 8, 2010, and the parties stipulated to continue the

6  Evidentiary Hearing from February 8, 2010, to February 22, 2010, to be heard with the

7  Disclosure Statement.  The Court later continued the Evidentiary Hearing to February 25,

8  2010.

9              c.      Exclusivity

10          The Bankruptcy Code provides debtors with an initial exclusive period of 120 days

11  from the petition date to file a plan of reorganization, and an initial exclusive period of 180

12  days to solicit acceptances of its plan, subject to the discretion of the bankruptcy court to

13  extend the exclusive periods.  During these exclusive periods no other person or entity is

14  permitted to file a plan of reorganization.

15          Here, the Debtor's initial statutory exclusive periods to propose a plan and to obtain

16  acceptances thereof were set to expire on November 3, 2009, and January 2, 2010,

17  respectively.  On November 3, 2009, the Debtor filed a motion for an order extending its

18  exclusive periods to file a plan and to solicit acceptances of its plan to December 1, 2009

19  and April 2, 2010, respectively (the "Exclusivity Motion").  The motion was unopposed.  On

20  November 24, 2009, the Court heard and granted the Exclusivity Motion, and extended

21  the Debtor's exclusive period to file a plan to December 1, 2009 and the Debtor's

22  exclusive period to solicit acceptances of its plan to April 2, 2010.

23              d.      Employment of the Debtor's Professionals

24          The Court has approved the employment of Weiland Golden, as the Debtor's

25  general insolvency counsel by order entered on September 23, 2009.

26              e.      Claims Bar Date

27          On December 3, 2009, the Debtor filed a motion for an order requiring that all

28  creditors and parties in interests and certain administrative claimants file proofs of claim

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

389528.1                                      8                        SECOND AMENDED
                                                                      DISCLOSURE STATEMENT

| Deleted: FIRST |

1    within 60 days after service of notice of the bar date, and for certain other related relief

2    (the "Bar Date Motion").  On December 24, 2009, the Debtor lodged an order granting the

3    Bar Date Motion, which the Court has not yet entered.

4              f.        The Debtor's Schedules, Interim Statements, and Operating

5                        Reports

6              The Debtor believes it has complied and will continue to comply with all its duties

7    under 11 U.S.C. §§ 521, 1006 and 1107, and the applicable Guidelines of the OUST.  On

8    or around July 21, 2009, the Debtor filed its bankruptcy schedules and statements of

9    financial affairs ("SOFA").  The Debtor also filed its 7-Day Package.  The Debtor has not

10   filed Monthly Operating Reports ("MOR") with the OUST, but has requested that the

11   OUST accept the weekly operating reports prepared by the Receiver in lieu of the MORs.

12   The Debtor is current on all fees owed to the OUST.

13              2.        Other Legal Proceedings

14             The Debtor is involved in many non-bankruptcy legal proceedings commenced pre-

15   petition, which are primarily (but not exclusively) collection actions.  Attached hereto as

16   Exhibit "2" are the relevant pages of the Debtor's SOFA, listing the non-bankruptcy legal

17   proceedings of which the Debtor was aware as of the Petition Date.  The Debtor believes

18   that all of these proceedings are stayed by operation of 11 U.S.C. § 362.  However, legal

19   proceedings may be being pursued against Bethany and/or certain of the Debtor's

20   members.

21              3.        Actual And Projected Recovery Of Preferential Or Fraudulent

22                        Transfers

23             With the exception of the Debtor's claims against Fannie Mae, the Debtor has not

24   undertaken an analysis regarding whether meritorious claims for preferential or fraudulent

25   transfers exist.  However, the Debtor may have causes of action against third parties

26   under 11 U.S.C. §§ 544 through 550 ("Avoidance Actions"), including, but not limited to,

27   claims for the recovery of fraudulent transfers made during the one-year period prior to the

28   Petition Date, and claims for the recovery of preferential transfers made during 90-day

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Deleted: FIRST

389528.1                                  9                    SECOND AMENDED
                                                              DISCLOSURE STATEMENT

1  period prior to the Petition Date.  The Debtor hereby reserves and retains all Avoidance

2  Actions with respect to any person or entity.  The failure to specifically identify the

3  recipient of a potentially avoidable and recoverable transfer or of a particular payment

4  herein is unintentional and shall not be deemed a waiver of the right of the Estate to

5  recover any distribution(s), payment(s), or transfer(s) from any entity under any provision

6  of the Bankruptcy Code.  It is likely that a significant majority of the payments made pre-

7  petition are either not avoidable or are subject to a valid affirmative defense.

8         The Debtor believes that a preference action against Fannie Mae may exist due to

9  Fannie Mae's withdrawal of over $12,000,000 from the Debtor's renovation reserve

10  account during the one-year period prior to the Petition Date.

11         **4.    Procedures Implemented To Resolve Financial Problems**

12         The Debtor's inability to fund operations from rent receipts was primarily resolved

13  by the commencement of the Case and the Debtor's resulting ability to use cash collateral

14  to pay necessary operating expenses.  Prior to the Petition Date, revenues from the

15  Properties were deposited into a lockbox account controlled by Fannie Mae's agent, and

16  then released back, after the payment of certain reserves and debt service, to the Debtor

17  to pay operating expenses.  The funds released to the Debtor after the payment of debt

18  service to Fannie Mae, however, were insufficient to pay necessary operating expenses.

19  Upon the commencement of the Case, the Debtor obtained authorization for the Receiver

20  to use cash collateral, which enabled the Receiver to pay necessary operating expenses

21  *prior* to making any interest payments to Fannie Mae on its asserted $160,500,000 claim.

22  Thus, the commencement of the Case and the authority to use cash collateral provided

23  the Receiver with sufficient funds to pay the Properties' operating expenses.  The

24  Receiver's ability to fund operations has caused the Properties' operations to stabilize

25  insofar as prevailing market conditions allow.  However, net operating income generated

26  by the Properties remains insufficient to pay debt service on the current outstanding

27  balance of the Note, which totals approximately $160,500,000.

28

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP

389528.1                              10                    SECOND AMENDED
                                                            DISCLOSURE STATEMENT

Deleted: FIRST

1    Under the Plan, the Reorganized Debtor will continue to pay operating expenses

2  prior to debt service on Fannie Mae's secured claim.  Also, as discussed in further detail

3  below, the amount of the Fannie Mae's secured claim will be reduced to the value of its

4  collateral ($68,750,000), and will be further reduced by a substantial cash payment of

5  $14,687,500 on the Effective Date.  The reduction of Fannie Mae's secured claim and the

6  substantial initial cash payment to Fannie Mae contemplated by the Plan will reduce the

7  monthly interest payments to Fannie Mae to an amount that can be paid from the

8  Reorganized Debtor's net operating income ("NOI"), thus, making the Debtor's

9  reorganization feasible.  The Properties are currently generating sufficient NOI, on an

10  annual basis, to fund the monthly debt service payments to Fannie Mae required by the

11  Plan.  Moreover, Mr. Knutson and Rose intend to implement a detailed business plan

12  developed by Rose (the "Rose Recovery Plan") to improve the financial performance of

13  the Properties and increase occupancies and revenues over time.  A copy of the current

14  working draft of the Rose Recovery Plan is attached hereto as Exhibit "22."

15        **5.    Current and Historical Financial Conditions**

16    Copies of the cash flow statements for the 12-month period prior to the

17  appointment of the Receiver (from March 2008 through February 2009) and the cash flow

18  statements prepared by the Receiver for May 2009 through June 2009 are attached

19  hereto by Property as Exhibits "3," "4," "5," "6," and "7."  The actual cash flow information

20  for each Property for the first four months post-petition (July 2009 through October 2009)

21  are attached hereto has Exhibits "8," "9," "10," "11," and "12," respectively.  Attached

22  hereto as Exhibits "13," "14," "15," "16" and "17" are seven-year cash flow projections for

23  each Property prepared by CB Richard Ellis under commission by the Debtor.

24    The Debtor's operations are stable.  As discussed above, the Receiver remains in

25  possession of the Properties and continues to manage the Properties and ensure that

26  necessary repairs are made and that occupancies and revenues are maintained insofar

27  as current market conditions allow.  Through November 19, 2009, the Properties were

28  65% occupied on a consolidated basis and, specifically, the Cove at Newport Apartments

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Deleted: FIRST

1   were 72% occupied, the Granite Bay Apartments were 62% occupied, the Madera

2   Apartments were 74% occupied, the Scottsdale Springs Apartments were 69%, and the

3   Valencia Park Apartments were 51% occupied.  Moreover, as can been seen from the

4   historical and current financials referenced above, the rents generated by the Properties

5   have remained relatively constant post-petition.

6   **III.    SUMMARY OF THE PLAN OF REORGANIZATION**

7        **A.    Purchase of the Membership Interests in the Reorganized Debtor**

8        As discussed in further detail in Section III.E, the Membership Interests in the

9   Reorganized Debtor will be sold, subject to overbid, [2] to a newly-formed Delaware limited

10  liability company (the "Buyer") owned by Yenina[3] and Rose.  The Buyer will contribute

11  $22,287,500[4] in cash (the "New Money Investment") to be used as follows: (i)

12  $14,687,500 will be used to pay down the debt owed to the Debtor's senior secured

13  creditor, Fannie Mae; (ii) $5,600,000 will used to fund the deferred capital expenditures

14  necessary to return the Properties to "average condition"; (iii) $1,000,000 will be deposited

15  into a renovation reserve fund (the "Renovation Reserve") to be used at the Buyer's

16  discretion to improve the Properties; and (iv) $1,000,000 will be used, first, to satisfy the

17  Debtor's Allowed Administrative Claims on the Effective Date, second, to potentially

18  satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder will be

19  distributed to the holders of Allowed General Unsecured Claims as provided in Section

20  III.D.4 below, with any surplus to be deposited into the Renovation Reserve.  The Debtor

21  estimates that approximately $850,000 will be available after the payment of Allowed

22  Administrative Claims and Allowed Priority or Secured Tax Claims to distribute to the

23  holders of Allowed General Unsecured Claims.  In exchange for the New Money

24

25   [2] As discussed in further detail in Section III.E.4 below, the Membership Interests will be sold subject to the overbid procedures attached hereto as Exhibit "29."

26   [3] Yenina is a South Dakota limited liability company formed and capitalized by Mr. Terry Knutson and others to invest in multi-family housing workouts.  Mr. Knutson owns equity in Yenina.  The managing

27  member of Yenina is Mr. Knutson's adult son, Lance K. Knutson.

28   [4] Of this sum, $4,000,000 will be contributed by Yenina, and $18,287,500 will be contributed by Rose.

389528.1                                 12                    SECOND AMENDED
                                                          DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

[Deleted: ]
[Deleted: a to-be-formed entity]
[Deleted: Mr. Knutson]
[Deleted: ]
[Deleted: en]
[Deleted: Mr. Knutson]
[Deleted: FIRST]

1  Investment, the Buyer will receive 100% of the Membership Interests in the Reorganized

2  Debtor. However, the Buyer has agreed to allocate 5% of the subordinated equity return

3  on the Membership Interests in the Reorganized Debtor, if any, to Fannie Mae, as

4  provided herein.

5  **B.  What Creditors and Interest Holders will Receive Under the**

6  **Proposed Plan**

7  As required by the Bankruptcy Code, the Plan classifies Claims and Interests in

8  various classes according to their right to priority. The Plan states whether each Class of

9  Claims or Interests is impaired or unimpaired. The Plan provides the treatment each

10  Class will receive. In no event shall any creditor receive more than the creditor's Allowed

11  Claim, plus interest, to the extent provided herein.

12  **C.  Unclassified Claims**

13  Certain types of Claims are not placed into voting classes but are instead

14  unclassified. They are not considered impaired and they do not vote on the Plan because

15  they are automatically entitled to certain treatment under the Bankruptcy Code.

16  Accordingly, the following Claims have <u>not</u> been placed into a Class:

17  **1.  Administrative Expenses**

18  Administrative expenses are Claims for costs or expenses of administering the

19  Debtor's Case which are allowed under § 507(a)(2) of the Bankruptcy Code. The

20  Bankruptcy Code requires that all Allowed Administrative Claims be paid on the Effective

21  Date of the Plan, unless a particular claimant agrees to a different treatment.

22  The following charts list all of the Debtor's § 507(a)(2) unpaid Administrative Claims

23  and their treatment under the Plan:

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Ordinary-Course Administrative Claims | $0.00 | Unless the Reorganized Debtor objects to an Ordinary-Course Administrative Claim, the Claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course |

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

Weiland Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| | | Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not file any Request for Payment of its Claim.  Payments to Ordinary-Course Administrative Claimants will be paid from the Debtor's current cash flow or the Reorganized Debtor's future operations according to the existing trade terms. |
| Non-Ordinary Course Administrative Claims | $0.00 | To the extent that any Non-Ordinary-Course Administrative Claims are allowed, they will be paid in full by the Reorganized Debtor on the later of the Effective Date or immediately after the Court enters a Final Order allowing the Non-Ordinary-Course Administrative Claim. |
| Clerk's Office Fees | $0.00 | Paid in full on or before the Effective Date. |
| Office of the United States Trustee Fees | $0.00 | Paid in full on or before the Effective Date. |
| Administrative Tax Claims | $0.00 | Unless the Reorganized Debtor objects to an Administrative Tax Claim or otherwise disputes the Administrative Tax Claim in accordance with applicable law, the Claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Administrative Tax Claim, and the Person holding the Administrative Tax Claim need not file any Request for Payment of its Claim.  Payments to Administrative Tax Claimants will be paid from the Debtor's current cash flow or the Reorganized Debtor's future operations according to applicable law. |

| Professional-Fee Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Weiland Golden | $150,000 (est.) as of the Effective Date, which would be in addition to the fees and expenses already paid to Weiland Golden post- | Paid on the earlier of the Effective Date or in accordance with the Monthly Payment Procedure. |

389528.1

14

Deleted: FIRST

| Professional-Fee Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| | petition. | |
| Total | $150,000 estimated[6] | |

### a.  Ordinary Course Administrative Claims

Unless the Reorganized Debtor or other party-in-interest objects to an Ordinary-Course Administrative Claim, the Claim will be deemed allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not File any Request for Payment of its Claim.  Payments to Ordinary-Course Administrative Claimants will be paid from the Debtor's current cash flow or the Reorganized Debtor's future operations.

### b.  Non-Ordinary Course Administrative Claims

A Non-Ordinary-Course Administrative Claim will be paid by the Debtor on the Effective Date to the extent that prior to the Effective Date it has already been determined to be an Allowed Non-Ordinary-Course Administrative Claim by the Court pursuant to a Final Order.  Any other Non-Ordinary-Course Administrative Claim will be paid by the Reorganized Debtor to the extent that it is allowed by the Court only if: (1) on or before 60 days after the Effective Date, the Person holding the Non-Ordinary Course Administrative Claim both Files with the Court a Request for Payment of the Non-Ordinary-Course Administrative Claim and serves the request on counsel for the Debtor/Reorganized Debtor and the OUST; and (b) the Court, in a Final Order, allows the Non-Ordinary-Course Administrative Claim.  Any party-in-interest may File an objection to such a Request for Payment within the time provided by the Bankruptcy Rules or within any other period the Court establishes.  Persons holding Non-Ordinary-Course Administrative Claims who do not timely File and serve a Request for Payment will be forever barred

---

[6]   The estimate of Professional-Fee Claims is only an estimate and will change based upon the legal services required during this Reorganization Case and upon what the Court ultimately awards to professionals.  The Estate remains liable for all allowed legal fees and costs regardless of the estimates.

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 / Fax 714-966-1002

389528.1                              15                     SECOND AMENDED
                                                           DISCLOSURE STATEMENT

Deleted: FIRST

1  from asserting these Claims or sustaining any action seeking payment in any forum or

2  from any court deriving from these Claims against the Estate, the Debtor, the Reorganized

3  Debtor, or its property.

4              c.    <u>Professional Fee Claims</u>

5        A Professional-Fee Claim will be allowed only if: (a) on or before 45 days after the

6  Effective Date (or such further date if extended by Court order), the Person holding the

7  Professional-Fee Claim both Files with the Court an application requesting that the

8  Reorganized Debtor pay the Professional-Fee Claim; and (b) the Professional-Fee Claim

9  is allowed by a Final Order.  The Reorganized Debtor or any other party-in-interest may

10 File an objection to such an application within the time provided by the Bankruptcy Rules

11 or within any other period that the Court establishes.  Persons holding Professional-Fee

12 Claims who do not timely File and serve an application for payment will be forever barred

13 from asserting these Claims against the Reorganized Debtor or their property.

14       As is indicated above, the Debtor estimates that it will need to pay Administrative

15 Claims totaling approximately $150,000 on the Effective Date, unless the Claimant has

16 agreed to be paid later or the Court has not yet ruled on the Claim.  Based on the

17 expected proceeds from the sale of Membership Interests in the Reorganized Debtor to

18 the Buyer, the Debtor projects that it will have cash on hand in excess of this amount on

19 the Effective Date to make the necessary payments, plus cash reserves.  The Debtor's

20 cash on hand and cash reserves will be used to pay Allowed Administrative Claims of the

21 Estate.  The Buyer will be responsible for contributing cash to enable the Debtor to pay

22 Allowed Administrative Claims, to the extent that the cash on hand, cash reserves, and

23 the cash contributed by the Buyer as part of the New Money Investment for such

24 purposes are insufficient to do so.

25       2.    **Priority Tax Claims**

26       Priority Tax Claims include certain unsecured income, employment and other taxes

27 described by Bankruptcy Code § 507(a)(8).  The Bankruptcy Code requires that each

28 holder of such a § 507(a)(8) Priority Tax Claim receive the present value of such Claim in

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Deleted: FIRST

1  regular installment payments in cash, over a period not exceeding five years from the

2  Petition Date.  The following chart lists all of the Debtor's known § 507(a)(8) Priority Tax

3  Claims and their treatment under the Plan:

| Priority Tax Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Priority Tax Claims | $0.00 | The holders of Allowed Priority Tax Claims shall receive, in full satisfaction of such Claims, deferred cash payments in an aggregate amount equal to the amount of the Allowed Priority Tax Claim, plus interest from the Effective Date on the unpaid balance of the Allowed Priority Tax Claim at the Prime Rate, or such higher rate as the Court may determine sufficient to provide "present value" of the Allowed Priority Tax Claim. Payment of the Allowed Priority Tax Claim shall be made in equal quarterly payments such that the Allowed Priority Tax Claims are repaid within five years from the Petition Date. The first installment payment shall be due on the later of: (i) 60 Business Days after the Effective Date; or (ii) 30 Business Days after the Court enters a Final Order allowing the Priority Tax Claim.  The Reorganized Debtor shall have the right to pay the balance of the Allowed Priority Tax Claims in full at any time on or after the Effective Date without premium or penalty of any kind. |

### D.    Classified Claims

####     1.    Summary of Classes

| Summary of Classes | |
|---|---|
| Class | Claimant(s) |
| Class 1 | Secured Claim of Fannie Mae |
| Class 2 | Mechanic's Lien Claims |
| Class 3 | Priority Unsecured Claims Pursuant to 11 U.S.C. §§ 507(a)(6) and (7) |
| Class 4 | Priority Unsecured Wage Claims Pursuant to 11 U.S.C. §§ 507(a)(4) and (5) |
| Class 5 | Unsecured Deficiency Claim of Fannie Mae |
| Class 6 | General Unsecured Claims |
| Class 7 | Claim of Arbor |
| Class 8 | Membership Holders |

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1

SECOND AMENDED
DISCLOSURE STATEMENT

Deleted: ¶
¶
¶
¶
¶
¶

## 2.    Secured Claims

Secured Claims are Claims secured by liens on property of the Estate.

### a.    Secured Claim of Fannie Mae

Class 1 consists of the Secured Claim of Fannie Mae.  Fannie Mae asserts a claim in the amount of $160,500,000[6] secured by a first priority lien against the Properties and the rents therefrom.  The appraised value of the Properties is $58,750,000 (after the deduction of an estimated $5,600,000 in deferred capital expenditures required to return the Properties to "average condition").  The value of the Properties is based on the Appraisal Reports dated October 5, 2009 prepared by Richard J. Kalinowski, Jr., MAI, on behalf of the Debtor,[7] as modified by Mr. Kalinowski's letter dated November 30, 2009, which includes a discussion of the $5,600,000 in deferred capital expenditures.  The Executive Summary for each Appraisal Report prepared by Mr. Kalinowski is attached hereto as Exhibits "23" through "27."  Mr. Kalinowski's letter dated November 30, 2009, regarding the value of the Properties is attached hereto has Exhibit "28."

Under the Plan, the Debtor's obligations to Fannie Mae shall be restructured as follows:

i.    Allowed Secured Claim.  On the Effective Date, Fannie Mae shall have an Allowed Class 1 Secured Claim in the amount of $68,750,000[8] or other amount based on the Court's determination of the fair market value of the Properties.  Fannie Mae's Allowed Class 1 Secured Claim will be partially paid in cash on the Effective Date, and the

---

[6] In addition to the principal amount of the Note ($160,500,000), Fannie Mae asserts that it is also owed (i) pre-petition interest in the amount of $6,013,222.80 and (ii) "late charges" in the amount of $227,800.31 for a total claim of $166,741,023.11.  The Debtor is unable to verify this amount.

[7] Based on the Appraisal Reports, the aggregate value of the Properties was $67,365,000, however, after preparing the Appraisal Reports, Mr. Kalinowski discovered a mathematical error contained therein.  The correction of that mathematical error reduced the aggregate value of the Properties to $64,360,000.

[8] This amount is based on the appraised value of the Properties ($58,750,000), plus the estimated amount of "Reserve Funds" remaining on the Effective Date ($10,000,000).

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Deleted: FIRST

1  remainder (approximately $44,062,500) shall accrue interest at the rate of 5.75%[9] or at

2  such other rate as the Court may determine. The Reorganized Debtor will make interest

3  only payments ("Debt Service Payments") on the 1st of each month commencing after the

4  Effective Date from NOI. The Allowed Class 1 Secured Claim will mature on December

5  31, 2016.

6      ii.    Reinstatement of Reserves. On the Effective Date, the "Reserve Funds" (as

7  defined in the Senior Loan Agreement) in the amount of approximately $12,000,000,

8  which were withdrawn by Fannie Mae from the Debtor's renovation reserve account pre-

9  petition and which are currently being held in a segregated account for the benefit of

10  Fannie Mae, will be credited to Fannie Mae in partial satisfaction of its Allowed Class 1

11  Secured Claim. The Debtor estimates that the residual amount of Reserve Funds

12  available for credit to Fannie Mae will total approximately $10,000,000 on the Effective

13  Date.

14      iii.    Cash Contribution by the Buyer. On the Effective Date, the Buyer shall

15  contribute $22,287,500 in cash to be allocated as follows: (a) $14,687,500 shall be paid to

16  Fannie Mae to be applied to principal on Fannie Mae's Allowed Class 1 Secured Claim,

17  which, after application of the estimated $10,000,000 in Reserve Funds, will reduce

18  Fannie Mae's secured claim by a total of $24,687,500 to $44,062,500; (b) $5,600,000

19  shall be used to fund the deferred capital expenditures necessary to return the Properties

20  to "average condition"; (c) $1,000,000 will be deposited into the Renovation Reserve, to

21  be expended at the Buyer's discretion to improve the Properties; and (d) $1,000,000 will

22  be used, first, to satisfy the Debtor's Allowed Administrative Claims on the Effective Date,

23  second, to potentially satisfy any Allowed Priority or Secured Tax Claims, and, third, the

        Deleted: en

24  remainder will be distributed to the holders of Allowed General Unsecured Claims as

25

26      [9] The Debtor chose this interest rate based on the methodology used by Fannie Mae's expert witness on
interest rates, Richard W. Ferrell, and considering the value of the Fannie Mae's collateral and the proposed
27  cash payment to Fannie Mae on the Effective Date, which results in a loan-to-value ratio of 75%. The
Debtor's reference to the methodology used by Fannie Mae is not an admission or concession of the
28  correctness of such methodology or the accuracy of Mr. Ferrell's testimony.

        Deleted: FIRST

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  provided in Section III.D.4 below, with any surplus to be deposited into the Renovation

2  Reserve.

3      iv.    Retention of Security Interest. Fannie Mae will retain its lien on the

4  Properties, the NOI generated by the Properties, and the Renovation Reserve, until the

5  full satisfaction of the Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the

6  application of 11 U.S.C. § 1111(b)(2), then the full satisfaction of Fannie Mae's Allowed

7  Claim, at which time Fannie Mae's lien shall be released and the Reorganized Debtor

8  shall retain title to all such collateral free and clear of Fannie Mae's lien.

9      v.    Allocation of Equity in the Reorganized Debtor. In exchange for the New

10  Money Investment, the Buyer will receive 100% of the Membership Interests in the

11  Reorganized Debtor. However, the Buyer has agreed to allocate 5% of the subordinated

12  equity return on the Membership Interests in the Reorganized Debtor (the "Subordinated

13  Equity Return"), if any, to Fannie Mae, as provided in Section III.D.4 below.

14      vi.    The Priority Return. The Buyer shall be entitled to a priority return equal to

15  the amount of the New Money Investment, plus an 18% internal rate of return on the New

16  Money Investment (the "Priority Return"), which shall be paid from monthly NOI after

17  payment of and provided the Reorganized Debtor is current on the Debt Service

18  Payments to Fannie Mae on account of the Allowed Class 1 Secured Claim or, if Fannie

19  Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then after payment of and

20  provided the Reorganized Debtor is current on the 1111(b) Debt Service Payments or the

21  1111(b) Amortization Payments, as provided in paragraph (xi) below, to Fannie Mae on

22  account of its Allowed Claim. To the extent that surplus NOI is insufficient to satisfy the

23  Priority Return, the unpaid balance of the Priority Return shall earn interest at the rate of

24  19% until paid.

25      vii.    Allocation of NOI. Each month NOI shall be allocated as follows: (a) to

26  make scheduled Debt Service Payments to Fannie Mae on account of the then

27  outstanding principal amount of the Allowed Class 1 Secured Claim or, if Fannie Mae

28  timely elects the application of 11 U.S.C. § 1111(b)(2), then to make the 1111(b) Debt

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1                              20                    SECOND AMENDED
                                                          DISCLOSURE STATEMENT

Deleted: 9

Deleted: surplus

Deleted: (after Debt Service Payments),

Deleted: its

Deleted: p

Deleted: its

Deleted: payments

Deleted: FIRST

1  Service Payments or the 1111(b) Amortization Payments, as provided in paragraph (xi)

2  below, to Fannie Mae on account of its Allowed Claim; (b) to pay the Priority Return to the

3  Buyer; and (c) to pay the Subordinated Equity Return to the Buyer and Fannie Mae.

4       viii.    **Right to Prepay.**  The Reorganized Debtor may pre-pay the remaining

5  principal balance of Fannie Mae's Allowed Class 1 Secured Claim or, if Fannie Mae timely

6  elects the application of 11 U.S.C. § 1111(b)(2), then the remaining balance of Fannie

7  Mae's Allowed Claim, in whole or part on any interest payment date, without penalty or

8  fee.  Following any such partial payment, Debt Service Payments to Fannie Mae will be

9  calculated based on the remaining principal balance of the Allowed Class 1 Secured

10  Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then based

11  on the remaining principal balance of the Secured Portion (as that term is defined in

12  paragraph (xi) below).

13      ix.    **Right to Encumber.**  The Reorganized Debtor may obtain financing to fund

14  any working capital requirements of the Properties and/or to repay all or part of Fannie

15  Mae's Allowed Class 1 Secured Claim, or if Fannie Mae timely elects the application of 11

16  U.S.C. § 1111(b)(2), then to repay all or part of Fannie Mae's Allowed Claim, secured by a

17  lien against the Properties that is junior in priority to the lien of Fannie Mae ("Junior

18  Financing").  Payments on account of any Junior Financing may be made from monthly

19  NOI only after Debt Service Payments to Fannie Mae, or if Fannie Mae timely elects the

20  application of 11 U.S.C. § 1111(b)(2), then only after the 1111(b) Debt Service Payments

21  or the 1111(b) Amortization Payments to Fannie Mae, as provided in paragraph (xi)

22  below.  At the election of the Reorganized Debtor, monthly NOI may be used to make

23  payments on account of any Junior Financing before or after payment of the Priority

24  Return and/or the Subordinated Equity Return.

25      x.    **Right to Transfer.**  The remaining balance of Fannie Mae's Allowed Class 1

26  Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2),

27  then the remaining balance of Fannie Mae's Allowed Claim, will be transferable and

28  severable based on commercially reasonable borrower standards.  That is, the Buyer may

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1          21          SECOND AMENDED
DISCLOSURE STATEMENT

---

Deleted: scheduled payments in paragraph (xi) below

Deleted: ¶

Deleted: FIRST

1  alienate its interest in the Reorganized Debtor to a subsequent purchaser, subject to

2  Fannie Mae's Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the

3  application of 11 U.S.C. § 1111(b)(2), then subject to Fannie Mae's Allowed Claim,

4  provided Fannie Mae approves of the creditworthiness of the proposed subsequent

5  purchaser, which approval will not be unreasonably withheld.

6         xi.    Treatment under 11 U.S.C. § 1111(b).  If Fannie Mae timely elects

7  application of 11 U.S.C. § 1111(b)(2), then Fannie Mae's total Allowed Claim shall be

8  treated in Class 1, and shall be repaid as provided in this subparagraph.  Interest shall

9  accrue and be paid on only the secured portion of Fannie's Mae's Allowed Claim (the

10  "Secured Portion"), which shall equal $68,750,000 or other amount based on the Court's

11  determination of the fair market value of the Properties.  The outstanding balance of the

12  Secured Portion shall accrue interest at the rate of 5.75%.  Fannie Mae's Allowed Claim

13  shall be repaid as follows: (a) on the Effective Date, the Reserve Funds will be credited to

14  Fannie Mae in partial satisfaction of the Secured Portion; (b) on the Effective Date,

15  $14,687,500 will be paid to Fannie Mae to be applied to principal on the Secured Portion;

16  (c) the Debtor shall make interest only payments on the outstanding principal amount of

17  the Secured Portion (the "1111(b) Debt Service Payments") on the 1st of each month

18  commencing after the Effective Date from NOI through December 31, 2016; and (d) on

19  the 1st of each month commencing after December 31, 2016, the Debtor shall make

20  monthly payments of principal and interest of at least $232,104.17 (the "1111(b)

21  Amortization Payments"), which shall be applied, first, to interest on the Secured Portion,

22  second, to principal on the Secured Portion, and, third, to the remainder of the Allowed

23  Claim, for as many months as necessary to pay the full amount of Fannie Mae's Allowed

24  Claim.

25         b.    Secured Claims Other Than the Secured Claim of Fannie Mae

26         The following chart lists all Classes containing the Debtor's Secured Claims, other

27  than the Secured Claim of Fannie Mae, and their treatment under the Plan:

28  | Secured Claims |
    | --- |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Deleted: FIRST

| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 2 | Mechanic's Lien Claims<br><br>• Collateral: The Properties<br><br>• Priority of Security Interest: Unknown<br><br>• Total Claim Amount: Unknown<br><br>• Collateral Value: $58,750,000 | N | Y | Based on the value of the Properties and the amount of the debt owed to Fannie Mae, mechanic's lien claimants will have a secured claim only if and to the extent they establish they hold liens that are senior in priority to the lien of Fannie Mae under applicable law. If a mechanic's lien claimant establishes that its lien is senior in priority to Fannie Mae, then such claimant will be paid in full either, at the election of the Debtor or Reorganized Debtor, (i) on the date that is 30 days following the later of the Effective Date, and the date of entry of a Court order allowing the Class 2 Claim, or (ii) in equal monthly payments over a period of 5 years with interest on the outstanding balance at the federal judgment rate as of the Effective Date. Otherwise, the mechanic's lien claimants will be paid in accordance with the treatment afforded to General Unsecured Creditors in Class 5. |

### 3.    Classes of Priority Unsecured Claims

Certain priority Claims that are referred to in Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) are required to be placed in Classes. The Bankruptcy Code requires that each holder of the above Priority Claims receive cash on the Effective Date equal to the allowed amount of such Claim. However, a Class of unsecured Priority Claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim. The following chart lists all Classes containing the Debtor's Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) Priority Claims and their treatment under the Plan:

| Priority Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 3 | Priority unsecured claims pursuant to 11 U.S.C. §§ 507(a)(6) and (7)<br><br>Estimated total amount of claims: Unknown | N | Allowed Class 3 Priority Unsecured Claims shall be paid in full in cash on the later of the following dates: (i) the Effective Date; and (ii) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Unsecured Claim, unless the Claimant is a tenant of a Property on the Effective Date. If the Claimant is a tenant of a Property on the Effective Date, then the security deposit will be returned in the ordinary course of the Reorganized Debtor's business. |

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

| Priority Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 4 | Priority wage claims pursuant to 11 U.S.C. §§ 507(a)(4) and (5)<br><br>Estimated total amount of claims: Unknown | N | Allowed Class 4 Priority Unsecured Claims shall be paid up to the $10,950 statutory maximum in cash on the later of the following dates: (i) the Effective Date; (ii) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Unsecured Claim; or (iii) the date upon which such Allowed Priority Unsecured Claim becomes due according to its terms.<br><br>Upon the Effective Date, employees of the Debtor who are retained by the Reorganized Debtor will not be cashed out for all outstanding vacation pay and sick leave accrued as of the Effective Date (Leave Time) but rather, the Reorganized Debtor will agree to honor all such vacation days and sick leave in accordance with the terms of the employee's employment as it existed with the Debtor or the Receiver. Accordingly, Class 4 Claims that fall into the above category will receive no distribution on account of their Class 4 Claims. For Allowed Class 4 Claims that do not fall into the above category, on the Effective Date, the Reorganized Debtor will pay no more than the amount of the Allowed Class 4 Claim to the extent that such Claims satisfy the requirements of 11 U.S.C. §§ 507(a)(4) and (5), less any amounts paid to the holders of such claims by the Debtor or the Receiver prior to the Effective Date.<br><br>Any allowed Claim amounts in excess of $10,950 will be subject to the treatment afforded to General Unsecured Creditors in Class 5. |

### 4.   Class of General Unsecured Claims

General Unsecured Claims are Unsecured Claims not entitled to priority under

Bankruptcy Code § 507(a).  The following chart identifies the Plan's treatment of the

Classes containing all of the Debtor's General Unsecured Claims:

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 5 | All General Unsecured Claims that are not the Unsecured Deficiency Claim of Fannie Mae | Y | On the Effective Date, the Buyer will contribute the sum of $1,000,000 to be used, first, to pay Allowed Administrative Claims, second, to potentially satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder |

Deleted: en
Deleted: FIRST

389528.1

24

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | Estimated total amount of claims: $968,068.68 | | (the "Unsecured Creditor Fund") to distribute to the holders of Allowed Unsecured Claims.  The Debtor estimates that, after payment of Allowed Administrative Claims and Allowed Priority or Secured Tax Claims, approximately $850,000 will be available to distribute to the holders of Allowed Unsecured Claims.  The Unsecured Creditor Fund will be distributed in one of the two following ways:<br><br>1.    At a minimum, the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim; or<br><br>2.    A portion of the Unsecured Creditor Fund, as determined by the Court in connection with the Confirmation Hearing or as agreed to by Fannie Mae, shall be paid on a *pro rata* basis to only the holders of Allowed Class 5 General Unsecured Claims, and any remainder of the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim.<br><br>The treatment proposed herein shall be in full satisfaction of the Allowed Class 5 General Unsecured Claims.<br><br>The distribution proposed herein shall take place within 30 days following the later of (i) the Effective Date, and (ii) the date of entry of a Court order resolving the final disputed Class 5 or Class 6 Claim.<br><br>The Debtor estimates that the holders of Allowed Class 5 General Unsecured Claims will be repaid approximately .01% to 88% of their Allowed Claims. |
| 6 | Unsecured Deficiency Claim of Fannie Mae<br><br>Estimated total amount of claim: $91,750,000 | Y | On the Effective Date, the Buyer will contribute the sum of $1,000,000 to be used, first, to pay Allowed Administrative Claims, second, to potentially satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder (the "Unsecured Creditor Fund") to distribute to the holders of Allowed Unsecured Claims.  The Debtor estimates that, after payment of Allowed Administrative Claims and Allowed Priority and Secured Tax Claims, approximately $850,000 |

Deleted: en

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Tel 714-966-1000  Fax 714-966-1002

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| General Unsecured Claims | | | |
| | | | will be available to distribute to the holders of Allowed Unsecured Claims. The Unsecured Creditor Fund will be distributed in one of the two following ways: |
| | | | 1.    At a minimum, the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim; or |
| | | | 2.    A portion of the Unsecured Creditor Fund, as determined by the Court in connection with the Confirmation Hearing or as agreed to by Fannie Mae, shall be paid on a *pro rata* basis to only the holders of Allowed Class 5 General Unsecured Claims, and any remainder of the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim. |
| | | | In addition to the above, Fannie Mae will receive 5% of the subordinated equity return on the Membership Interests in the Reorganized Debtor (the "Subordinated Equity Return"), if any, from surplus NOI after payment of (i) Debt Service Payments, and (ii) the Priority Return. |
| | | | The treatment proposed herein shall be in full satisfaction of any Allowed Class 6 Unsecured Deficiency Claim. |
| | | | The distribution proposed herein shall take place within 30 days following the later of (i) the Effective Date, and (ii) the date of entry of a Court order resolving the final disputed Class 5 or Class 6 Claim.  The Subordinated Equity Return, if any, will be distributed on a monthly basis from the future cash flow of the Reorganized Debtor. |
| | | | If Fannie Mae timely elects application of 11 U.S.C. § 1111(b)(2), then there will be no Claims in Class 6, and Fannie Mae will not be entitled to the treatment provided herein. |
| 7 | Claim of Arbor<br><br>Estimated total amount of claim: $28,991,802.61 (per proof of claim filed on | Y | In full and complete satisfaction of any Allowed Class 7 Claim, Arbor will be allocated up to 20% of the Subordinated Equity Return on the Membership Interests in the Reorganized Debtor, if any, from surplus NOI after payment |

389528.1

26

SECOND AMENDED
DISCLOSURE STATEMENT

Deleted: FIRST

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | November 11, 2009) | | of (i) Debt Service Payments, and (ii) the Priority Return. |

**5.    Class of Interest Holders**

Interest holders are the parties who hold Membership Interests (*i.e.*, equity interests) in the Debtor.  The Debtor is Delaware limited liability company in which the owners hold Membership Interests.  The following chart identifies the Plan's treatment of the class of Interest holders.

| Interest Holders | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 7 | Interest Holders | Y | On the Effective Date, all existing Membership Interests in the Debtor will be cancelled, annulled, and extinguished. |

**E.    Means of Effectuating the Plan**

    **1.    Purchase of the Membership Interests in the Reorganized Debtor**

The Buyer has offered to acquire the Membership Interests in the Reorganized Debtor, subject to overbid. The material terms of the proposed acquisition are as follows:

1.    Restructuring of Senior Note.  As provided in Section III.D.2, on the Effective Date, Fannie Mae shall have an Allowed Class 1 Secured Claim in the amount of $68,750,000, bearing interest, to the extent not paid in cash on the Effective Date, at the fixed rate of 5.75% and secured by the Properties and the NOI generated therefrom.

2.    Capital Contribution.  On the Effective Date, the Buyer shall contribute $22,287,500 in cash to be allocated as follows: (a) $14,687,500 shall be used to pay down Fannie Mae's Allowed Class 1 Secured Claim, which, after application of the estimated $10,000,000 in Reserve Funds, will reduce the principal balance of the Allowed Class 1 Secured Claim by a total of

Deleted: seeks to

Deleted:

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  $24,687,500 to approximately $44,062,500; (b) $5,600,000 shall be used to

2  fund the deferred capital expenditures necessary to return the Properties to

3  "average condition"; (c) $1,000,000 will be deposited into the Renovation

4  Reserve; (d) $1,000,000 will be used, first, to satisfy the Debtor's Allowed

5  Administrative Claims on the Effective, second, to potentially satisfy any

6  Allowed Priority or Secured Tax Claims, and, third, the remainder will be

7  distributed to the holders of Allowed General Unsecured Claims as provided

8  in Section III.D.4 above, with any surplus to be deposited into the

9  Renovation Reserve.  The Debtor estimates that approximately $850,000

10  will be available after the payment of Allowed Administrative Claims and

11  Allowed Priority or Secured Tax Claims to distribute to the holders of

12  Allowed General Unsecured Claims.

13  3.    Additional Plan Funding.  To pay Allowed Administrative Claims on the

14  Effective Date, the Debtor shall first use cash on hand, available cash

15  reserves, and the cash contributed by the Buyer as part of the New Money

16  Investment for such purpose.  The Buyer shall contribute to the Estate funds

17  sufficient to enable the Debtor to pay Allowed Administrative Claims that are

18  due or expected to be due in full (to the extent that the Debtor's cash on

19  hand, cash reserves, and the cash contributed by the Buyer as part of the

20  New Money Investment to satisfy Allowed Administrative Claims are

21  insufficient to satisfy such Claims) on the Effective Date.

22  4.    Allocation of Membership Interests in the Reorganized Debtor.  In exchange

23  for the New Money Investment, the Buyer will receive 100% of the

24  Membership Interests in the Reorganized Debtor.  However, the Buyer has

25  agreed to allocate 5% of the Subordinated Equity Return, if any, to Fannie

26  Mae.  The allocation of Membership Interests in the Reorganized Debtor

27  may be adjusted prior to confirmation of the Plan in consideration for each

28

**Deleted: en**

**Deleted: FIRST**

389528.1                          28                        SECOND AMENDED
                                                            DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

1   lender's consent to the Plan and/or voluntary release of guarantees allegedly

2   owed by Mr. Knutson and his affiliates.

3   5.   Priority Return.  The Buyer shall be entitled to a priority return equal to the

4   amount of the New Money Investment, plus an 18% internal rate of return on

5   the New Money Investment (the "Priority Return"), which shall be paid from

6   monthly NOI after payment of and provided the Reorganized Debtor is

7   current on the Debtor Service Payments to Fannie Mae on account of the

8   Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the

9   application of 11 U.S.C. § 1111(b), then after payment of and provided the

10  Reorganized Debtor is current on the 1111(b) Debt Service Payments or the

11  1111(b) Amortization Payments to Fannie Mae on account of its Allowed

12  Claim,

13  6.   New Property Manager.  An affiliate of Rose will serve as the property

14  manager (the "Property Manager") for the Properties, and shall be

15  supervised by and report to the Reorganized Debtor.  The Property Manager

16  shall be entitled to a fee of 4% of the Properties' effective gross income.

17  7.   Termination of Receivership.  The Receivership shall be terminated on the

18  Effective Date, and any cash or other property of the Debtor in the

19  Receiver's possession, custody, or control, including, any cash held in

20  reserve accounts for the payment of taxes, insurance, or other expenses

21  related to the Properties, shall be turned over to the Reorganized Debtor,

22  and the Receiver shall provide the Reorganized Debtor with an accounting

23  of any cash or other property of the Debtor that came into the Receiver's

24  possession, custody, or control.

25  8.   Court Approval.  The proposed sale of the Membership Interests in the

26  Reorganized Debtor shall be subject to Court approval.

27  Attached hereto as Exhibits "18," "19" and "20" are consolidated cash flow projections for

28  the Portfolio, which include the payments contemplated under the foregoing terms.  The

389528.1          29          SECOND AMENDED
DISCLOSURE STATEMENT

Deleted: 9
Deleted: surplus
Deleted: (after Debt Service Payments),
Deleted: its payments
Deleted: .
Deleted: FIRST

1  projections attached hereto as Exhibit "18" were prepared using the net operating income

2  projections developed by CB Richard Ellis. The projections attached hereto as Exhibit

3  "19" were prepared using the net operating income projections contained in reports

4  prepared by Integra Realty Resources ("IRR"), the appraiser employed by Fannie Mae.

5  The projections attached hereto as Exhibit "20" were prepared using the net operating

6  income projections contained in the Rose Recovery Plan, which projections are subject to

7  revision prior to the Confirmation Hearing based on additional information expected to be

8  provided by the Receiver.

9        **2.    Funding for the Plan**

10        As discussed above in Section III.E.1., the Buyer shall contribute $22,287,500 in

11  cash to be allocated as follows: (i) to pay down Fannie Mae's Allowed Class 1 Secured

12  Claim by $14,687,500; (ii) to fund the Renovation Reserve with $1,000,000; (iii) to fund

13  deferred capital expenditures totaling $5,600,000; and (iv) $1,000,000 will be used, first, to

14  satisfy the Debtor's Allowed Administrative Claims on the Effective, second, to potentially

15  satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder will be

16  distributed to the holders of Allowed General Unsecured Claims as provided in Section

17  III.D.4 above, with any surplus to be deposited into the Renovation Reserve. The monthly

18  distributions required to be made under the Plan will be funded by the cash generated

19  from the Reorganized Debtor's operations. The cash flow projections attached hereto as

20  Exhibits "18," "19" and "20" indicate that there will be sufficient revenue to meet these

21  obligations.

22        On the Effective Date, the Receiver shall turn over any cash or other property of

23  the Debtor in the Receiver's possession, custody, or control, including, any cash held in

24  reserve accounts for the payment of taxes, insurance, or other expenses related to the

25  Properties, shall be turned over to the Reorganized Debtor, and the Receiver shall provide

26  the Reorganized Debtor with an accounting of any cash or other property of the Debtor

27  that came into the Receiver's possession, custody, or control.

28

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP

389528.1                         30                     SECOND AMENDED
                                                    DISCLOSURE STATEMENT

Deleted: en

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

### 3.    The Structure of the Reorganized Debtor and Post-Confirmation Management

As discussed above in Section III.E.1., in exchange for the New Money Investment, the Buyer will receive 100% of the Membership Interests in the Reorganized Debtor. However, the Buyer has agreed to allocate 5% of the Subordinated Equity Return, if any, to Fannie Mae, as provided herein. The Buyer will be a duly formed Delaware limited liability company owed by Mr. Knutson and Rose. The Buyer will be controlled by Rose. The Property Manager will be retained as the property manager for the Properties. Attached hereto as Exhibit "21" is further information regarding the qualifications and experience of Rose and the Property Manager.

### 4.    Auction of Membership Interests in the Reorganized Debtor

As discussed herein, the Buyer has offered to acquire 100% of the Membership Interests in the Reorganized Debtor in exchange for contributing $22,287,500 in cash to be allocated as provided in Section III.E.2 above. To maximize the value of the Membership Interests, the Membership Interests will be sold by auction subject to the bidding procedures approved by the Court and attached hereto as Exhibit "29" (the "Bidding Procedures"). The cash paid by the Successful Bidder up to the amount of the New Value Investment shall be allocated as provided in Section III.E.2 above, and cash paid in excess of the New Value Investment, plus the "Break-Up Fee" and the "Expense Reimbursement" (as those terms are defined in the Bidding Procedures), will be distributed to Fannie Mae on the Effective Date and shall be applied to principal on Fannie Mae's Allowed Class 1 Secured Claim, or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b), then to the Secured Portion of Fannie Mae's Allowed Claim.

### 5.    Disbursing Agent

The Reorganized Debtor will act as the disbursing agent for the purpose of making all the distributions provided for under the Plan. The disbursing agent shall serve without bond, and will not receive compensation for distribution services.

389528.1                        31              SECOND AMENDED
                                                DISCLOSURE STATEMENT

Deleted: FIRST

F.   **Risk Factors**

The Reorganized Debtor's ability to perform its obligations under the Plan is subject to various factors and contingencies, some or which are described in this section. The following discussion summarizes some of the material risks associated with the Plan, but is not intended to be exhaustive. Moreover, it should be read in connection with the other disclosures contained in this Disclosure Statement and the Plan. Each creditor, in conjunction with its advisors, should supplement the following discussion by analyzing and evaluating the Plan and the Disclosure Statement as a whole. THE RISKS ASSOCIATED WITH THE PLAN MUST BE CAREFULLY CONSIDERED IN DETERMINING WHETHER TO ACCEPT THE PLAN.

The Reorganized Debtor's ability to make the Effective Date Payments and to fund the distributions to the holders of Allowed General Unsecured Claims depends on the ability of the Buyer to perform terms outlined in Section III.E.1. above. The Debtor currently estimates that the total amount that must be contributed by the Buyer is approximately $22,287,500. Within ten (10) days after approval of the Disclosure Statement, Yenina will cause $4,000,000 to be deposited in a segregated account with a financial institution in the State of California to demonstrate the financial ability to fund his obligations under the Plan. Leonard Glickman, the founder and Managing Partner of Rose, testifies that Rose has readily available cash in the amount necessary to fund Rose's share of the New Money Investment. (*See* Leonard Glickman Declaration at 55, ¶ 3.)

The Reorganized Debtor's ability to make post-Effective Date payments required by the Plan depends on its ability to generate sufficient revenues from operations. The Debtor engaged CB Richard Ellis ("CBRE") to independently evaluate and analyze each of the Properties, the market and comparable data, and to prepare stabilized cash flow projections. Attached hereto as Exhibits "13" through "17" are the seven-year cash flow projections for each Property prepared by CBRE. The Debtor has also included cash flow projections using the net operating income projections developed by IRR, Fannie Mae's

| Deleted: Mr. Knutson |

| Deleted: FIRST |

32

SECOND AMENDED
DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  appraiser (Exhibit "19"), and cash flow projections using the net operating income

2  projections developed by Rose (Exhibit "20"). Each of the attached projections indicate

3  that there will be sufficient revenue to make the post-Effective Date payments required by

4  the Plan. However, the Reorganized Debtor's projected operating earnings and cash flow

5  are based on reports independently prepared by either CBRE, IRR, or Rose and

6  represent a prediction of future events based upon certain assumptions. Those

7  assumptions are an integral component of the Reorganized Debtor's projections.

8  Because these future events will not necessarily occur, the projections cannot be relied

9  upon as a guarantee of the Reorganized Debtor's actual operations. In fact, the

10  Reorganized Debtor's actual operations undoubtedly will differ from their projected

11  operations. However, the Debtor has committed to making the payments described in the

12  Plan.

13  **G.    Other Provisions of the Plan**

14       **1.    Executory Contracts and Unexpired Leases**

15            a.    Assumptions

16       On the Effective Date, the Reorganized Debtor will assume the executory contracts

17  and unexpired leases identified on the Schedule of Assumed Agreements to be attached

18  to the Plan as Exhibit "1." The Debtor filed the proposed Schedule of Assumed

19  Agreements with the Court December 24, 2009 . The Debtor reserves the right to amend

20  the Schedule of Assumed Agreements up to twenty-one (21) days prior to the

21  Confirmation Hearing to: (a) delete any executory contract or unexpired lease and provide

22  for its rejection; or (b) add any executory contract or unexpired lease and provide for its

23  assumption. The Debtor will provide notice of any amendment to the Schedule of

24  Assumed Agreements to any party or parties to the executory contracts or unexpired

25  leases affected by the amendment. The Confirmation Order will constitute a Court order

26  approving the assumption, on the Effective Date, of the executory contracts and unexpired

27  leases then identified on the Schedule of Assumed Agreements.

28

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Deleted: FIRST

1    The Schedule of Assumed Agreements also identifies any amounts that the

2    Reorganized Debtor must pay to cure defaults under the executory contracts and

3    unexpired leases to be assumed under the Plan (the "Cure Amount").  The Debtor

4    reserves the right to amend the Schedule of Assumed Agreements to modify the Cure

5    Amount for any particular executory contract or unexpired lease up to twenty-one (21)

6    days prior to the Confirmation Hearing.  The Debtor will provide notice of any amendment

7    to the Schedule of Assumed Agreements to any party or parties to the executory contracts

8    or unexpired leases affected by any such amendment.  Any Cure Amount ordered by the

9    Court, through entry of the Confirmation Order, and paid by the Debtor or the Reorganized

10    Debtor shall be deemed to satisfy any and all defaults arising from or related to contract or

11    tort claims of the party to the contract on or prior to the entry of the order confirming the

12    Plan.

13    As required by Bankruptcy Code § 365(b)(1), any and all monetary defaults under

14    each executory contract and expired lease to be assumed will be satisfied in one of the

15    following two ways: (a) the Reorganized Debtor will pay to the non-debtor party to the

16    executory contract or unexpired lease the Cure Amount, as set forth on the Schedule of

17    Assumed Agreements, in cash as soon as reasonably practicable on or after the Effective

18    Date; and/or (b) the Reorganized Debtor will satisfy any other terms that are agreed to by

19    both the Debtor and the non-debtor party to an executory contract or unexpired lease that

20    will be assumed.  If a dispute arises regarding (a) the amount of any proposed cure

21    payments, (b) whether the Reorganized Debtor has provided adequate assurance of

22    future performance under an executory contract or unexpired lease to be assumed, or (c)

23    any other matter pertaining to a proposed assumption, the proposed cure payments will

24    be made on the later of (1) the Effective Date or as soon as practicable thereafter, or (2)

25    within thirty (30) days after entry of a Final Order resolving the dispute and approving the

26    assumption, provided, however, if a dispute arises regarding any of the foregoing, the

27    Debtor reserves for itself and the Reorganized Debtor the right to completely forego

28    assumption of and, instead, reject the subject executory contract or unexpired lease.

Deleted: ,

Deleted: however,

Deleted: a

Deleted: .

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-965-1000  Fax 714-966-1002

389528.1                    34

1    If you are a party to a lease or contract to be assumed and you object to the

2  assumption of your lease or contract and/or you dispute the Cure Amount related to your

3  lease or contract, then you must file and serve your objection to the Plan within the

4  deadline for objecting to the confirmation of the Plan provided in Section I.B.3. of this

5  document.  Failure to File an objection shall be deemed consent to the Cure Amount and

6  a waiver of any and all rights to challenge such Cure Amount.

7          b.    Rejections

8    On the Effective Date, the Reorganized Debtor will reject the executory contracts

9  and unexpired leases identified on the Schedule of Rejected Agreements attached to the

10  Plan as Exhibit "2." The Schedule of Rejected Agreements is not an admission that any

11  particular agreement listed thereon is an executory contract or unexpired lease or that the

12  Debtor or Reorganized Debtor have any liability under such agreement.  The Debtor

13  reserves the right to amend the Schedule of Rejected Agreements up to twenty-one (21)

14  days prior to the Confirmation Hearing to (a) delete any executory contract or unexpired

15  lease and provide for its assumption, or (b) add any executory contract or unexpired lease

16  and provide for its rejection.  The Debtor will provide notice of any amendment to the

17  Schedule of Rejected Agreements to any party or parties to the agreement affected by the

18  amendment.  To the extent that an executory contract is not listed on the Schedule of

19  Assumed Agreements and assumed pursuant to Section II.F.1.a. of the Plan, it will be

20  deemed rejected under the Plan whether or not it is listed on the Schedule of Rejected

21  Agreements.

22    The Confirmation Order will constitute a Court order approving the rejection, as of

23  the Effective Date, of the executory contracts or unexpired leases identified on the

24  Schedule of Rejected Agreements.  Any Claim for damages arising from the rejection

25  under the Plan of any executory contract or unexpired lease must be Filed with the Court

26  and served upon the Reorganized Debtor, and the Reorganized Debtor's counsel within

27  thirty (30) days after the Confirmation Date.  Any such damage Claims that are not timely

28  Filed and served will be forever barred and unenforceable against the Debtor, the Estate,

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1                    35                    SECOND AMENDED
                                                  DISCLOSURE STATEMENT

**Deleted: FIRST**

1   the Reorganized Debtor, and their respective property.  Persons holding these Claims

2   who fail to timely File Claims will be barred from receiving any distributions under the Plan

3   on account of their requested damage Claims.

4           If you are a party to a lease or contract to be rejected and you object to the

5   rejection of your lease or contract, then you must File and serve your objection to the Plan

6   within the deadline for objecting to the confirmation of the Plan provided in Section I.B.3.

7   of this document.

8           **2.      Changes in Rates Subject to Regulatory Commission**

9                   **Approval**

10          The Debtor is not subject to governmental regulatory commission approval of its

11  rates.

12          **3.      Potential Avoidance Actions**

13          The Reorganized Debtor reserves the sole right under the Plan to pursue

14  Avoidance Actions and other Actions to the extent they exist.  The Debtor reserves for

15  itself and the Reorganized Debtor all rights to commence and pursue, as appropriate, any

16  and all Actions or Avoidance Actions, whether arising prior to or after the Petition Date, in

17  any court or other tribunal, including without limitation, in an adversary proceeding Filed in

18  the Bankruptcy Court.  While the Debtor has attempted to identify Actions or Avoidance

19  Actions in the Disclosure Statement which may be pursued, and hereby incorporate by

20  reference those disclosures and provisions, the failure to list any potential Action or

21  Avoidance Action, generally or specifically, is not intended to limit the rights of the Debtor

22  or the Reorganized Debtor to pursue any Action or Avoidance Action.  All Avoidance

23  Actions and other Actions are preserved under the Plan for the benefit of the Estate and

24  the Reorganized Debtor.

25          Unless an Action or Avoidance Action against any Person is expressly waived,

26  relinquished, released, compromised or settled as provided or identified in the Plan, any

27  Confirmation Order or prior Bankruptcy Court order, the Debtor and Reorganized Debtor

28  expressly reserve Actions or Avoidance Actions for later adjudication.  Therefore, no

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

Deleted: FIRST

1 preclusion doctrine, including, without limitation, the doctrine of res judicata, collateral

2 estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or

3 laches shall apply to such Action or Avoidance Action upon or after Confirmation or

4 consummation of the Plan.

5       ANY CREDITORS THAT BELIEVE THEY RECEIVED A TRANSFER OR SETOFF

6 THAT IS AVOIDABLE UNDER THE BANKRUPTCY CODE OR THAT HOLDS A CLAIM

7 AGAINST THE ESTATE THAT COULD BE SUBJECT TO AN OBJECTION BASED

8 UPON FAILURE TO RETURN AN AVOIDABLE TRANSFER OR SETOFF, ARE

9 DIRECTED TO REVIEW THEIR RECORDS AND/OR THE DEBTOR'S SCHEDULES

10 FOR FURTHER INFORMATION.  HOWEVER, ALL RIGHTS OF THE DEBTOR AND

11 REORGANIZED DEBTOR ARE RESERVED WITH RESPECT TO ANY AND ALL

12 TRANSFERS OR SETOFFS WHICH MAY BE AVOIDABLE UNDER THE BANKRUPTCY

13 CODE.

14       All professional fees incurred in pursuing the Avoidance Actions or other Actions

15 shall be paid by the Reorganized Debtor without the necessity of a Court order.  However,

16 the Bankruptcy Court will reserve exclusive jurisdiction to decide any and all disputes

17 regarding the payment of the fees and costs related to post-confirmation professional

18 fees, upon request of a party-in-interest and after notice and a hearing.  Action Recoveries

19 and Avoidance Actions Recoveries will be paid to the Reorganized Debtor.

20       **4.**   **Retention of Jurisdiction**

21       The Court will retain exclusive jurisdiction during the Plan payout period to resolve

22 disputes and conflicts arising from the administration of the Plan, upon request of a party-

23 in-interest and after notice and a hearing, including, without limitation:

24       1.    The adjudication of the validity, scope, classification, allowance, and

25             disallowance of any Claim;

26       2.    The estimation of any Claim;

27       3.    The allowance or disallowance of Professional-Fee Claims, compensation,

28             or other Administrative Claims;

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1              37           SECOND AMENDED
DISCLOSURE STATEMENT

**Deleted: FIRST**

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

4.   To hear and determine Claims concerning taxes pursuant to Bankruptcy Code §§ 346, 505, 525, and 1146;

5.   To hear and determine any action or proceeding brought under Bankruptcy Code §§ 108, 510, 543, 544, 545, 547, 548, 549, 550, 551, and 553;

6.   To hear and determine all actions and proceedings which relate to pre-confirmation matters;

7.   To hear and determine any issue relating to the assumption or rejection of executory contracts and unexpired leases;

8.   To hear and determine any modification to the Plan in accordance with the Bankruptcy Rules and the Bankruptcy Code;

9.   To enforce and interpret the terms of the Plan;

10.  To correct any defects, cure any omissions, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

11.  The entry of any order, including injunctions, necessary to enforce title, rights and powers of the Debtor or Reorganized Debtor, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary including, without limitation, any right of the Debtor or Reorganized Debtor to recover and liquidate assets;

12.  To determine the validity, extent and priority of all Liens and security interests against property of the Estate or the Reorganized Debtor;

13.  To hear and resolve any disputes regarding employment applications and professional fees;

14.  To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in this Case;

15.  The entry of an order concluding and terminating this Case; and

389528.1                                    38                     SECOND AMENDED
                                                                  DISCLOSURE STATEMENT

Deleted: FIRST

1    16.    To resolve any disputes as to whether there has been a default under the

2    Plan.

3    **H.    <u>Tax Consequences of the Plan</u>**

4    CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX

5    LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS,

6    AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended

7    solely for the purpose of alerting readers about possible tax issues the Plan may present

8    to the Debtor.  The Debtor and its professionals CANNOT and DO NOT represent that the

9    tax consequences contained below are the only tax consequences of the Plan because

10    the Tax Code embodies many complicated rules which make it difficult to state completely

11    and accurately all the tax implications of any action.

12    Due to the unsettled and complex nature of some of the tax issues, as well as the

13    possibility that developments subsequent to the date hereof could affect the tax

14    consequences of the Plan, the following discussion should not be regarded as definitive or

15    as covering all possible tax consequences.  Additionally, this summary does not discuss

16    all aspects of federal income taxation that may be relevant to a particular creditor in light

17    of its individual circumstances or to certain creditors subject to special treatment under the

18    federal income tax laws (for example, life insurance companies, tax-exempt organizations,

19    foreign corporations and individuals who are not citizens or residents of the United

20    States).

21    The Debtor is in the process of determining the impact of the Plan on the Debtor's

22    tax liability.  However, the Debtor does not expect that its tax liability, if any, will affect the

23    distributions to creditors proposed in the Plan.  As stated above, creditors concerned with

24    how the Plan will affect their own tax liability should consult with their own accountants,

25    attorneys, and/or advisors.

26    **IV.    <u>CONFIRMATION REQUIREMENTS AND PROCEDURES</u>**

27    PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

28    SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

389528.1                                    39                        SECOND AMENDED
                                                                     DISCLOSURE STATEMENT

Deleted: FIRST

1 CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following

2 discussion is intended solely for the purpose of alerting readers about basic confirmation

3 issues, which they may wish to consider, as well as certain deadlines for filing Claims.

4 The Debtor CANNOT and DOES NOT represent that the discussion contained below is a

5 complete summary of the law on this topic.

6        Many requirements must be met before the Court can confirm a Plan.  Some of the

7 requirements include that the Plan must be proposed in good faith, acceptance of the

8 Plan, whether the Plan pays creditors at least as much as creditors would receive in a

9 chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the

10 only requirements for confirmation.

11        **A.    <u>Who May Vote or Object</u>**

12                **1.    Who May Object to Confirmation of the Plan**

13        Any party in interest may object to the confirmation of the Plan, but as explained

14 below not everyone is entitled to vote to accept or reject the Plan.

15                **2.    Who May Vote to Accept/Reject the Plan**

16        A creditor has a right to vote for or against the Plan if that creditor has a Claim that:

17 (a) either is an Allowed Claim or is allowed for voting purposes; (b) is classified in an

18 impaired Class; and (c) is entitled to receive or retain some property on account of its

19 Claim.[10]

20                        a.    <u>What Is an Allowed Claim/Interest</u>

21        As noted above, a creditor must first have an allowed Claim to have the right to

22 vote.  Generally, any proof of Claim will be allowed, unless a party-in-interest Files an

23 objection to that Claim.  When an objection to a Claim is Filed, the creditor holding the

24 Claim cannot vote unless and until the Court, after notice and hearing, either overrules the

25 objection or allows the Claim for voting purposes.  Any Person who seeks temporary

26

27 ────────────────
   [10]  If the Plan provides that a Class will receive or retain no property on account of its Claims, that
28 Class is deemed to reject the Plan under Bankruptcy Code § 1126(g) and therefore is not entitled to vote.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1                                40                        SECOND AMENDED
                                                                DISCLOSURE STATEMENT

Deleted: FIRST

1  allowance of its Claim for the purpose of voting on the Plan must promptly take the steps

2  necessary to File an appropriate motion requesting the same and to arrange an

3  appropriate hearing with the Court.

4      THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE BY

5  CLAIMANTS WHOSE CLAIMS WERE NOT SCHEDULED OR SCHEDULED AS

6  DISPUTED, CONTINGENT, OR UNLIQUIDATED HAS NOT BEEN SET.  A creditor may

7  have an Allowed Claim even if a proof of Claim was not timely filed.  A Claim is deemed

8  allowed if (1) it is scheduled on the Debtor's Schedules and such Claim is not scheduled

9  as disputed, contingent, or unliquidated, and (2) no party-in-interest has objected to the

10  Claim.  An interest is deemed allowed if it is scheduled and no party-in-interest has

11  objected to the interest.

12          b.    What Is an Impaired Claim/Interest

13      As noted above, an allowed Claim only has the right to vote if it is in a Class that is

14  impaired under the Plan.  A Class is impaired if the Plan alters the legal, equitable, or

15  contractual rights of the members of that Class.  For example, a Class comprised of

16  general unsecured Claims is impaired if the Plan fails to pay the members of that Class

17  100% of what they are owed or otherwise impairs the legal rights of claim holders.

18      In this case, the Debtor believes that Classes 1, 2, 5, 6, 7 and 8 are impaired and

19  that holders of Claims in each of these Classes are therefore entitled to vote to accept or

20  reject the Plan, unless otherwise specified below.  The Debtor believes that Classes 3 and

21  4 are unimpaired under the Plan.  Any party-in-interest who disputes the Debtor's

22  characterization of its claim or interest as being in an impaired or unimpaired Class may

23  File an objection to the Plan contending that the Debtor has incorrectly characterized the

24  claim, interest, or Class.

25          3.    Who is Not Entitled to Vote

26      The following four types of Claims are not entitled to vote:  (1) Claims that have

27  been disallowed; (2) Claims in unimpaired classes; (3) Claims entitled to priority pursuant

28  to Bankruptcy Code §§ 507(a)(2), (a)(3), and (a)(8); and (4) Claims in Classes that do not

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1                    41                    SECOND AMENDED
                                                  DISCLOSURE STATEMENT

Deleted: FIRST

1  receive or retain any value under the Plan.  Claims in unimpaired Classes are not entitled

2  to vote because such classes are deemed to have accepted the Plan.  Claims entitled to

3  priority pursuant to Bankruptcy Code §§ (a)(2), (a)(3), and (a)(8) are not entitled to vote

4  because such Claims are not placed in Classes and they are required to receive certain

5  treatment specified by the Bankruptcy Code.  Claims in Classes that do not receive or

6  retain any value under the Plan do not vote because such Classes are deemed to have

7  rejected the Plan.  For this reason, Class 8 is not entitled to vote on the Plan, but is

8  deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE

9  DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE

10  CONFIRMATION OF THE PLAN.

11          **4.      Who Can Vote in More Than One Class**

12          A creditor whose Claim has been allowed in part as a secured claim and in part as

13  an unsecured claim is entitled to accept or reject the Plan in both capacities by casting

14  one ballot for the secured portion of the Claim and another ballot for the unsecured portion

15  of the claim.  Also, a creditor who has a Claim for wages or unpaid vacation, healthcare or

16  retirement benefits, may have both a Priority Claim up to the maximum specified in 11

17  U.S.C. §§  507(a)(4) and (a)(5), provided the conditions for priority treatment as specified

18  under 11 U.S.C. § 507(a) are met, and a General Unsecured Claim for all amounts

19  exceeding the statutory maximum.  The holder of such a Claim may cast a ballot for the

20  priority portion of the Claim and another ballot for the general unsecured portion of the

21  Claim.

22          **5.      Votes Necessary to Confirm the Plan**

23          If impaired Classes exist, the Court cannot confirm the Plan unless (1) at least one

24  impaired Class has accepted the Plan without counting the votes of any insiders within

25  that Class, and (2) all impaired Classes have voted to accept the Plan, unless the Plan is

26  eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in

27  Section IV.A.8.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    **6.    Votes Necessary for a Class to Accept the Plan**

2        A Class of Claims is considered to have accepted the Plan when more than one-

3    half (½) in number, and at least two-thirds (⅔) in dollar amount, of the Claims which

4    actually voted, voted in favor of the Plan.  A Class of interests is considered to have

5    accepted the Plan when at least two-thirds (⅔) in amount of the Interest holders of such

6    Class which actually voted, voted to accept the Plan.

7        **7.    Treatment of Nonaccepting Classes**

8        If at least one impaired Class votes to accept the Plan, and other impaired Classes

9    vote to reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting

10    Classes are treated in the manner required by the Bankruptcy Code.  The process by

11    which nonaccepting Classes are forced to be bound by the terms of a Plan is commonly

12    referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down"

13    on nonaccepting classes of Claims if it meets all consensual requirements except the

14    voting requirements of § 1129(a)(8) and if the Plan does not "discriminate unfairly" and is

15    "fair and equitable" toward each impaired Class that has not voted to accept the Plan as

16    referred to in § 1129(b) and applicable case law.

17        **8.    Request for Confirmation Despite Nonacceptance by**

18            **Impaired Classes**

19        The Debtor will ask the Court to confirm the Plan by "cramdown" on all impaired

20    Classes if any of these Classes do not vote to accept the Plan.

21    **B.    Liquidation Analysis**

22        Another confirmation requirement is the so-called "Best Interests Test" embodied in

23    Bankruptcy Code § 1129(a)(7), which requires a liquidation analysis.  Under the Best

24    Interests Test, if a claimant is in an impaired Class and that claimant does not vote to

25    accept the Plan, then that claimant must receive or retain under the Plan property of a

26    value not less than the amount that such holder would receive or retain if the Debtor was

27    liquidated under Chapter 7 of the Bankruptcy Code.

28

389528.1

43

Deleted: FIRST

1    In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee.

2  Secured creditors are paid first from the sales proceeds of properties on which the

3  secured creditor has a lien.  Administrative Claims are paid next.  Next, unsecured

4  creditors are paid from any remaining sales proceeds, according to their rights to priority.

5  Unsecured creditors with the same priority share in proportion to the amount of their

6  allowed claims in relationship to the amount of total allowed unsecured claims.  Finally,

7  interest holders receive the balance that remains after all creditors are paid, if any.

8    For the Court to be able to confirm the Plan, the Court must find that all creditors

9  and interest holders who do not accept the Plan will receive at least as much under the

10  Plan as such holders would receive under a chapter 7 liquidation.  The Debtor maintains

11  that this requirement is met here because pursuant to the liquidation analyses below,

12  creditors are projected to receive at least as much as they would receive in a hypothetical

13  chapter 7 liquidation.

14  **ASSETS VALUED AT LIQUIDATE VALUES:**

15  CURRENT ASSETS
16  a.    The Properties                              $58,750,000[11]
    b.    Cash on hand                              $10,000,000

17

18  **TOTAL ASSETS AT LIQUIDATION VALUE**        $ 68,750,000

19  LESS
    a.    Secured Creditor (Fannie Mae) Recovery        $ 160,500,000
20  b.    Secured Creditor (Mechanic's Lien) Recovery    $  Unknown
    c.    Chapter 7 trustee fees and expenses           $   2,085,750
21  d.    Chapter 11 professional fees                  $     150,000
    e.    Chapter 11 non-professional fee administrative
22        expense claims                              $          0
    f.    Priority claims, excluding administrative expense
23        claims                                      $   Unknown

24        TOTAL SECURED AND PRIORITY LIABILITIES    $ 162,735,750

25  1.    Balance for unsecured claims                 $          0
26  2.    Total amount of unsecured claims             $  968,068.68

27  ───────────────
[11] This amount is based on appraisal reports prepared Richard J. Kalinowski, Jr., MAI, on behalf of the
28  Debtor.

389528.1                    44                    SECOND AMENDED
                                                  DISCLOSURE STATEMENT

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION = 0%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN = .001% to 10%**

Below is a demonstration, in tabular format, that all creditors are projected to receive at least as much under the Plan as such creditor would receive under a chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 Secured Claims | 100% | 100% |
| Class 2 Secured Claims | 0% | 0% |
| Class 3 Priority Unsecured Claims | 100% | 0% |
| Class 4 Priority Wage Claims | 100% | 0% |
| Class 5 General Unsecured Claims | .01% to 88% | 0% |
| Class 6 Unsecured Claim | Uncertain | 0% |
| Class 7 Unsecured Claim | Uncertain | 0% |
| Class 8 Interest Holders | 0% | 0% |

**C.     Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses which are entitled to be paid on such date.  The Debtor maintains that this aspect of feasibility is satisfied.  The cash necessary to pay Allowed Administrative Claims and statutory costs and charges, to restructure the Senior Note held by Fannie Mae as proposed herein, and to fund the distributions to the holders of Allowed General Unsecured Claims will be paid by the Debtor from cash on hand and cash reserves and/or from cash contributed by the Buyer upon confirmation of the Plan or shortly thereafter.  Yenina will set aside $4,000,000 to demonstrate its financial ability to

Deleted: Mr. Knutson

Deleted: his

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  contribute to capitalization of the Buyer upon approval of the Disclosure Statement.

2  Leonard Glickman, the founder and Managing Partner of Rose, testifies that Rose has

3  readily available cash in the amount necessary to fund Rose's share of the New Money

4  Investment. (*See* Leonard Glickman Declaration at 55, ¶ 3.)

5      The second aspect of the feasibility analysis considers whether the Reorganized

6  Debtor will have enough cash over the life of the Plan to make the required Plan

7  payments.  The Debtor has provided financial statements, which include both historical

8  financial information (Exhibits "3" through "12") and cash flow projections (Exhibit "13"

9  through "20").  The cash flow projections attached hereto contain the NOI projections

10  independently developed by three separate entities (*i.e.*, CBRE, IRR, and Rose).  Each of

11  the projections indicate that the Reorganized Debtor will be able to make its projected

12  payments under the Plan, and still have cash for its operations.  The Debtor and its

13  professionals do not guarantee that the projections will be met.  Moreover, the Debtor's

14  professionals have relied solely upon the data presented to them by the Debtor's

15  management and its consultants.  However, annualization of the NOI from October 2009,

16  as reported by the Receiver, demonstrates that the Properties are currently generating

17  sufficient revenue to satisfy the monthly debt service payments required by the Plan.

18  YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL

19  ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL

20  STATEMENTS.

21      Under the Plan, the Reorganized Debtor is required to make monthly payments

22  from cash generated through operations each month to Fannie Mae to service the

23  Allowed Class 1 Secured Claim.  The Debtor's projections indicate that the Reorganized

24  Debtor will have sufficient NOI to make the required debt service payments under the

25  Plan.

26      In sum, the Debtor believes that it will have sufficient cash on hand on the Effective

27  Date (together with the contributions required to be made by the Buyer) to fund the Plan,

28

389528.1                                46                    SECOND AMENDED
                                                              DISCLOSURE STATEMENT

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Deleted:

Deleted: FIRST

1 │ and to pay the other required expenses under the Plan from the future cash flow of the

2 │ Reorganized Debtor.

3 │     **D.**     **Claims**

4 │      THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE BY

5 │ CLAIMANTS WHOSE CLAIMS WERE NOT SCHEDULED OR SCHEDULED AS

6 │ DISPUTED, CONTINGENT OR UNLIQUIDATED HAS NO YET BEEN SET.  Pursuant to

7 │ the Plan, the Reorganized Debtor or any other party-in-interest shall have up until 180

8 │ days after the Effective Date to File objections to Claims.  The Reorganized Debtor may

9 │ obtain an extension of this date by Filing a motion in the Bankruptcy Court, based upon a

10 │ showing of "cause."  If, at the time of any distribution, a Claim under the Plan is subject to

11 │ a pending objection, the Reorganized Debtor shall have the right to hold in trust any funds

12 │ that would be distributed to that claimant if the Claim were Allowed.  Any unused funds

13 │ held in trust as described in this Section shall, pursuant to the Plan, be distributed to the

14 │ holders of Allowed General Unsecured Claims on a *pro rata* basis.

15 │ **V.**     **EFFECT OF CONFIRMATION**

16 │      **A.**     **Discharge**

17 │      The rights under the Plan and the treatment of Claims under the Plan will be in

18 │ exchange for, and in complete satisfaction, discharge, and release of, all Claims of any

19 │ nature whatsoever (including, without limitation, any interest accrued on Claims from and

20 │ after the Petition Date) against the Debtor, the Reorganized Debtor, or their property.

21 │ Except as otherwise provided in the Plan or the Confirmation Order:

22 │      1.     On the Effective Date, the Debtor, the Debtor's Estate, the Reorganized

23 │            Debtor, and their property will, to the fullest extent permitted by Bankruptcy

24 │            Code § 1141, be deemed discharged and released from any and all Claims,

25 │            including, without limitation, all demands, liabilities, Claims, that arose before

26 │            the Confirmation Date or that are based upon or otherwise relate to acts,

27 │            events, omissions, transactions or other activities of any kind that occurred

28 │            before the Confirmation Date, and all debts of the kind specified in

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1            47            SECOND AMENDED
DISCLOSURE STATEMENT

**Deleted:** FIRST

1    Bankruptcy Code §§ 502(g), 502(h), or 502(i) regardless of whether: (1) a

2    proof of Claim based on such a debt is Filed or deemed Filed; (2) a Claim

3    based on such a debt is allowable under Bankruptcy Code § 502; or (3) the

4    Person holding the Claim based on such a debt has accepted the Plan;

5    2.    All Persons will be precluded from asserting against the Debtor, the Estate,

6    the Reorganized Debtor, or their property any other or further Claims based

7    on, arising from, or in connection with any act, event, omission, transaction,

8    or other activity of any kind that occurred before the Confirmation Date;

9    3.    Any debt of the Debtor, whether secured or unsecured, which was in default

10    as of or any time prior to the Confirmation Date, will no longer be deemed in

11    default.  Moreover, to the extent that the Debtor complies with the terms and

12    conditions of the Plan, these obligations will be deemed in good standing;

13    4.    As set forth in Bankruptcy Code §§ 524 and 1141, except as otherwise

14    provided in the Plan or the Confirmation Order, the Confirmation Order

15    constitutes a discharge of any and all Claims against, and all debts and

16    liabilities of, the Debtor.  The Reorganized Debtor and its property will, to the

17    fullest extent permitted by Bankruptcy Code § 1141, be deemed discharged

18    and released from any and all Claims, including, without limitation, all

19    demands, liabilities, Claims, that arose before the Confirmation Date or that

20    are based on or otherwise relate to acts, events, omissions, transactions or

21    other activities of any kind that occurred before the Confirmation Date.  This

22    discharge will void any judgment that was obtained against any of the

23    Debtor at any time only to the extent that the judgment relates to a

24    discharged Claim; and

25    5.    Subject to the limitations and conditions imposed under Bankruptcy Code §

26    1125(e), Persons who – in good faith and in compliance with applicable

27    Bankruptcy Code provisions – either solicit Plan acceptances or rejections or

28    participate in the offer, issuance, sale, or purchase of securities under the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

389528.1                                48                    SECOND AMENDED
DISCLOSURE STATEMENT

Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  Plan will not be liable on account of their solicitation or participation for

2  violation of any applicable law, rule, or regulation governing the solicitation

3  of Plan acceptances or rejections or the offer, issuance, sale or purchase of

4  such securities.

5  **B.    Revesting of Property in the Reorganized Debtor**

6  Except as provided in the Plan or in any agreements contemplated under the Plan,

7  the confirmation of the Plan revests all the property of the Estate in the Reorganized

8  Debtor.

9  **C.    Modification of the Plan**

10  The Debtor may modify the Plan at any time before confirmation.  If the Plan is

11  modified, however, the Court may require a new Disclosure Statement or re-voting on the

12  Plan depending upon the nature of the modifications and their effect on parties-in-interest.

13  The Debtor may also seek to modify the Plan at any time after confirmation if: (a) the Plan

14  has not been substantially consummated; and (b) the Court, after notice and a hearing,

15  authorizes the proposed modification.

16  **D.    Post-Confirmation Status Report**

17  Within 120 days of the entry of the Confirmation Order, the Reorganized Debtor will

18  file a status report with the Court explaining what progress has been made towards

19  consummation of the confirmed Plan.  The status report shall be served on the OUST,

20  Fannie Mae, the creditors holding the 20 largest unsecured claims, and the parties who

21  have requested special notice.  Further status reports shall be field every 120 days and

22  served on the same entities until the Plan has been fully consummated.

23  **E.    Quarterly Fees**

24  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to confirmation shall be

25  paid to the OUST on or before the Effective Date.  Quarterly fees accruing under 28

26  U.S.C. § 1930(a)(6) after confirmation shall be paid to the OUST by the Reorganized

27  Debtor until a final decree, or the entry of an order dismissing the Case or converting the

28  Case to chapter 7, at the rate in effect at the time such fees are due.

389528.1          49          SECOND AMENDED
DISCLOSURE STATEMENT

Deleted: FIRST

**F.      Post-Confirmation Conversion/Dismissal**

After the Plan is confirmed, a creditor or party-in-interest may bring a motion, only after notice and a hearing, to convert or dismiss this Case under Bankruptcy Code § 1112(b) if there is a material default in performing the Plan.  If the Court orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Estate and that has not been distributed under the Plan will revest in the chapter 7 estates.  The automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously authorized by the Court during the Case.

The Confirmation Order may also be revoked under very limited circumstances. The Court may revoke the Confirmation Order if it was procured by fraud and if a party-in-interest brings an adversary proceeding to revoke the confirmation within 180 days after the entry of the Confirmation Order.

///

///

///

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1

50

SECOND AMENDED
DISCLOSURE STATEMENT

Deleted: FIRST

**G.** **Final Decree**

Once the Estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor will File a Motion with the Court to obtain a final decree closing the Case.

Dated:  February 8, 2010               PHOENIX KINGDOM II, LLC

> Deleted: January 5

By:  /s/ Terry Knutson
TERRY KNUTSON
President

Dated:  February 8, 2010               WEILAND, GOLDEN,
                                       SMILEY, WANG EKVALL & STROK, LLP

> Deleted: January 5

By:  /s/ Robert S. Marticello
ROBERT S. MARTICELLO
Attorneys for Debtor and Debtor-in-
Possession, Phoenix Kingdom II, LLC

389528.1                    51              SECOND AMENDED
                                           DISCLOSURE STATEMENT

> Deleted: FIRST

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## TABLE OF DEFINITIONS

"**1111(b) Debt Service Payments**" means the monthly interest payments on the outstanding principal amount of the Secured Portion of Fannie Mae's Allowed Claim required under the Plan if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b).

"**1111(b) Amortization Payments**" means the monthly payments of principal and interest on Fannie Mae's Allowed Claim required under the Plan after December 31, 2016, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b).

"**Actions**" means any action, other than Avoidance Actions, that arises prior to the Effective Date.

"**Administrative Claim**" means a Claim against the Debtor for administrative costs or expenses that are allowable under Bankruptcy Code § 503(b).

"**Administrative Tax Claim**" means an Administrative Claim or other Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor for taxes (or for related interest or penalties) for any tax period that, either in whole or in part, falls within the period beginning on the Petition Dates and ending on the Effective Date.

"**Allowed Claim**" means a Claim against the Debtor, other than an Administrative Claim, to the extent that:

    a.    Either: (i) a proof of Claim was timely Filed; or (ii) a proof of Claim is deemed timely Filed either under Bankruptcy Rule 3003(b)(1) or by a Final Order; and

    b.    Either: (i) the Claim is not a Disputed Claim; (ii) the Claim is allowed by a Final Order; or (iii) the Claim is allowed under the Plan.

"**Allowed [Class Designation and/or Secured, Priority, or General Unsecured] Claim**" means an Allowed Claim in the specified Class and/or of the specified type.

"**Anthracite**" means Anthracite Funding, LLC.

"**Arbor**" means Arbor Realty Mortgage Securities Series 2005-1, Ltd.

"**Avoidance Actions**" mean preference and other avoidance actions under 11 U.S.C. §§ 544 *et. seq.*

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1

DEFINITIONS

1    **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101-

2    1330.

3    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

4    **"Bar Date"** means the last date for filing proofs of claim in the Debtor's Case.

5    **"Bar Date Motion"** means the Debtor's motion to establish the last date for filing

6    proofs of claim in the Debtor's Case.

7    **"Bethany"** means The Bethany Group and related entities, which served as the

8    Debtor's property and asset manager prior to the Petition Dates.

9    **"Buyer"** means the entity formed and owned by Mr. Knutson and Rose to

10    purchase the Membership Interests in the Reorganized Debtor.

11    **"Case"** means the Debtor's voluntary case under chapter 11 of the Bankruptcy

12    Code that is pending before the United States Bankruptcy Court for the Central District of

13    California, Santa Ana Division.

14    **"CBRE"** means CB Richard Ellis.

15    **"Claim"** means a claim, as the term "claim" is defined in Bankruptcy Code

16    § 101(5), against a Debtor.

17    **"Class"** or **"Class of Claims or Interests"** means a group of Claims or Interests

18    as classified under the Plan.

19    **"Confirmation Date"** means the date on which the Court enters the Confirmation

20    Order on its docket.

21    **"Confirmation Hearing"** means the hearing held by the Court on the confirmation

22    of the Plan.

23    **"Confirmation Order"** means the Court order confirming the Plan under

24    Bankruptcy Code § 1129.

25    **"Court"** means the United States Bankruptcy Court for the Central District of

26    California, Santa Ana Division.

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1

DEFINITIONS

1    **"Cure Amount"** means any amounts that the Reorganized Debtor must pay to

2  cure defaults under the executory contracts and unexpired leases to be assumed under

3  the Plan.

4    **"Debt Service Payments"** means the monthly interest payments on the

5  outstanding principal balance of the Allowed Class 1 Secured Claim required under the

6  Plan.

7    **"Debtor"** means Phoenix Kingdom II, LLC.

8    **"Disclosure Statement"** means the Disclosure Statement Describing Joint

9  Chapter 11 Plan.

10    **"Disputed Claim"** means a Claim:

11      a.    As to which a proof of Claim was Filed or is deemed Filed under Bankruptcy

12            Rule 3003(b)(1); and

13      b.    Reorganized Debtor or any party in interest entitled to do so has Filed an

14            objection by the Claims Objection Deadline and as to which that objection

15            has not been overruled, denied by a Final Order, or withdrawn.

16    **"Effective Date"** means the first business day that is at least 15 days after entry of

17  the Confirmation Order, provided there has been no appeal from, or order staying the

18  effectiveness of, the Confirmation Order.

19    **"Effective Date Payments"** means payments required by the Plan to be made by

20  the Debtor on the Effective Date.

21    **"Estate"** means the bankruptcy estate created in the Debtor's Case under

22  Bankruptcy Code § 541.

23    **"Evidentiary Hearing"** means the evidentiary hearing on the Stay Relief Motion.

24    **"Exclusivity Motion"** means the motion filed by the Debtor on November 3, 2009

25  for an order extending its exclusive periods to file a plan and to solicit acceptances of its

26  plan.

27    **"Fannie Mae"** means Federal National Mortgage Association.

28

| Deleted: 30 |
| --- |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1        **"File," "Filed," or "Filing"** means duly and properly filed with the Court and

2   reflected on the Court's official docket.

3        **"Final Order"** means an order or judgment of the Court entered on the Court's

4   docket.

5         a.     That has not been reversed, rescinded, stayed, modified, or amended;

6         b.     That is in full force and effect; and

7         c.     With respect to which (i) the time to appeal or to seek review, remand,

8               rehearing, or a writ of certiorari has expired and as to which no timely Filed

9               appeal or petition for review, rehearing, remand, or writ of certiorari is

10             pending, or (ii) any such an appeal or petition has been dismissed or

11             resolved by the highest court to which the order or judgment was appealed

12             or from which review, rehearing, remand, or a writ of certiorari was sought.

13       **"Interests"** means an equity interest in the Debtor.

14       **"Junior Mezz Loan Agreement"** means the Junior Mezzanine Loan Agreement

15   dated June 1, 2007, pursuant to which Lehman loaned Phoenix Kingdom II Mezz2, LLC,

16   the sum of $27,510,000.

17       **"Lehman"** means Lehman Brothers Bank, FSB.

18       **"Lehman Loan"** means the loans made by Lehman to the Debtor and its affiliates

19   in the aggregate sum of approximately $238,010,000.

20       **"Lehman Loan Documents"** collectively means the Senior Loan Agreement, the

21   Senior Mezzanine Loan Agreement, and the Junior Mezzanine Loan Agreement pursuant

22   to which Lehman loaned the aggregate sum of approximately $238,010,000 to the Debtor

23   and its affiliates.

24       **"Membership Interests"** means the membership interests in the Debtor or the

25   Reorganized Debtor.

26       **"Mezz Lenders"** collectively means Anthracite and Arbor.

27       **"Monthly Payment Procedure"** means the "Modified Fee Application Procedures"

28   authorized in the Debtor's applications to employ Weiland Golden.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

389528.1            55             DEFINITIONS

1    **"MOR"** means the Debtor's monthly operating reports.

2    **"Motion"** means a request asking a judge to issue a ruling or order on a legal

3 matter.

4    **"New Money Investment"** means the $22,340,000 in cash to be contributed by

5 the Buyer on the Effective Date to purchase the Membership Interests in the Reorganized

6 Debtor.

7    **"NOI"** means net operating income, which is effective gross income generated by

8 the Properties less general operating expenses necessary to operate and maintain the

9 Properties.

10    **"Non-Ordinary-Course Administrative Claims"** means Administrative Claims

11 that are not Ordinary Course Administrative Claims, Administrative Tax Claims, or

12 Professional-Fee Claims, including Claims that may arise from agreements entered into

13 with the Estate after the Petition Date other than trade agreements.

14    **"Non-Professional Administrative Claims"** means Administrative Claims that are

15 not Professional-Fee Claims.

16    **"Note"** means the Promissory Note dated June 1, 2007, between Lehman and the

17 Debtor.

18    **"Ordinary-Course Administrative Claims"** means Administrative Claims–other

19 than Administrative Tax Claims, Professional-Fee Claims, and Non-Ordinary-Course

20 Administrative Claims, based upon liabilities that the Debtor incurs in the ordinary course

21 of their business.

22    **"OUST"** means the Office of the United States Trustee, Santa Ana Division.

23    **"Person"** means any individual, corporation, general partnership, limited

24 partnership, limited liability company, association, joint-stock company, joint venture,

25 estate, trust, government, political subdivision, governmental unit (as defined in the

26 Bankruptcy Code), official committee appointed by the United States Trustee, unofficial

27 committee of creditors or equity holders, or entity.

28    **"Petition Date"** refers to the petition date for the Debtor.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

389528.1                    56                    DEFINITIONS

1   **"Plan"** means the Debtor's Chapter 11 Plan of Reorganization, including any

2   modifications or amendments to the Plan.

3   **"Priority Claim"** means an Allowed Claim entitled to priority against an Estate

4   under Bankruptcy Code §§ 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7).

5   **"Priority Return"** means the return to which the Buyer is entitled from monthly

6   surplus NOI (after Debt Service Payments) equal to the amount of the New Money

7   Investment, plus a 19% internal rate of return on the New Money Investment.

8   **"Priority Tax Claim"** means an Allowed Claim entitled to priority against an Estate

9   under Bankruptcy Code § 507(a)(8).

10  **"Portfolio"** means the Phoenix Kingdom II portfolio.

11  **"Professional-Fee Claim"** means:

12  a.    A Claim under Bankruptcy Code §§ 327, 328, 330, 331, 503, or 1103 for

13         compensation for professional services rendered or expenses incurred on

14         an Estate's behalf, or

15  b.    A Claim either under Bankruptcy Code § 503(b)(4) for compensation for

16         professional services rendered or under Bankruptcy Code § 503(b)(3)(D) for

17         expenses incurred in making a substantial contribution to an Estate.

18  **"Properties"** means the Debtor's five occupied apartment complexes in Phoenix,

19  Arizona metropolitan area.

20  **"Reorganization Case"** means the Debtor's voluntary case under Chapter 11 of

21  the Bankruptcy Code that is pending before the United States Bankruptcy Court for the

22  Central District of California, Santa Ana Division.

23  **"Reorganized Debtor"** means the Debtor, as reorganized pursuant to the Plan as

24  of the Effective Date of the Plan.

25  **"Receiver"** means 707 Management Services, Inc.

26  **"Request for Payment"** means a request for the payment of a Non-Professional

27  Non-Ordinary Course Administrative Claim as described in Section III.D.1.e. of the

28  Disclosure Statement.

389528.1                              57                           DEFINITIONS

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    **"Reserve Funds"** shall have the meaning ascribed to such term in the Senior Loan

2    Agreement.

3        **"Rose"** means Rose Investments, LLC.

4        **"Schedule of Assumed Agreements"** means a list of executory contracts and

5    unexpired leases assumed by the Debtor.

6        **"Schedule of Rejected Agreements"** means a list of executory contracts and

7    unexpired leases rejected by the Debtor.

8        **"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien

9    against property in which an Estate has an interest or that is subject to setoff under

10    Bankruptcy Code § 553.  A Claim is a Secured Claim only to the extent of the value of the

11    Claim holder's interest in that property or to the extent of the amount subject to setoff, as

12    applicable, as determined under Bankruptcy Code § 506(a).

13        **"Senior Loan Agreement"** means the Loan Agreement dated June 1, 2007,

14    pursuant to which Lehman loan the Debtor the sum of $160,500,000.

15        **"Senior Mezz Loan Agreement"** means the Senior Mezzanine Loan Agreement

16    dated June 1, 2007, pursuant to Lehman loaned Phoenix Kingdom II Mezz1, LLC, the

17    sum of $50,000,000.

18        **"SOFA"** means the Debtor's statements of financial affairs.

19        **"Stay Relief Motion"** means the motion filed on August 14, 2009 by Fannie Mae

20    for relief from the automatic stay.

21        **"Stipulation"** means the stipulation among the Debtor, Fannie Mae, and the

22    Receiver to (i) allow the Receiver to remain in possession of the Properties subject to the

23    requirements of the Bankruptcy Code and the jurisdiction of the Court, and (ii) authorize

24    the Receiver to use cash collateral pursuant to maintain and operate the Properties in the

25    ordinary course of business.

26        **"Subordinated Equity Return"** means the return paid on the Membership

27    Interests in the Reorganized Debtor from surplus NOI and/or proceeds from the sale or

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  refinancing of the Properties after Debt Service Payments and the payment of the Priority

2  Return.

3     **"Tax Code"** means the Internal Revenue Code.

4     **"Unsecured Claim"** or **"General Unsecured Claim"** means a Claim that is not an

5  Administrative Claim, a Priority Tax Claim, a Priority Claim, or a Secured Claim.

6     **"Weiland Golden"** means Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP.

7     **"Yenina"** means Yenina, LLC.

Deleted: ¶

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

# DECLARATION OF TERRY R. KNUTSON

I, Terry R. Knutson, declare as follows:

1.      I am the President of the Debtor.  I am submitting this declaration in support of the Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan of Reorganization (the "Disclosure Statement").  All terms defined in the Disclosure Statement are incorporated herein by this reference.  The following is based upon my personal knowledge and if called as a witness herein, I could and would competently testify thereto.

2.      The Debtor's general insolvency counsel, Weiland Golden prepared this Disclosure Statement and the accompanying Plan at the direction of, and with the review, input, and assistance of the Debtor's management and its consultants, including myself.

3.      All financial data referenced in this Disclosure Statement and the accompanying Plan has been generated by the Debtor or its consultants from the information in the Debtor's books and records, or from other sources deemed to be reliable.

4.      All facts and representations in this Disclosure Statement and the accompanying Plan are true to the best of my knowledge.

5.      To the best of my knowledge, the Disclosure Statement includes all facts that would be material to a creditor in determining whether to vote to accept or reject the Plan.

///

///

///

Deleted: Firs

Deleted: I

Deleted: First

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1

60

DECLARATION

1     6.     Yenina is a South Dakota limited liability company formed and capitalized by

2 others and myself to invest in multi-family housing workouts. I own equity in Yenina. My

3 adult son, Lance K. Knutson, is the managing member of Yenina.

4     I declare under penalty of perjury that the foregoing is true and correct.

5     Executed on this 8th day of February, 2010, at Lodi, California.

6

7                                       */s/Terry R. Knutson*

8                                         Terry R. Knutson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Deleted:** ¶
¶
<#>Upon approval of the Disclosure Statement, I will cause to be deposited the sum of $4,000,000 into a separate account with a financial institution in the State of California for the purpose of demonstrating my ability to financially perform in accordance with the Plan. ¶

**Deleted:** 5

**Deleted:** January

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

389528.1                            61                        DECLARATION

**DECLARATION OF LEONARD GLICKMAN**

I, Leonard Glickman, declare as follows:

1. I am the founder and Managing Partner of Rose Investments, LLC ("Rose"), a family real estate development and investment firm based in Beverly Hills, California. I am submitting this declaration in support of the Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan of Reorganization. All terms defined in the Disclosure Statement are incorporated herein by this reference. The following is within my personal knowledge, and if called upon as a witness, I could and would testify competently with respect thereto.

Deleted: First

Deleted: First

2. Together, my partners and I have been investing in real estate projects for over 30 years. We have built, owned, and continue to manage upwards of 15,000 multi-family units and 5,000,000 square feet of commercial space. During my career, I have personally entitled, built, owned and continue to manage a wide array of projects from five unit single-family projects to 800-acre master planned communities.

3. Rose has readily available cash in amount necessary to fund its share of the New Money Investment as required by the Plan, provided it is confirmed, on or before the Effective Date.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of February, 2010, at ____________, ____________.

Deleted: __

Deleted: January

______________________________
Leonard Glickman

Smiley, Wang Weiland, Golden, Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP

## DECLARATION OF LANCE K. KNUTSON

I, Lance K. Knutson, declare as follows:

1.     I am the managing members of Yenina, LLC ("Yenina").  I am submitting this declaration in support of the Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan of Reorganization (the "Disclosure Statement").  All terms defined in the Disclosure Statement are incorporated herein by this reference.  The following is based upon my personal knowledge and if called as a witness herein, I could and would competently testify thereto.

2.     I have reviewed the Disclosure Statement, and I am familiar with the transactions proposed therein, including, the sale of the Membership Interests in the Reorganized Debtor to a company owned, in part, by Yenina.

3.     Upon approval of the Disclosure Statement, I will cause Yenina to deposit the sum of $4,000,000 into a separate account with a financial institution in the State of California for the purpose of demonstrating its ability to financially perform in accordance with the Plan.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of February, 2010, at _____, _____.


_____
Lance K. Knutson

389528.1                          63                          DECLARATION