**WEILAND, GOLDEN, SMILEY, WANG EKVALL & STROK, LLP**
Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
Robert S. Marticello, State Bar No. 244256
rmarticello@wgllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@wgllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone: (714) 966-1000
Facsimile: (714) 966-1002

Attorneys for Debtor
Phoenix Kingdom II, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>PHOENIX KINGDOM II, LLC, a Delaware limited liability company,<br><br>Debtor. | Case No. 8:09-bk-16755-RK<br><br>Chapter 11 Case<br><br>SECOND AMENDED CHAPTER 11 PLAN<br><br>DATE:<br>TIME:<br>PLACE: Courtroom 5D<br>411 W. Fourth St.<br>Santa Ana, CA 92701 |

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......... 1

A. Purpose of this Document .......... 1

B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing .......... 2

1. Time and Place of the Confirmation Hearing .......... 3

2. Deadline for Voting for or Against the Plan .......... 3

3. Deadline for Objecting to the Confirmation of the Plan .......... 3

4. Identity of Person to Contact for More Information Regarding the Plan .......... 3

C. Disclaimer .......... 3

II. BACKGROUND .......... 4

A. Description and History of the Debtor's Business .......... 4

1. The Properties .......... 4

2. The Lehman Brothers Loan .......... 4

B. Principals/Affiliates of the Debtor's Business .......... 5

C. Management of the Debtor Before and After Bankruptcy .......... 5

D. Events Leading to Chapter 11 Filing .......... 5

E. Significant Events During the Bankruptcy .......... 7

1. Bankruptcy Proceedings .......... 7

a. Motion to Approve Stipulation to Allow the Receiver to Remain in Possession of the Properties and Use Cash Collateral .......... 7

b. Fannie Mae Stay Relief Motion .......... 7

c. Exclusivity .......... 8

d. Employment of the Debtor's Professionals .......... 8

e. Claims Bar Date .......... 8

f. The Debtor's Schedules, Interim Statements, and Operating Reports .......... 9

**TABLE OF CONTENTS (cont.)**

**Page**

2. Other Legal Proceedings ........ 9
3. Actual And Projected Recovery Of Preferential Or Fraudulent Transfers ........ 9
4. Procedures Implemented To Resolve Financial Problems ........ 10
5. Current and Historical Financial Conditions ........ 11

III. SUMMARY OF THE PLAN OF REORGANIZATION ........ 11

A. Purchase of the Membership Interests in the Reorganized Debtor ........ 11
B. What Creditors and Interest Holders will Receive Under the Proposed Plan ........ 12
C. Unclassified Claims ........ 12
1. Administrative Expenses ........ 12
a. Ordinary Course Administrative Claims ........ 14
b. Non-Ordinary Course Administrative Claims ........ 14
c. Professional Fee Claims ........ 15
2. Priority Tax Claims ........ 16
D. Classified Claims ........ 17
1. Summary of Classes ........ 17
2. Secured Claims ........ 17
a. Secured Claim of Fannie Mae ........ 17
b. Secured Claims Other Than the Secured Claim of Fannie Mae ........ 20
3. Classes of Priority Unsecured Claims ........ 20
4. Class of General Unsecured Claims ........ 21
5. Class of Interest Holders ........ 23
E. Means of Effectuating the Plan ........ 24
1. Purchase of the Membership Interests in the Reorganized Debtor ........ 24

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**TABLE OF CONTENTS (cont.)**

Page

2. Funding for the Plan ........ 26

3. The Structure of the Reorganized Debtor and Post-Confirmation Management ........ 26

4. Disbursing Agent ........ 27

F. Risk Factors ........ 27

G. Other Provisions of the Plan ........ 28

1. Executory Contracts and Unexpired Leases ........ 28

a. Assumptions ........ 28

b. Rejections ........ 30

2. Changes in Rates Subject to Regulatory Commission Approval ........ 31

3. Potential Avoidance Actions ........ 31

4. Retention of Jurisdiction ........ 32

H. Tax Consequences of the Plan ........ 34

IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ........ 34

A. Who May Vote or Object ........ 35

1. Who May Object to Confirmation of the Plan ........ 35

2. Who May Vote to Accept/Reject the Plan ........ 35

a. What Is an Allowed Claim/Interest ........ 35

b. What Is an Impaired Claim/Interest ........ 36

3. Who is Not Entitled to Vote ........ 36

4. Who Can Vote in More Than One Class ........ 37

5. Votes Necessary to Confirm the Plan ........ 37

6. Votes Necessary for a Class to Accept the Plan ........ 38

7. Treatment of Nonaccepting Classes ........ 38

8. Request for Confirmation Despite Nonacceptance by Impaired Classes ........ 38

**TABLE OF CONTENTS (cont.)**

Page

B. Liquidation Analysis .......... 38

C. Feasibility .......... 40

D. Claims .......... 41

V. EFFECT OF CONFIRMATION .......... 42

A. Discharge .......... 42

B. Revesting of Property in the Reorganized Debtor .......... 43

C. Modification of the Plan .......... 44

D. Post-Confirmation Status Report .......... 44

E. Quarterly Fees .......... 44

F. Post-Confirmation Conversion/Dismissal .......... 44

G. Final Decree .......... 45

TABLE OF DEFINITIONS .......... 46

DECLARATION OF TERRY R. KNUTSON .......... 53

DECLARATION OF LEONARD GLICKMAN .......... 55

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

## I. INTRODUCTION[1]

Phoenix Kingdom II, LLC (the "Debtor"), is the debtor in a chapter 11 bankruptcy case. On July 6, 2009 (the "Petition Date"), the Debtor commenced this bankruptcy case (the "Case") by filing a voluntary chapter 11 petition under the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 *et seq*. Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court and which is provided to help you understand the Plan.

The Debtor's Second Amended Plan (the "Plan") is a reorganizing plan. As described in further detail below, the Debtor seeks to accomplish payments under the Plan by paying creditors from the sale of equity in the "Reorganized Debtor" to a company to be formed by Yenina, LLC ("Yenina"), and Rose Investments, LLC ("Rose"), a third party equity investor, or over time from the Reorganized Debtor's future operations. The Effective Date of the Plan will be the first business day that is at least 15 days after the entry of an order confirming the Plan (the "Confirmation Order"), provided there has been no appeal from, or order staying the effectiveness of, the Confirmation Order.

## II. SUMMARY OF THE PLAN OF REORGANIZATION

### A. Purchase of the Membership Interests in the Reorganized Debtor

As discussed in further detail in Section II.E, the Membership Interests in the Reorganized Debtor will be sold, subject to overbid,[2] to a to-be-formed entity (the "Buyer") owned by Yenina and Rose. The Buyer will contribute $22,287,500[3] in cash (the "New Money Investment") to be used as follows: (i) $14,687,500 will be used to pay down the debt owed to the Debtor's senior secured creditor, Fannie Mae; (ii) $5,600,000 will used to fund the deferred capital expenditures necessary to return the Properties to "average condition"; (iii) $1,000,000 will be deposited into a renovation reserve fund (the

[1] Any capitalized terms not defined in the text of this Plan are defined in the Table of Definitions found at the end of the Plan.

[2] As provided in further detail in Section II.E.4 below, the Membership Interests will be sold subject to the overbid procedures attached hereto as Exhibit "3."

[3] Of this sum, $4,000,000 will be contributed by Yenina, and $18,287,500 will be contributed by Rose.

Deleted: First

Deleted: Terry R. Knutson

Deleted: Mr. Knutson

Deleted: the Debtor's current President,

Deleted: 30

Deleted: .

Deleted: Mr. Knutson

Deleted: Mr. Knutson

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

"Renovation Reserve") to be used at the Buyer's discretion to improve the Properties; and (iv) $1,000,000 will be used, first, to satisfy the Debtor's Allowed Administrative Claims on the Effective Date, second, to potentially satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder will be distributed to the holders of Allowed General Unsecured Claims as provided in Section II.D.4 below, with any surplus to be deposited into the Renovation Reserve. The Debtor estimates that approximately $850,000 will be available after the payment of Allowed Administrative Claims and Allowed Priority or Secured Tax Claims to distribute to the holders of Allowed General Unsecured Claims. In exchange for the New Money Investment, the Buyer will receive 100% of the Membership Interests in the Reorganized Debtor. However, the Buyer has agreed to allocate 5% of the subordinated equity return on the Membership Interests in the Reorganized Debtor, if any, to Fannie Mae, as provided herein.

Deleted: then

**B. What Creditors and Interest Holders will Receive Under the Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various classes according to their right to priority. The Plan states whether each Class of Claims or Interests is impaired or unimpaired. The Plan provides the treatment each Class will receive. In no event shall any creditor receive more than the creditor's Allowed Claim, plus interest, to the extent provided herein.

**C. Unclassified Claims**

Certain types of Claims are not placed into voting classes but are instead unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to certain treatment under the Bankruptcy Code. Accordingly, the following Claims have not been placed into a Class:

**1. Administrative Expenses**

Administrative expenses are Claims for costs or expenses of administering the Debtor's Case which are allowed under § 507(a)(2) of the Bankruptcy Code. The

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

Bankruptcy Code requires that all Allowed Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following charts list all of the Debtor's § 507(a)(2) unpaid Administrative Claims and their treatment under the Plan:

| **Non-Professional Administrative Claims** | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Ordinary-Course Administrative Claims | $0.00 | Unless the Reorganized Debtor objects to an Ordinary-Course Administrative Claim, the Claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not file any Request for Payment of its Claim. Payments to Ordinary-Course Administrative Claimants will be paid from the Debtor's current cash flow or the Reorganized Debtor's future operations according to the existing trade terms. |
| Non-Ordinary Course Administrative Claims | $0.00 | To the extent that any Non-Ordinary-Course Administrative Claims are allowed, they will be paid in full by the Reorganized Debtor on the later of the Effective Date or immediately after the Court enters a Final Order allowing the Non-Ordinary-Course Administrative Claim. |
| Clerk's Office Fees | $0.00 | Paid in full on or before the Effective Date. |
| Office of the United States Trustee Fees | $0.00 | Paid in full on or before the Effective Date. |
| Administrative Tax Claims | $0.00 | Unless the Reorganized Debtor objects to an Administrative Tax Claim or otherwise disputes the Administrative Tax Claim in accordance with applicable law, the Claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Administrative Tax Claim, and the Person holding the Administrative Tax Claim need not file any Request for Payment of its Claim. Payments to Administrative Tax Claimants will |

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| | | be paid from the Debtor's current cash flow or the Reorganized Debtor's future operations according to applicable law. |

| Professional-Fee Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Weiland Golden | $150,000 (est.) as of the Effective Date, which would be in addition to the fees and expenses already paid to Weiland Golden post-petition. | Paid on the earlier of the Effective Date or in accordance with the Monthly Payment Procedure. |
| Total | $150,000 estimated[4] | |

a. Ordinary Course Administrative Claims

Unless the Reorganized Debtor or other party-in-interest objects to an Ordinary-Course Administrative Claim, the Claim will be deemed allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not File any Request for Payment of its Claim. Payments to Ordinary-Course Administrative Claimants will be paid from the Debtor's current cash flow or the Reorganized Debtor's future operations.

b. Non-Ordinary Course Administrative Claims

A Non-Ordinary-Course Administrative Claim will be paid by the Debtor on the Effective Date to the extent that prior to the Effective Date it has already been determined to be an Allowed Non-Ordinary-Course Administrative Claim by the Court pursuant to a Final Order. Any other Non-Ordinary-Course Administrative Claim will be paid by the Reorganized Debtor to the extent that it is allowed by the Court only if: (1) on or before 60 days after the Effective Date, the Person holding the Non-Ordinary Course Administrative Claim both Files with the Court a Request for Payment of the Non-Ordinary-Course

---

[4] The estimate of Professional-Fee Claims is only an estimate and will change based upon the legal services required during this Reorganization Case and upon what the Court ultimately awards to professionals. The Estate remains liable for all allowed legal fees and costs regardless of the estimates.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

Administrative Claim and serves the request on counsel for the Debtor/Reorganized Debtor and the OUST; and (b) the Court, in a Final Order, allows the Non-Ordinary-Course Administrative Claim. Any party-in-interest may File an objection to such a Request for Payment within the time provided by the Bankruptcy Rules or within any other period the Court establishes. Persons holding Non-Ordinary-Course Administrative Claims who do not timely File and serve a Request for Payment will be forever barred from asserting these Claims or sustaining any action seeking payment in any forum or from any court deriving from these Claims against the Estate, the Debtor, the Reorganized Debtor, or its property.

c. Professional Fee Claims

A Professional-Fee Claim will be allowed only if: (a) on or before 45 days after the Effective Date (or such further date if extended by Court order), the Person holding the Professional-Fee Claim both Files with the Court an application requesting that the Reorganized Debtor pay the Professional-Fee Claim; and (b) the Professional-Fee Claim is allowed by a Final Order. The Reorganized Debtor or any other party-in-interest may File an objection to such an application within the time provided by the Bankruptcy Rules or within any other period that the Court establishes. Persons holding Professional-Fee Claims who do not timely File and serve an application for payment will be forever barred from asserting these Claims against the Reorganized Debtor or their property.

As is indicated above, the Debtor estimates that it will need to pay Administrative Claims totaling approximately $150,000 on the Effective Date, unless the Claimant has agreed to be paid later or the Court has not yet ruled on the Claim. Based on the expected proceeds from the sale of Membership Interests in the Reorganized Debtor to the Buyer, the Debtor projects that it will have cash on hand in excess of this amount on the Effective Date to make the necessary payments, plus cash reserves. The Debtor's cash on hand and cash reserves will be used to pay Allowed Administrative Claims of the Estate. The Buyer will be responsible for contributing cash to enable the Debtor to pay Allowed Administrative Claims, to the extent that the cash on hand, cash reserves, and

Smiley, Wang Ekvall & Strok, LLP
Weiland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

cash contributed by the Buyer as part of the New Money Investment for such purpose are insufficient to do so.

### 2. Priority Tax Claims

Priority Tax Claims include certain unsecured income, employment and other taxes described by Bankruptcy Code § 507(a)(8). The Bankruptcy Code requires that each holder of such a § 507(a)(8) Priority Tax Claim receive the present value of such Claim in regular installment payments in cash, over a period not exceeding five years from the Petition Date. The following chart lists all of the Debtor's known § 507(a)(8) Priority Tax Claims and their treatment under the Plan:

| Priority Tax Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Priority Tax Claims | $0.00 | The holders of Allowed Priority Tax Claims shall receive, in full satisfaction of such Claims, deferred cash payments in an aggregate amount equal to the amount of the Allowed Priority Tax Claim, plus interest from the Effective Date on the unpaid balance of the Allowed Priority Tax Claim at the Prime Rate, or such higher rate as the Court may determine sufficient to provide "present value" of the Allowed Priority Tax Claim. Payment of the Allowed Priority Tax Claims shall be made in equal quarterly payments such that the Allowed Priority Tax Claims are repaid within five years from the Petition Date. The first installment payment shall be due on the later of: (i) 60 Business Days after the Effective Date; or (ii) 30 Business Days after the Court enters a Final Order allowing the Priority Tax Claim. The Reorganized Debtor shall have the right to pay the balance of the Allowed Priority Tax Claims in full at any time on or after the Effective Date without premium or penalty of any kind. |

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

D. **Classified Claims**

1. **Summary of Classes**

| Summary of Classes | |
|---|---|
| Class | Claimant(s) |
| Class 1 | Secured Claim of Fannie Mae |
| Class 2 | Mechanic's Lien Claims |
| Class 3 | Priority Unsecured Claims Pursuant to 11 U.S.C. §§ 507(a)(6) and (7) |
| Class 4 | Priority Unsecured Wage Claims Pursuant to 11 U.S.C. §§ 507(a)(4) and (5) |
| Class 5 | Unsecured Deficiency Claim of Fannie Mae |
| Class 7 | General Unsecured Claims |
| Class 7 | Claim of Arbor |
| Class 8 | Membership Holders |

2. **Secured Claims**

Secured Claims are Claims secured by liens on property of the Estate.

a. Secured Claim of Fannie Mae

Class 1 consists of the Secured Claim of Fannie Mae. Fannie Mae asserts a claim in the amount of $160,500,000 secured by a first priority lien against the Properties and the rents therefrom. The appraised value of the Properties is $58,750,000 (after the deduction of an estimated $5,600,000 in deferred capital expenditures required to return the Properties to "average condition").

Under the Plan, the Debtor's obligations to Fannie Mae shall be restructured as follows:

i. Allowed Secured Claim. On the Effective Date, Fannie Mae shall have an Allowed Class 1 Secured Claim in the amount of $68,750,000[5] or other amount based on the Court's determination of the fair market value of the Properties. Fannie Mae's Allowed Class 1 Secured Claim will be partially paid in cash on the Effective Date, and the remainder (approximately $44,062,500) shall accrue interest at the rate of 5.75% or at such other rate as the Court may determine. The Reorganized Debtor will make interest only payments ("Debt Service Payments") on the 1st of each month commencing after the

[5] This amount is based on the appraised value of the Properties ($58,750,000), plus the estimated amount of "Reserve Funds" remaining on the Effective Date ($10,000,000).

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Effective Date from NOI. The Allowed Class 1 Secured Claim will mature on December 31, 2016.

ii. Reinstatement of Reserves. On the Effective Date, the "Reserve Funds" (as defined in the Senior Loan Agreement) in the amount of approximately $12,000,000, which were withdrawn by Fannie Mae from the Debtor's renovation reserve account pre-petition and which are currently being held in a segregated account for the benefit of Fannie Mae, will be credited to Fannie Mae in partial satisfaction of its Allowed Class 1 Secured Claim. The Debtor estimates that the residual amount of Reserve Funds available for credit to Fannie Mae will total approximately $10,000,000 on the Effective Date.

iii. Cash Contribution by the Buyer. On the Effective Date, the Buyer shall contribute $22,287,500 in cash to be allocated as follows: (a) $14,687,500 shall be paid to Fannie Mae to be applied to principal on Fannie Mae's Allowed Class 1 Secured Claim, which, after application of the estimated $10,000,000 in Reserve Funds, will reduce Fannie Mae's secured claim by a total of $24,687,500 to $44,062,500; (b) $5,600,000 shall be used to fund the deferred capital expenditures necessary to return the Properties to "average condition"; (c) $1,000,000 will be deposited into the Renovation Reserve, to be expended at the Buyer's discretion to improve the Properties; and (d) $1,000,000 will be used, first, to satisfy the Debtor's Allowed Administrative Claims on the Effective, second, to potentially satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder will be distributed to the holders of Allowed General Unsecured Claims as provided in Section II.D.4 below, with any surplus to be deposited into the Renovation Reserve.

Deleted: then

iv. Retention of Security Interest. Fannie Mae will retain its lien on the Properties, the NOI generated by the Properties, and the Renovation Reserve, until the full satisfaction of the Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then the full satisfaction of Fannie Mae's Allowed

Deleted: FIRST

Claim, at which time Fannie Mae's lien shall be released and the Reorganized Debtor shall retain title to all such collateral free and clear of Fannie Mae's lien.

v. Allocation of Equity in the Reorganized Debtor. In exchange for the New Money Investment, the Buyer will receive 100% of the Membership Interests in the Reorganized Debtor. However, the Buyer has agreed to allocate 5% of the subordinated equity return on the Membership Interests in the Reorganized Debtor (the "Subordinated Equity Return"), if any, to Fannie Mae,as provided in Section II.D.4 below.

vi. The Priority Return. The Buyer shall be entitled to a priority return equal to the amount of the New Money Investment, plus an 18% internal rate of return on the New Money Investment (the "Priority Return"), which shall be paid from monthly NOI after payment of and provided the Reorganized Debtor is current on the Debt Service Payments to Fannie Mae on account of the Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then after payment of and provided the Reorganized Debtor is current on the 1111(b) Debt Service Payments or the 1111(b) Amortization Payments, as provided in paragraph (xi) below, to Fannie Mae on account of its Allowed Claim. To the extent that surplus NOI is insufficient to satisfy the Priority Return, the unpaid balance of the Priority Return shall earn interest at the rate of 19% until paid.

vii. Allocation of NOI. Each month NOI shall be allocated as follows: (a) to make scheduled Debt Service Payments to Fannie Mae on account of the then outstanding principal amount of the Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then to make the 1111(b) Debt Service Payments or the 1111(b) Amortization Payments, as provided in paragraph (xi) below, to Fannie Mae on account of its Allowed Claim; (b) to pay the Priority Return to the Buyer; and (c) to pay the Subordinated Equity Return to the Buyer and Fannie Mae.

viii. Right to Prepay. The Reorganized Debtor may pre-pay the remaining principal balance of Fannie Mae's Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then the remaining balance of Fannie

Deleted: 9
Deleted: surplus
Deleted: (after Debt Service Payments),
Deleted: its
Deleted: p
Deleted: its payments
Deleted: scheduled payments in paragraph (xi) below
Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Mae's Allowed Claim, in whole or part on any interest payment date, without penalty or fee. Following any such partial payment, Debt Service Payments to Fannie Mae will be calculated based on the remaining principal balance of the Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then based on the remaining principal balance of the Secured Portion (as that term is defined in paragraph (xi) below).

ix. Right to Encumber. The Reorganized Debtor may obtain financing to fund any working capital requirements of the Properties and/or to repay all or part of Fannie Mae's Allowed Class 1 Secured Claim, or if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then to repay all or part of Fannie Mae's Allowed Claim, secured by a lien against the Properties that is junior in priority to the lien of Fannie Mae ("Junior Financing"). Payments on account of any Junior Financing may be made from monthly NOI only after Debt Service Payments to Fannie Mae, or if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then only after the 1111(b) Debt Service Payments or the 1111(b) Amortization Payments to Fannie Mae, as provided in paragraph (xi) below. At the election of the Reorganized Debtor, monthly NOI may be used to make payments on account of any Junior Financing before or after payment of the Priority Return and/or the Subordinated Equity Return.

x. Right to Transfer. The remaining balance of Fannie Mae's Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then the remaining balance of Fannie Mae's Allowed Claim, will be transferable and severable based on commercially reasonable borrower standards. That is, the Buyer may alienate its interest in the Reorganized Debtor to a subsequent purchaser, subject to Fannie Mae's Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b)(2), then subject to Fannie Mae's Allowed Claim, provided Fannie Mae approves of the creditworthiness of the proposed subsequent purchaser, which approval will not be unreasonably withheld.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

xi. Treatment under 11 U.S.C. § 1111(b). If Fannie Mae timely elects application of 11 U.S.C. § 1111(b)(2), then Fannie Mae's total Allowed Claim shall be treated in Class 1, and shall be repaid as provided in this subparagraph. Interest shall accrue and be paid on only the secured portion of Fannie's Mae's Allowed Claim (the "Secured Portion"), which shall equal $68,750,000 or other amount based on the Court's determination of the fair market value of the Properties. The outstanding balance of the Secured Portion shall accrue interest at the rate of 5.75%. Fannie Mae's Allowed Claim shall be repaid as follows: (a) on the Effective Date, the Reserve Funds will be credited to Fannie Mae in partial satisfaction of the Secured Portion; (b) on the Effective Date, $14,687,500 will be paid to Fannie Mae to be applied to principal on the Secured Portion; (c) the Debtor shall make interest only payments on the outstanding principal amount of the Secured Portion (the "1111(b) Debt Service Payments") on the 1st of each month commencing after the Effective Date from NOI through December 31, 2016; and (d) on the 1st of each month commencing after December 31, 2016, the Debtor shall make monthly payments of principal and interest of at least $232,104.17 (the "1111(b) Amortization Payments"), which shall be applied, first, to interest on the Secured Portion, second, to principal on the Secured Portion, and, third, to the remainder of the Allowed Claim, for as many months as necessary to pay the full amount of Fannie Mae's Allowed Claim.

b. Secured Claims Other Than the Secured Claim of Fannie Mae

The following chart lists all Classes containing the Debtor's Secured Claims, other than the Secured Claim of Fannie Mae, and their treatment under the Plan:

| Secured Claims | | | | |
|---|---|---|---|---|
| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
| 2 | Mechanic's Lien Claims<br>• Collateral: The Properties<br>• Priority of Security Interest: Unknown | N | Y | Based on the value of the Properties and the amount of the debt owed to Fannie Mae, mechanic's lien claimants will have a secured claim only if and to the extent they establish they hold liens that are senior in priority to the lien of Fannie Mae under applicable law. If a mechanic's lien claimant establishes that its lien is senior in priority to |

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

| Secured Claims | | | | |
|---|---|---|---|---|
| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
| | • Total Claim Amount: Unknown<br><br>• Collateral Value: $58,750,000 | | | Fannie Mae, then such claimant will be paid in full either, at the election of the Debtor or Reorganized Debtor, (i) on the date that is 30 days following the later of the Effective Date, and the date of entry of a Court order allowing the Class 2 Claim, or (ii) in equal monthly payments over a period of 5 years with interest on the outstanding balance at the federal judgment rate as of the Effective Date. Otherwise, the mechanic's lien claimants will be paid in accordance with the treatment afforded to General Unsecured Creditors in Class 5. |

### 3. Classes of Priority Unsecured Claims

Certain priority Claims that are referred to in Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) are required to be placed in Classes. The Bankruptcy Code requires that each holder of the above Priority Claims receive cash on the Effective Date equal to the allowed amount of such Claim. However, a Class of unsecured Priority Claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim. The following chart lists all Classes containing the Debtor's Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) Priority Claims and their treatment under the Plan:

| Priority Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 3 | Priority unsecured claims pursuant to 11 U.S.C. §§ 507(a)(6) and (7)<br><br>Estimated total amount of claims: Unknown | N | Allowed Class 3 Priority Unsecured Claims shall be paid in full in cash on the later of the following dates: (i) the Effective Date; and (ii) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Unsecured Claim, unless the Claimant is a tenant of a Property on the Effective Date. If the Claimant is a tenant of a Property on the Effective Date, then the security deposit will be returned in the ordinary course of the Reorganized Debtor's business. |
| 4 | Priority wage claims pursuant to 11 U.S.C. §§ 507(a)(4) and (5)<br><br>Estimated total amount of | N | Allowed Class 4 Priority Unsecured Claims shall be paid up to the $10,950 statutory maximum in cash on the later of the following dates: (i) the Effective Date; (ii) the tenth (10th) Business Day after the entry of a Final Order |

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

| Priority Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | claims: Unknown | | allowing the Priority Unsecured Claim; or (iii) the date upon which such Allowed Priority Unsecured Claim becomes due according to its terms.<br><br>Upon the Effective Date, employees of the Debtor who are retained by the Reorganized Debtor will not be cashed out for all outstanding vacation pay and sick leave accrued as of the Effective Date (Leave Time) but rather, the Reorganized Debtor will agree to honor all such vacation days and sick leave in accordance with the terms of the employee's employment as it existed with the Debtor or the Receiver. Accordingly, Class 4 Claims that fall into the above category will receive no distribution on account of their Class 4 Claims. For Allowed Class 4 Claims that do not fall into the above category, on the Effective Date, the Reorganized Debtor will pay no more than the amount of the Allowed Class 4 Claim to the extent that such Claims satisfy the requirements of 11 U.S.C. §§ 507(a)(4) and (5), less any amounts paid to the holders of such claims by the Debtor or the Receiver prior to the Effective Date.<br><br>Any allowed Claim amounts in excess of $10,950 will be subject to the treatment afforded to General Unsecured Creditors in Class 5. |

Deleted: ¶ ¶ ¶

### 4. Class of General Unsecured Claims

General Unsecured Claims are Unsecured Claims not entitled to priority under Bankruptcy Code § 507(a). The following chart identifies the Plan's treatment of the Classes containing all of the Debtor's General Unsecured Claims:

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 5 | All General Unsecured Claims that are not the Unsecured Deficiency Claim of Fannie Mae<br><br>Estimated total amount of claims: $968,068.68 | Y | On the Effective Date, the Buyer will contribute the sum of $1,000,000 to be used, first, to pay Allowed Administrative Claims, second, to potentially satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder (the "Unsecured Creditor Fund") to distribute to the holders of Allowed Unsecured Claims. The Unsecured Creditor Fund will be distributed in one of the two following ways: |

Deleted: then

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | 1. At a minimum, the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim; or<br><br>2. A portion of the Unsecured Creditor Fund, as determined by the Court in connection with the Confirmation Hearing or as agreed to by Fannie Mae, shall be paid on a *pro rata* basis to only the holders of Allowed Class 5 General Unsecured Claims, and any remainder of the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim.<br><br>The treatment proposed herein shall be in full satisfaction of the Allowed Class 5 General Unsecured Claims.<br><br>The distribution proposed herein shall take place within 30 days following the later of (i) the Effective Date, and (ii) the date of entry of a Court order resolving the final disputed Class 5 or Class 6 Claim.<br><br>The Debtor estimates that the holders of Allowed Class 5 General Unsecured Claims will be repaid approximately .01% to 88% of their Allowed Claims. |
| 6 | Unsecured Deficiency Claim of Fannie Mae<br><br>Estimated total amount of claim: $91,750,000 | Y | On the Effective Date, the Buyer will contribute the sum of $1,000,000 to be used, first, to pay Allowed Administrative Claims, second, to potentially satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder (the "Unsecured Creditor Fund") to distribute to the holders of Allowed Unsecured Claims. The Debtor estimates that approximately $850,000 will be available after the payment of Allowed Administrative Claims and Allowed Priority or Secured Tax Claims to distribute to the holders of Allowed General Unsecured Claims. The Unsecured Creditor Fund will be distributed in one of the two following ways:<br><br>1. At a minimum, the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured |

Deleted: en

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | Deficiency Claim; or<br><br>2. A portion of the Unsecured Creditor Fund, as determined by the Court in connection with the Confirmation Hearing or as agreed to by Fannie Mae, shall be paid on a *pro rata* basis to only the holders of Allowed Class 5 General Unsecured Claims, and any remainder of the Unsecured Creditor Fund will be distributed on a *pro rata* basis to the holders of Allowed Class 5 General Unsecured Claims and to Fannie Mae on account of any Allowed Class 6 Unsecured Deficiency Claim.<br><br>In addition to the above, Fannie Mae will receive 5% of the subordinated equity return on the Membership Interests in the Reorganized Debtor (the "Subordinated Equity Return"), if any, from surplus NOI after payment of (i) Debt Service Payments, and (ii) the Priority Return.<br><br>The treatment proposed herein shall be in full satisfaction of any Allowed Class 6 Unsecured Deficiency Claim.<br><br>The distribution proposed herein shall take place within 30 days following the later of (i) the Effective Date, and (ii) the date of entry of a Court order resolving the final disputed Class 5 or Class 6 Claim. The Subordinated Equity Return, if any, will be distributed on a monthly basis from the future cash flow of the Reorganized Debtor.<br><br>If Fannie Mae timely elects application of 11 U.S.C. § 1111(b)(2), then there will be no Claims in Class 6, and Fannie Mae will not be entitled to the treatment provided herein. |
| 7 | Claim of Arbor<br><br>Estimated total amount of claim: $28,991,802.61 (per proof of claim filed on November 11, 2009) | Y | In full and complete satisfaction of any Allowed Class 7 Claim, Arbor will be allocated up to 20% of the Subordinated Equity Return on the Membership Interests in the Reorganized Debtor, if any, from surplus NOI after payment of (i) Debt Service Payments, and (ii) the Priority Return. |

### 5. Class of Interest Holders

Interest holders are the parties who hold Membership Interests (*i.e.*, equity interests) in the Debtor. The Debtor is Delaware limited liability company in which the

Deleted: FIRST

owners hold Membership Interests. The following chart identifies the Plan's treatment of the class of Interest holders.

| Interest Holders | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 7 | Interest Holders | Y | On the Effective Date, all existing Membership Interests in the Debtor will be cancelled, annulled, and extinguished. |

**E. Means of Effectuating the Plan**

**1. Purchase of the Membership Interests in the Reorganized Debtor**

The Buyer has offered to acquire the Membership Interests in the Reorganized Debtor, subject to overbid. The material terms of the proposed acquisition are as follows:

Deleted: seeks to

1. Restructuring of Senior Note. As provided in Section II.D.2, on the Effective Date, Fannie Mae shall have an Allowed Class 1 Secured Claim in the amount of $68,750,000, bearing interest, to the extent not paid in cash on the Effective Date, at the fixed rate of 5.75% and secured by the Properties and the NOI generated therefrom.

2. Capital Contribution. On the Effective Date, the Buyer shall contribute $22,287,500 in cash to be allocated as follows: (a) $14,687,500 shall be used to pay down Fannie Mae's Allowed Class 1 Secured Claim, which, after application of the estimated $10,000,000 in Reserve Funds, will reduce the principal balance of the Allowed Class 1 Secured Claim by a total of $24,687,500 to approximately $44,062,500; (b) $5,600,000 shall be used to fund the deferred capital expenditures necessary to return the Properties to "average condition"; (c) $1,000,000 will be deposited into the Renovation Reserve; (d) $1,000,000 will be used, first, to satisfy the Debtor's Allowed Administrative Claims on the Effective, second, to potentially satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder will be

Deleted: en

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

distributed to the holders of Allowed General Unsecured Claims as provided in Section II.D.4 above, with any surplus to be deposited into the Renovation Reserve.

3. Additional Plan Funding. To pay Allowed Administrative Claims on the Effective Date, the Debtor shall first use cash on hand, available cash reserves, and the cash contributed by the Buyer as part of the New Money Investment for such purpose. The Buyer shall contribute to the Estate funds sufficient to enable the Debtor to pay Allowed Administrative Claims that are due or expected to be due in full (to the extent that the Debtor's cash on hand, cash reserves, and the cash contributed by the Buyer as part of the New Money Investment to satisfy Allowed Administrative Claims are insufficient to satisfy such Claims) on the Effective Date.

4. Allocation of Membership Interests in the Reorganized Debtor. In exchange for the New Money Investment, the Buyer will receive 100% of the Membership Interests in the Reorganized Debtor. However, the Buyer has agreed to allocate 5% of the Subordinated Equity Return, if any, to Fannie Mae.

5. Priority Return. The Buyer shall be entitled to a priority return equal to the amount of the New Money Investment, plus an 18% internal rate of return on the New Money Investment (the "Priority Return"), which shall be paid from monthly NOI after payment of and provided the Reorganized Debtor is current on the Debt Service Payments to Fannie Mae on account of the Allowed Class 1 Secured Claim or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b), then after payment of and provided the Reorganized Debtor is current on the 1111(b) Debt Service Payments or the 1111(b) Amortization Payments to Fannie Mae on account of its Allowed Claim.

Deleted: 9

Deleted: surplus

Deleted: (after Debt Service Payments

Deleted: ),

Deleted: its

Deleted: p

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP 650 Town Center Drive, Suite 950 Costa Mesa, California 92626 Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

6. New Property Manager. An affiliate of Rose will serve as the property manager (the "Property Manager") for the Properties, and shall be supervised by and report to the Reorganized Debtor. The Property Manager shall be entitled to a fee of 4% of the Properties' effective gross income.

7. Termination of Receivership. The Receivership shall be terminated on the Effective Date, and any cash or other property of the Debtor in the Receiver's possession, custody, or control, including, any cash held in reserve accounts for the payment of taxes, insurance, or other expenses related to the Properties, shall be turned over to the Reorganized Debtor, and the Receiver shall provide the Reorganized Debtor with an accounting of any cash or other property of the Debtor that came into the Receiver's possession, custody, or control.

Deleted: .

8. Court Approval. The proposed sale of the Membership Interests in the Reorganized Debtor shall be subject to Court approval.

**2. Funding for the Plan**

As discussed above in Section II.E.1., the Buyer shall contribute $21,287,500 in cash to be allocated as follows: (i) to pay down Fannie Mae's Allowed Class 1 Secured Claim by $14,687,500; (ii) to fund the Renovation Reserve with $1,000,000; (iii) to fund deferred capital expenditures totaling $5,600,000; and (iv) $1,000,000 will be used, first, to satisfy the Debtor's Allowed Administrative Claims on the Effective, second, to potentially satisfy any Allowed Priority or Secured Tax Claims, and, third, the remainder will be distributed to the holders of Allowed General Unsecured Claims as provided in Section II.D.4 above, with any surplus to be deposited into the Renovation Reserve. The monthly distributions required to be made under the Plan will be funded by the cash generated from the Reorganized Debtor's operations.

Deleted: en

On the Effective Date, the Receiver shall turn over any cash or other property of the Debtor in the Receiver's possession, custody, or control, including, any cash held in reserve accounts for the payment of taxes, insurance, or other expenses related to the

Deleted: FIRST

Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002
Weiland, Golden,

Properties, shall be turned over to the Reorganized Debtor, and the Receiver shall provide the Reorganized Debtor with an accounting of any cash or other property of the Debtor that came into the Receiver's possession, custody, or control.

**3. The Structure of the Reorganized Debtor and Post-Confirmation Management**

As discussed above in Section II.E.1., in exchange for the New Money Investment, the Buyer will receive 100% of the Membership Interests in the Reorganized Debtor. However, the Buyer has agreed to allocate 5% of the Subordinated Equity Return, if any, to Fannie Mae, as provided herein. The Buyer will be a duly formed Delaware limited liability company owed by Mr. Knutson and Rose. The Buyer will be controlled by Rose. The Property Manager will be retained as the property manager for the Properties.

**4. Auction of Membership Interests in the Reorganized Debtor**

As discussed herein, the Buyer has offered to acquire 100% of the Membership Interests in the Reorganized Debtor in exchange for contributing $22,287,500 in cash to be allocated as provided in Section II.E.2 above. To maximize the value of the Membership Interests, the Membership Interests will be sold by auction subject to the bidding procedures approved by the Court and attached hereto as Exhibit "3" (the "Bidding Procedures"). The cash paid by the Successful Bidder up to the amount of the New Value Investment shall be allocated as provided in Section II.E.2 above, and cash paid in excess of the New Value Investment, plus the "Break-Up Fee" and the "Expense Reimbursement" (as those terms are defined in the Bidding Procedures), will be distributed to Fannie Mae on the Effective Date and shall be applied to principal on Fannie Mae's Allowed Class 1 Secured Claim, or, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b), then to the Secured Portion of Fannie Mae's Allowed Claim.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

**5. Disbursing Agent**

The Reorganized Debtor will act as the disbursing agent for the purpose of making all the distributions provided for under the Plan. The disbursing agent shall serve without bond, and will not receive compensation for distribution services.

**F. Other Provisions of the Plan**

**1. Executory Contracts and Unexpired Leases**

a. Assumptions

On the Effective Date, the Reorganized Debtor will assume the executory contracts and unexpired leases identified on the Schedule of Assumed Agreements attached as Exhibit "1" hereto. The Debtor reserves the right to amend the Schedule of Assumed Agreements up to twenty-one (21) days prior to the Confirmation Hearing to: (a) delete any executory contract or unexpired lease and provide for its rejection; or (b) add any executory contract or unexpired lease and provide for its assumption. The Debtor will provide notice of any amendment to the Schedule of Assumed Agreements to any party or parties to the executory contracts or unexpired leases affected by the amendment. The Confirmation Order will constitute a Court order approving the assumption, on the Effective Date, of the executory contracts and unexpired leases then identified on the Schedule of Assumed Agreements.

The Schedule of Assumed Agreements also identifies any amounts that the Reorganized Debtor must pay to cure defaults under the executory contracts and unexpired leases to be assumed under the Plan (the "Cure Amount"). The Debtor reserves the right to amend the Schedule of Assumed Agreements to modify the Cure Amount for any particular executory contract or unexpired lease up to twenty-one (21) days prior to the Confirmation Hearing. The Debtor will provide notice of any amendment to the Schedule of Assumed Agreements to any party or parties to the executory contracts or unexpired leases affected by any such amendment. Any Cure Amount ordered by the Court, through entry of the Confirmation Order, and paid by the Debtor or the Reorganized Debtor shall be deemed to satisfy any and all defaults arising from or related to contract or

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

tort claims of the party to the contract on or prior to the entry of the order confirming the Plan.

As required by Bankruptcy Code § 365(b)(1), any and all monetary defaults under each executory contract and expired lease to be assumed will be satisfied in one of the following two ways: (a) the Reorganized Debtor will pay to the non-debtor party to the executory contract or unexpired lease the Cure Amount, as set forth on the Schedule of Assumed Agreements, in cash as soon as reasonably practicable on or after the Effective Date; and/or (b) the Reorganized Debtor will satisfy any other terms that are agreed to by both the Debtor and the non-debtor party to an executory contract or unexpired lease that will be assumed. If a dispute arises regarding (a) the amount of any proposed cure payments, (b) whether the Reorganized Debtor has provided adequate assurance of future performance under an executory contract or unexpired lease to be assumed, or (c) any other matter pertaining to a proposed assumption, the proposed cure payments will be made on the later of (1) the Effective Date or as soon as practicable thereafter, or (2) within thirty (30) days after entry of a Final Order resolving the dispute and approving the assumption; provided, however, if a dispute arises regarding any of the foregoing, the Debtor reserves for itself and the Reorganized Debtor the right to completely forego assumption of and, instead, reject the subject executory contract or unexpired lease.

Deleted: ,

Deleted: however,

Deleted: a

Deleted: .

If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract and/or you dispute the Cure Amount related to your lease or contract, then you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan provided in Section I.B.3. of the Disclosure Statement. Failure to File an objection shall be deemed consent to the Cure Amount and a waiver of any and all rights to challenge such Cure Amount.

b. Rejections

On the Effective Date, the Reorganized Debtor will reject the executory contracts and unexpired leases identified on the Schedule of Rejected Agreements attached as Exhibit "2" hereto. The Schedule of Rejected Agreements is not an admission that any

Deleted: FIRST

particular agreement listed thereon is an executory contract or unexpired lease or that the Debtor or Reorganized Debtor have any liability under such agreement. The Debtor reserves the right to amend the Schedule of Rejected Agreements up to twenty-one (21) days prior to the Confirmation Hearing to (a) delete any executory contract or unexpired lease and provide for its assumption, or (b) add any executory contract or unexpired lease and provide for its rejection. The Debtor will provide notice of any amendment to the Schedule of Rejected Agreements to any party or parties to the agreement affected by the amendment. To the extent that an executory contract is not listed on the Schedule of Assumed Agreements and assumed pursuant to Section II.F.1.a. of the Plan, it will be deemed rejected under the Plan whether or not it is listed on the Schedule of Rejected Agreements.

The Confirmation Order will constitute a Court order approving the rejection, as of the Effective Date, of the executory contracts or unexpired leases identified on the Schedule of Rejected Agreements. Any Claim for damages arising from the rejection under the Plan of any executory contract or unexpired lease must be Filed with the Court and served upon the Reorganized Debtor, and the Reorganized Debtor's counsel within thirty (30) days after the Confirmation Date. Any such damage Claims that are not timely Filed and served will be forever barred and unenforceable against the Debtor, the Estate, the Reorganized Debtor, and their respective property. Persons holding these Claims who fail to timely File Claims will be barred from receiving any distributions under the Plan on account of their requested damage Claims.

If you are a party to a lease or contract to be rejected and you object to the rejection of your lease or contract, then you must File and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan provided in Section I.B.3. of this document.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**2. Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**3. Potential Avoidance Actions**

The Reorganized Debtor reserves the sole right under the Plan to pursue Avoidance Actions and other Actions to the extent they exist. The Debtor reserves for itself and the Reorganized Debtor all rights to commence and pursue, as appropriate, any and all Actions or Avoidance Actions, whether arising prior to or after the Petition Date, in any court or other tribunal, including without limitation, in an adversary proceeding Filed in the Bankruptcy Court. While the Debtor has attempted to identify Actions or Avoidance Actions in the Disclosure Statement which may be pursued, and hereby incorporate by reference those disclosures and provisions, the failure to list any potential Action or Avoidance Action, generally or specifically, is not intended to limit the rights of the Debtor or the Reorganized Debtor to pursue any Action or Avoidance Action. All Avoidance Actions and other Actions are preserved under the Plan for the benefit of the Estate and the Reorganized Debtor.

Unless an Action or Avoidance Action against any Person is expressly waived, relinquished, released, compromised or settled as provided or identified in the Plan, any Confirmation Order or prior Bankruptcy Court order, the Debtor and Reorganized Debtor expressly reserve Actions or Avoidance Actions for later adjudication. Therefore, no preclusion doctrine, including, without limitation, the doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Action or Avoidance Action upon or after Confirmation or consummation of the Plan.

ANY CREDITORS THAT BELIEVE THEY RECEIVED A TRANSFER OR SETOFF THAT IS AVOIDABLE UNDER THE BANKRUPTCY CODE OR THAT HOLDS A CLAIM AGAINST THE ESTATE THAT COULD BE SUBJECT TO AN OBJECTION BASED

Deleted: FIRST

UPON FAILURE TO RETURN AN AVOIDABLE TRANSFER OR SETOFF, ARE DIRECTED TO REVIEW THEIR RECORDS AND/OR THE DEBTOR'S SCHEDULES FOR FURTHER INFORMATION. HOWEVER, ALL RIGHTS OF THE DEBTOR AND REORGANIZED DEBTOR ARE RESERVED WITH RESPECT TO ANY AND ALL TRANSFERS OR SETOFFS WHICH MAY BE AVOIDABLE UNDER THE BANKRUPTCY CODE.

All professional fees incurred in pursuing the Avoidance Actions or other Actions shall be paid by the Reorganized Debtor without the necessity of a Court order. However, the Bankruptcy Court will reserve exclusive jurisdiction to decide any and all disputes regarding the payment of the fees and costs related to post-confirmation professional fees, upon request of a party-in-interest and after notice and a hearing. Action Recoveries and Avoidance Actions Recoveries will be paid to the Reorganized Debtor.

**4. Retention of Jurisdiction**

The Court will retain exclusive jurisdiction during the Plan payout period to resolve disputes and conflicts arising from the administration of the Plan, upon request of a party-in-interest and after notice and a hearing, including, without limitation:

1. The adjudication of the validity, scope, classification, allowance, and disallowance of any Claim;
2. The estimation of any Claim;
3. The allowance or disallowance of Professional-Fee Claims, compensation, or other Administrative Claims;
4. To hear and determine Claims concerning taxes pursuant to Bankruptcy Code §§ 346, 505, 525, and 1146;
5. To hear and determine any action or proceeding brought under Bankruptcy Code §§ 108, 510, 543, 544, 545, 547, 548, 549, 550, 551, and 553;
6. To hear and determine all actions and proceedings which relate to pre-confirmation matters;

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

7. To hear and determine any issue relating to the assumption or rejection of executory contracts and unexpired leases;

8. To hear and determine any modification to the Plan in accordance with the Bankruptcy Rules and the Bankruptcy Code;

9. To enforce and interpret the terms of the Plan;

10. To correct any defects, cure any omissions, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

11. The entry of any order, including injunctions, necessary to enforce title, rights and powers of the Debtor or Reorganized Debtor, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary including, without limitation, any right of the Debtor or Reorganized Debtor to recover and liquidate assets;

12. To determine the validity, extent and priority of all Liens and security interests against property of the Estate or the Reorganized Debtor;

13. To hear and resolve any disputes regarding employment applications and professional fees;

14. To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in this Case;

15. The entry of an order concluding and terminating this Case; and

16. To resolve any disputes as to whether there has been a default under the Plan.

## III. EFFECT OF CONFIRMATION

### A. Discharge

The rights under the Plan and the treatment of Claims under the Plan will be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

nature whatsoever (including, without limitation, any interest accrued on Claims from and after the Petition Date) against the Debtor, the Reorganized Debtor, or their property. Except as otherwise provided in the Plan or the Confirmation Order:

1. On the Effective Date, the Debtor, the Debtor's Estate, the Reorganized Debtor, and their property will, to the fullest extent permitted by Bankruptcy Code § 1141, be deemed discharged and released from any and all Claims, including, without limitation, all demands, liabilities, Claims, that arose before the Confirmation Date or that are based upon or otherwise relate to acts, events, omissions, transactions or other activities of any kind that occurred before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h), or 502(l) regardless of whether: (1) a proof of Claim based on such a debt is Filed or deemed Filed; (2) a Claim based on such a debt is allowable under Bankruptcy Code § 502; or (3) the Person holding the Claim based on such a debt has accepted the Plan;
2. All Persons will be precluded from asserting against the Debtor, the Estate, the Reorganized Debtor, or their property any other or further Claims based on, arising from, or in connection with any act, event, omission, transaction, or other activity of any kind that occurred before the Confirmation Date;
3. Any debt of the Debtor, whether secured or unsecured, which was in default as of or any time prior to the Confirmation Date, will no longer be deemed in default. Moreover, to the extent that the Debtor complies with the terms and conditions of the Plan, these obligations will be deemed in good standing;
4. As set forth in Bankruptcy Code §§ 524 and 1141, except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order constitutes a discharge of any and all Claims against, and all debts and liabilities of, the Debtor. The Reorganized Debtor and its property will, to the fullest extent permitted by Bankruptcy Code § 1141, be deemed discharged and released from any and all Claims, including, without limitation, all

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

demands, liabilities, Claims, that arose before the Confirmation Date or that are based on or otherwise relate to acts, events, omissions, transactions or other activities of any kind that occurred before the Confirmation Date. This discharge will void any judgment that was obtained against any of the Debtor at any time only to the extent that the judgment relates to a discharged Claim; and

5. Subject to the limitations and conditions imposed under Bankruptcy Code § 1125(e), Persons who – in good faith and in compliance with applicable Bankruptcy Code provisions – either solicit Plan acceptances or rejections or participate in the offer, issuance, sale, or purchase of securities under the Plan will not be liable on account of their solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of Plan acceptances or rejections or the offer, issuance, sale or purchase of such securities.

**B. Revesting of Property in the Reorganized Debtor**

Except as provided in the Plan or in any agreements contemplated under the Plan, the confirmation of the Plan revests all the property of the Estate in the Reorganized Debtor.

**C. Modification of the Plan**

The Debtor may modify the Plan at any time before confirmation. If the Plan is modified, however, the Court may require a new Disclosure Statement or re-voting on the Plan depending upon the nature of the modifications and their effect on parties-in-interest. The Debtor may also seek to modify the Plan at any time after confirmation if: (a) the Plan has not been substantially consummated; and (b) the Court, after notice and a hearing, authorizes the proposed modification.

**D. Post-Confirmation Status Report**

Within 120 days of the entry of the Confirmation Order, the Reorganized Debtor will file a status report with the Court explaining what progress has been made towards

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

consummation of the confirmed Plan. The status report shall be served on the OUST, Fannie Mae, the creditors holding the 20 largest unsecured claims, and the parties who have requested special notice. Further status reports shall be field every 120 days and served on the same entities until the Plan has been fully consummated.

**E. Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to confirmation shall be paid to the OUST on or before the Effective Date. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the OUST by the Reorganized Debtor until a final decree, or the entry of an order dismissing the Case or converting the Case to chapter 7, at the rate in effect at the time such fees are due.

**F. Post-Confirmation Conversion/Dismissal**

After the Plan is confirmed, a creditor or party-in-interest may bring a motion, only after notice and a hearing, to convert or dismiss this Case under Bankruptcy Code § 1112(b) if there is a material default in performing the Plan. If the Court orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Estate and that has not been distributed under the Plan will revest in the chapter 7 estates. The automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously authorized by the Court during the Case.

The Confirmation Order may also be revoked under very limited circumstances. The Court may revoke the Confirmation Order if it was procured by fraud and if a party-in-interest brings an adversary proceeding to revoke the confirmation within 180 days after the entry of the Confirmation Order.

Deleted: ¶
///¶
///¶
///¶

**G. Final Decree**

Once the Estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor will File a Motion with the Court to obtain a final decree closing the Case.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

Dated: February 8, 2010

PHOENIX KINGDOM II, LLC

By: /s/ Terry Knutson
TERRY KNUTSON
President

Deleted: January 5

Dated: February 8, 2010

WEILAND, GOLDEN, SMILEY, WANG EKVALL & STROK, LLP

By: /s/ Robert S. Marticello
ROBERT S. MARTICELLO
Attorneys for Debtor and Debtor-in-Possession, Phoenix Kingdom II, LLC

Deleted: January 5

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Deleted: FIRST

## TABLE OF DEFINITIONS

**"1111(b) Debt Service Payments"** means the monthly interest payments on the outstanding principal amount of the Secured Portion of Fannie Mae's Allowed Claim required under the Plan if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b).

**"1111(b) Amortization Payments"** means the monthly payments of principal and interest on Fannie Mae's Allowed Claim required under the Plan after December 31, 2016, if Fannie Mae timely elects the application of 11 U.S.C. § 1111(b).

**"Actions"** means any action, other than Avoidance Actions, that arises prior to the Effective Date.

**"Administrative Claim"** means a Claim against the Debtor for administrative costs or expenses that are allowable under Bankruptcy Code § 503(b).

**"Administrative Tax Claim"** means an Administrative Claim or other Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor for taxes (or for related interest or penalties) for any tax period that, either in whole or in part, falls within the period beginning on the Petition Dates and ending on the Effective Date.

**"Allowed Claim"** means a Claim against the Debtor, other than an Administrative Claim, to the extent that:

a. Either: (i) a proof of Claim was timely Filed; or (ii) a proof of Claim is deemed timely Filed either under Bankruptcy Rule 3003(b)(1) or by a Final Order; and

b. Either: (i) the Claim is not a Disputed Claim; (ii) the Claim is allowed by a Final Order; or (iii) the Claim is allowed under the Plan.

**"Allowed [Class Designation and/or Secured, Priority, or General Unsecured] Claim"** means an Allowed Claim in the specified Class and/or of the specified type.

**"Anthracite"** means Anthracite Funding, LLC.

**"Arbor"** means Arbor Realty Mortgage Securities Series 2005-1, Ltd.

**"Avoidance Actions"** mean preference and other avoidance actions under 11 U.S.C. §§ 544 *et. seq.*

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101-1330.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Bar Date"** means the last date for filing proofs of claim in the Debtor's Case.

**"Bethany"** means The Bethany Group and related entities, which served as the Debtor's property and asset manager prior to the Petition Dates.

**"Buyer"** means the entity formed and owned by Mr. Knutson and Rose to purchase the Membership Interests in the Reorganized Debtor.

**"Case"** means the Debtor's voluntary case under chapter 11 of the Bankruptcy Code that is pending before the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

**"CBRE"** means CB Richard Ellis.

**"Claim"** means a claim, as the term "claim" is defined in Bankruptcy Code § 101(5), against a Debtor.

**"Class"** or **"Class of Claims or Interests"** means a group of Claims or Interests as classified under the Plan.

**"Confirmation Date"** means the date on which the Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing held by the Court on the confirmation of the Plan.

**"Confirmation Order"** means the Court order confirming the Plan under Bankruptcy Code § 1129.

**"Court"** means the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

**"Cure Amount"** means any amounts that the Reorganized Debtor must pay to cure defaults under the executory contracts and unexpired leases to be assumed under the Plan.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**"Debt Service Payments"** means the monthly interest payments on the outstanding principal balance of the Allowed Class 1 Secured Claim required under the Plan.

**"Debtor"** means Phoenix Kingdom II, LLC.

**"Disclosure Statement"** means the Disclosure Statement Describing Joint Chapter 11 Plan.

**"Disputed Claim"** means a Claim:

a. As to which a proof of Claim was Filed or is deemed Filed under Bankruptcy Rule 3003(b)(1); and

b. Reorganized Debtor or any party in interest entitled to do so has Filed an objection by the Claims Objection Deadline and as to which that objection has not been overruled, denied by a Final Order, or withdrawn.

**"Effective Date"** means the first business that is at least 15 days after entry of the Confirmation Order, provided there has been no appeal from, or order staying the effectiveness of, the Confirmation Order.

Deleted: 30

**"Effective Date Payments"** means payments required by the Plan to be made by the Debtor on the Effective Date.

**"Estate"** means the bankruptcy estate created in the Debtor's Case under Bankruptcy Code § 541.

**"Fannie Mae"** means Federal National Mortgage Association.

**"File," "Filed," or "Filing"** means duly and properly filed with the Court and reflected on the Court's official docket.

**"Final Order"** means an order or judgment of the Court entered on the Court's docket.

a. That has not been reversed, rescinded, stayed, modified, or amended;

b. That is in full force and effect; and

c. With respect to which (i) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely Filed

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

appeal or petition for review, rehearing, remand, or writ of certiorari is pending, or (ii) any such an appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

**"Interests"** means an equity interest in the Debtor.

**"Junior Mezz Loan Agreement"** means the Junior Mezzanine Loan Agreement dated June 1, 2007, pursuant to which Lehman loaned Phoenix Kingdom II Mezz2, LLC, the sum of $27,510,000.

**"Lehman"** means Lehman Brothers Bank, FSB.

**"Lehman Loan"** means the loans made by Lehman to the Debtor and its affiliates in the aggregate sum of approximately $238,010,000.

**"Lehman Loan Documents"** collectively means the Senior Loan Agreement, the Senior Mezzanine Loan Agreement, and the Junior Mezzanine Loan Agreement pursuant to which Lehman loaned the aggregate sum of approximately $238,010,000 to the Debtor and its affiliates.

**"Membership Interests"** means the membership interests in the Debtor or the Reorganized Debtor.

**"Mezz Lenders"** collectively means Anthracite and Arbor.

**"Monthly Payment Procedure"** means the "Modified Fee Application Procedures" authorized in the Debtor's applications to employ Weiland Golden.

**"MOR"** means the Debtor's monthly operating reports.

**"Motion"** means a request asking a judge to issue a ruling or order on a legal matter.

**"New Money Investment"** means the $22,340,000 in cash to be contributed by the Buyer on the Effective Date to purchase the Membership Interests in the Reorganized Debtor.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**"NOI"** means net operating income, which is effective gross income generated by the Properties less general operating expenses necessary to operate and maintain the Properties.

**"Non-Ordinary-Course Administrative Claims"** means Administrative Claims that are not Ordinary Course Administrative Claims, Administrative Tax Claims, or Professional-Fee Claims, including Claims that may arise from agreements entered into with the Estate after the Petition Date other than trade agreements.

**"Non-Professional Administrative Claims"** means Administrative Claims that are not Professional-Fee Claims.

**"Note"** means the Promissory Note dated June 1, 2007, between Lehman and the Debtor.

**"Ordinary-Course Administrative Claims"** means Administrative Claims–other than Administrative Tax Claims, Professional-Fee Claims, and Non-Ordinary-Course Administrative Claims, based upon liabilities that the Debtor incurs in the ordinary course of their business.

**"OUST"** means the Office of the United States Trustee, Santa Ana Division.

**"Person"** means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint-stock company, joint venture, estate, trust, government, political subdivision, governmental unit (as defined in the Bankruptcy Code), official committee appointed by the United States Trustee, unofficial committee of creditors or equity holders, or entity.

**"Petition Date"** refers to the petition date for the Debtor.

**"Plan"** means the Debtor's Chapter 11 Plan of Reorganization, including any modifications or amendments to the Plan.

**"Priority Claim"** means an Allowed Claim entitled to priority against an Estate under Bankruptcy Code §§ 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7).

**"Priority Return"** means the return to which the Buyer is entitled from monthly surplus NOI (after Debt Service Payments) equal to the amount of the New Money Investment, plus a 19% internal rate of return on the New Money Investment.

**"Priority Tax Claim"** means an Allowed Claim entitled to priority against an Estate under Bankruptcy Code § 507(a)(8).

**"Portfolio"** means the Phoenix Kingdom II portfolio.

**"Professional-Fee Claim"** means:

a. A Claim under Bankruptcy Code §§ 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on an Estate's behalf, or

b. A Claim either under Bankruptcy Code § 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code § 503(b)(3)(D) for expenses incurred in making a substantial contribution to an Estate.

**"Properties"** means the Debtor's five occupied apartment complexes in Phoenix, Arizona metropolitan area.

**"Reorganization Case"** means the Debtor's voluntary case under Chapter 11 of the Bankruptcy Code that is pending before the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

**"Reorganized Debtor"** means the Debtor, as reorganized pursuant to the Plan as of the Effective Date of the Plan.

**"Receiver"** means 707 Management Services, Inc.

**"Request for Payment"** means a request for the payment of a Non-Professional Non-Ordinary Course Administrative Claim as described in Section III.D.1.e. of the Disclosure Statement.

**"Reserve Funds"** shall have the meaning ascribed to such term in the Senior Loan Agreement.

**"Rose"** means Rose Investments, LLC.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

**"Schedule of Assumed Agreements"** means a list of executory contracts and unexpired leases assumed by the Debtor.

**"Schedule of Rejected Agreements"** means a list of executory contracts and unexpired leases rejected by the Debtor.

**"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code § 553. A Claim is a Secured Claim only to the extent of the value of the Claim holder's interest in that property or to the extent of the amount subject to setoff, as applicable, as determined under Bankruptcy Code § 506(a).

**"Senior Loan Agreement"** means the Loan Agreement dated June 1, 2007, pursuant to which Lehman loan the Debtor the sum of $160,500,000.

**"Senior Mezz Loan Agreement"** means the Senior Mezzanine Loan Agreement dated June 1, 2007, pursuant to Lehman loaned Phoenix Kingdom II Mezz1, LLC, the sum of $50,000,000.

**"SOFA"** means the Debtor's statements of financial affairs.

**"Subordinated Equity Return"** means the return paid on the Membership Interests in the Reorganized Debtor from surplus NOI and/or proceeds from the sale or refinancing of the Properties after Debt Service Payments and the payment of the Priority Return.

**"Tax Code"** means the Internal Revenue Code.

**"Unsecured Claim"** or **"General Unsecured Claim"** means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Claim, or a Secured Claim.

**"Weiland Golden"** means Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP.

**"Yenina"** means Yenina, LLC.

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002